The Honorable David G. Estudillo

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>JOAO RICARDO DEBORBA,<br><br>Defendant. | NO. CR22-5139-DGE<br><br>UNITED STATES' TRIAL BRIEF |

The government submits this trial brief to acquaint the Court with the facts of this case and to address certain legal issues that may arise.

## I.    FACTUAL SUMMARY

In August of 2021, Federal Bureau of Investigation Task Force Officer Jordan Vossler, a member of FBI's Vancouver Safe Streets Task Force, received information that defendant Joao Ricardo DeBorba had been arrested for domestic violence and violation of a no-contact order in Clark County, Washington. Vossler began an investigation and found that DeBorba had entered the United States on November 10, 1999, via Miami International Airport, using a nonimmigrant B2 visitor visa. A B2 visa is a visa permitting entry to the United States for the purpose of tourism and permits the

visa holder to stay in the United States for up to six months. Through the B2 visa issued to him, DeBorba was admitted to the United States for a period of up to six months and was not authorized to remain in the United States beyond May 2000. DeBorba's A-File contains no record of DeBorba ever departing the United States after his November 1999 entry or applying for an extension of authorized stay in the United States. There is also no record of DeBorba receiving permission to legally remain in the United States or of any other legal entry to the United States by DeBorba at any time after November 10, 1999. DeBorba never sought permission to remain in the United States before or after his B2 visitor visa expired and at all times relevant to this case he did not have legal status in the United States.

On February 25, 2019, DeBorba applied for a Concealed Pistol License from the Washington State Department of Licensing in Clark County, Washington. Deborba personally filled out the application. The application contains DeBorba's name, date of birth, residence address at the time, and DeBorba's signature. Next to the question, "Are you a U.S. citizen?" DeBorba checked the "Yes." box. Next to the questions, "Are you a permanent resident alien?" and "Are you a legal alien temporarily residing in Washington?" he DeBorba checked "No." DeBorba left the boxes provided for the entry of an applicant's permanent resident card number and alien registration/I-94 number blank.

DeBorba personally completed two Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Form 4473 Firearms Transaction Records, both in 2019. On both, DeBorba knowingly falsely claimed to be a U.S. Citizen. The first related to the purchase of a Sig Sauer model 1911 STX .45 auto caliber handgun from a Cabela's store in Lacey, Washington. The second related to the purchase of a Rock Island Armory model M200 .38 special caliber handgun from Brass Tacks Munitions in Vancouver, Washington. As Federal Firearms License holders and firearms dealers, Cabela's and Brass Tacks Munitions are required by federal law to document sales of firearms using Form 4473,

United States' Trial Brief - 2
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  and the false statements on the Form 4473 were material to the transaction because
2  federal law prohibits the transfer of a firearm to persons who are not legally in the United
3  States.

4  On April 14, 2019, Washington State Patrol Officer Andrey Liksakov investigated
5  a single-vehicle collision on State Route 500 in Clark County, Washington involving a
6  white SUV. DeBorba admitted to Liksakov that he was driving the white SUV. DeBorba
7  also told Liksakov that he had a Concealed Pistol License with him. Liksakov conducted
8  an inventory search of the white SUV and found a black tactical backpack on the
9  floorboard behind the passenger's seat. DeBorba told Officer Liksakov that his Glock 26
10 handgun was in the backpack and gave the officer permission to open it. Liksakov did so
11 and found the Glock 26 alleged in Count 3 of the Superseding Indictment.

12 Based on several incidents of domestic violence, DeBorba has been the subject of
13 multiple Domestic Violence No-Contact Orders issued in three separate cases. Each of
14 these orders were issued after a hearing for which DeBorba was present, and restrained
15 him from assaulting and harassing, among other things, his wife.

16 On November 16, 2019, Vancouver Police Department Officer Zachary Allred
17 responded to a call from A.D. reporting a restraining-order violation by DeBorba based
18 on DeBorba repeatedly calling and sending messages to A.D. Officer Allred obtained
19 information that DeBorba had violated the Domestic Violence No-Contact Order that was
20 then in effect by repeatedly calling A.D., Officer Allred found DeBorba at his apartment
21 and arrested him on suspicion of violating the order. Officer Allred read DeBorba his
22 Miranda rights and confirmed that DeBorba understood them. DeBorba then voluntarily
23 agreed to speak to law enforcement. Officer Allred asked DeBorba if he possessed any
24 firearms, and DeBorba stated he did and confirmed they were located in his apartment.
25 DeBorba provided voluntary consent for law enforcement to enter the apartment to
26 collect the firearms and provided the combination to a gun safe. Officers found the 19
27 firearms and the ammunition alleged in Count 2 of the Superseding Indictment in

United States' Trial Brief - 3
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   DeBorba's apartment.

2       On May 6, 2022, law enforcement executed the federal search warrant at

3   DeBorba's apartment; DeBorba was present. Law enforcement located five firearms in

4   the apartment, specifically: two AR-15-type rifles bearing no serial number or

5   manufacturer's marks; an AR-15-type rifle with an attached bipod, bearing no serial

6   number or manufacturer's marks; a Ruger model LCP 9mm caliber handgun; and two

7   Polymer80 Glock-type handguns, one in 9mm and one in .380 caliber, bearing no serial

8   number or manufacturer's mark. Law enforcement also located numerous rounds of

9   ammunition, including Aguila .300 AAC blackout and Blazer Brass .380 auto

10  ammunition. In the bedroom, the officers found a workbench with a vice, and a large

11  amount of ammunition, firearms parts, firearms tools, AR-15 assembly instructions, a

12  Polymer80 pistol drilling jig, high-capacity magazines including what appeared to be a

13  50-round drum magazine for a Glock-type firearm, and other firearms accessories

14  including gun and rifle cases.

15      Inside the workbench, law enforcement located a completed firearms silencer or

16  suppressor, in a box on which was written the words "Tick Suppressor." The device was

17  seized and later examined by ATF Firearms Enforcement Officer Jason Armstrong, who

18  is trained in examining devices to determine if they meet the definition of a "firearm"

19  under the National Firearms Act. Armstrong examined and tested the firearm and

20  concluded that it is a device for silencing, muffling, or diminishing the report of a

21  portable firearm, meeting the definition of "firearm silencer" under 18 U.S.C.

22  § 921(a)(25) and therefore a "firearm" as defined in 26 U.S.C. § 5845(a)(7). The silencer

23  was not, and indeed due to its lack of any manufacturer's mark or serial number, could

24  not have been, registered in the National Firearms Registration and Transfer Record as

25  required by 26 U.S.C. § 5861(d).

26      All of the firearms and ammunition that DeBorba possessed as alleged in the

27  Superseding Indictment were manufactured outside the State of Washington and thus

United States' Trial Brief - 4
*United States v. DeBorba*, CR22-5139-DGE

were transported in interstate commerce, or otherwise affected interstate commerce.

On May 6, 2022, DeBorba voluntarily agreed to speak to law enforcement after being advised of his Miranda rights and confirming that he understood his rights. DeBorba told Special Agent Grant Taylor that he knew he was not supposed to have firearms due to his immigration status and his prior domestic violence convictions. DeBorba admitted he was a citizen of Brazil, that he came to the United States in 1999 on a B2 tourist visa, and that he never sought or obtained authorization to remain in the United States. DeBorba reviewed pictures of the firearms seized from his residence during the execution of the federal search warrant and DeBorba admitted that the firearms in the pictures were his.

## II.   CHARGES

### A.   Unlawful Possession of Firearm/Ammunition (18 U.S.C. § 922(g))

The defendant is charged in Counts 1 and 2 of the Superseding Indictment with Unlawful Possession of Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(5) and (8), and in Count 3 with Unlawful Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(5). Section 922(g) states, in pertinent part, that it shall be unlawful for certain prohibited persons "to…possess in or affecting interstate commerce, any firearm or ammunition." Among the categories of persons prohibited from possession of firearms interstate commerce are those who, being an alien, are unlawfully in the United States or who have been admitted to the United States under a nonimmigrant visa (Section 922(g)(5)) and those who are subject to certain domestic violence restraining orders (Section 922(g)(8)).

"Only one conviction may result under Section 922(g) for a single incident of possession, even though the defendant may belong to more than one disqualified class," because "the allowable unit of prosecution is the incident of possession, not the defendant's membership in a class (or classes) of persons disqualified from possession." *United States v. Parker*, 508 F.3d 434, 440 (7th Cir. 2007) (collecting cases). The

United States' Trial Brief - 5
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

government remains free to pursue multiple theories of violation at trial based on the defendant's membership in more than one disqualified class. *Id.* Similarly, the simultaneous, undifferentiated possession or receipt of multiple firearms by a felon constitutes only one violation of Section 922(g)(1). *United States v. Ankeny*, 502 F.3d 829, 838–39 (9th Cir. 2007) ("regardless of the number of firearms involved, there is only one offense . . . unless there is a showing that the firearms were 'stored or acquired at different times and places").

The elements of a violation of Section 922(g)(5) and (8) as charged in Counts 1 and 2 are as follows:

(1)     The defendant knowingly possessed a firearm or ammunition;

(2)     The firearm or ammunition that the defendant possessed had been shipped or transported from one state to another or between a foreign nation and the United States, or otherwise affected interstate commerce;

(3)     At the time the defendant possessed the firearm or ammunition, the defendant was, and knew he was: (1) an alien illegally and unlawfully in the United States or admitted to the United States under a nonimmigrant visa; or (2) subject to a court order meeting the requirements of Title 18, United States Code, Section 922(g)(8)(A)-(C).

The elements of a violation of Section 922(g)(5) as charged in Count 3 are as follows:

(1)     The defendant knowingly possessed a firearm;

(2)     The firearm that the defendant possessed had been shipped or transported from one state to another or between a foreign nation and the United States, or otherwise affected interstate commerce;

(3)     At the time the defendant possessed the firearm, the defendant was an alien illegally and unlawfully in the United States or admitted to the United States under a nonimmigrant visa; and

United States' Trial Brief - 6
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

(4)     At the time the defendant possessed the firearm, the defendant knew he was
an alien illegally and unlawfully in the United States or admitted to the
United States under a nonimmigrant visa.

The government "must prove both that the defendant knew he possessed a firearm
and that he knew he belonged to the relevant category of persons barred from possessing
a firearm." *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019).

With regard to the interstate commerce element, "a past connection to interstate
commerce is sufficient," as is evidence of "a minimal nexus" that the firearm had "been,
at some time, in interstate commerce." *United States v. Rousseau*, 257 F.3d 925, 933 (9th
Cir. 2001) (citing *Scarborough v. United States*, 431 U.S. 563, 97 S. Ct. 1963, 52 L. Ed.
2d 582 (1977)). Indeed, the mere interstate travel of the constituent parts of a firearm is
sufficient to establish the interstate nexus required under Section 922(g). *United States v.
Gresham*, 118 F.3d 258, 265 (5th Cir. 1997). *See also United States v. Verna*, 113 F.3d
499, 503 (4th Cir. 1997); *United States v. Mosby*, 60 F.3d 454, 456–57 (8th Cir. 1995).

A person is subject to a court order meeting the requirements of Title 18, United
States Code, Section 922(g)(8)(A)-(C) if the order: (1) Was issued after a hearing of
which such person received actual notice, and at which such person had an opportunity to
participate; (2) Restrains such person from harassing, stalking, or threatening an intimate
partner of such person, or engaging in other conduct that would place an intimate partner
in reasonable fear of bodily injury to the partner; and (3) Includes a finding that such
person represents a credible threat to the physical safety of such intimate partner; or by its
terms explicitly prohibits the use, attempted use, or threatened use of physical force
against such intimate partner that would reasonably be expected to cause bodily injury.

**B.     False Statement During Purchase of Firearm (18 U.S.C. § 922(a)(6))**

The defendant is charged in Counts 4 and 5 of the Superseding Indictment with
Making a False Statement During Purchase of Firearm, in violation of 18 U.S.C.
§ 922(a)(6). The elements of a violation of Section 922(a)(6) as charged in Counts 4 and

United States' Trial Brief - 7
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

5 are as follows:

(1) The dealer alleged in the Superseding Indictment was a licensed firearms dealer;

(2) In connection with acquiring a firearm from the dealer, the defendant made a false statement;

(3) The defendant knew the statement was false; and

(4) The false statement was material; that is, the false statement had a natural tendency to influence or was capable of influencing the dealer into believing that the firearm could be lawfully sold to the defendant.

**C.   False Claim to United States Citizenship**

The defendant is charged in Count 6 of the Superseding Indictment with False Claim to United States Citizenship, in violation of 18 U.S.C. § 911. The elements of a violation of Section 911 as charged in Count 6 are as follows:

(1) The defendant directly and falsely represented himself to be a citizen of the United States;

(2) The defendant was not a citizen of the United States at the time;

(3) The defendant made such false representation willfully, that is, the misrepresentation was voluntarily and deliberately made; and

(4) The false representation was made to someone who had good reason to make inquiry into defendant's citizenship status.

**D.   Unlawful Possession of a Firearm Silencer**

The defendant is charged in Count 7 of the Superseding Indictment with Unlawful Possession of a Firearm Silencer, in violation of 26 U.S.C. § 5861(d). The elements of a violation of Section 5861(d) as charged in Count 7 are as follows:

(1) The defendant knowingly possessed a firearm silencer, specifically, a cylindrical device bearing no manufacturer markings and no serial number;

(2) The defendant was aware that the device was a firearm silencer; and

United States' Trial Brief - 8
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

(3)    The defendant had not registered the firearm silencer with the National Firearms Registration and Transfer Record.

The term "firearm silencer" means any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer, and any part intended only for use in such assembly or fabrication. 18 U.S.C. § 921(a)(25).

The government need not prove that the defendant knew that possessing the firearm silencer was illegal.

## III.    TRIAL MATTERS

### A.    Estimated Length of Trial and Government Witnesses

The government anticipates that its case-in-chief will last approximately two to three trial days and expects to call between five and six witnesses. Federal Bureau of Investigation Task Force Officer Jordan Vossler will be present at counsel table with government counsel.

### B.    Government Exhibits

The government has identified its proposed trial exhibits in a separately filed exhibit list. The government's proposed exhibits consist largely of photographs, documents, and the physical firearms and ammunition seized from the defendant.

#### 1.    Firearms

The government is mindful of the Court's General Order dated September 7, 2004, permitting case agents and Assistant United States Attorneys transporting weapons that are to be, or have been, admitted as evidence to bring these weapons into the Courthouse so long as such weapons are unloaded and locked in such a manner as to prevent loading and firing. The government will instruct the case agent to inspect each firearm to ensure that they are unloaded and locked to prevent firing, to keep custody of the firearms at all times during the trial, and to present the firearms to the U.S. Marshals or Court Security Officer prior to entering the Courthouse.

United States' Trial Brief - 9
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

### 2.      Documents

In addition to photographs, the documentary exhibits include several documents, including: (1) several Domestic Violence No Contact Orders issued in Washington against DeBorba; (2) Firearms Transaction Records; and (3) DeBorba's immigration files contained in his A-File.

## C.      Stipulations of Parties

The parties have met and conferred by telephone regarding a number of evidentiary issues in an attempt to expedite the presentation of evidence at trial. At present, the government believes the parties will reach the following stipulations:

(1)      A stipulation that the firearms and ammunition involved in Counts 1 through 3 satisfy the interstate commerce element of Section 922(g);

(2)      A stipulation addressing the legal sufficiency of the Domestic Violence Restraining Orders at issue in Counts 1 and 2 and the status of the protected person as an "intimate partner."

The parties will file such stipulations in advance of trial.

## IV.      ANTICIPATED LEGAL AND EVIDENTIARY ISSUES

## A.      Hearsay

The government will seek to admit several items of evidence under well-established exceptions to the rule excluding hearsay. Rule 801(c) of the Federal Rules of Evidence defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person if it is intended to be an assertion. Fed. R. Evid. 801(a). Hearsay is admissible as substantive evidence only as provided by the Federal Rules of Evidence. *See* Fed. R. Evid. 802, 803, 804, 807; *United States v. Tafollo-Cardenas*, 897 F.2d 976, 979 (9th Cir. 1990).

*//*

United States' Trial Brief - 10
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

### 1.    Certified Court Documents

The government intends to introduce certified copies of the Domestic Violence No Contact Orders issued by the Superior Court of Washington. Defense counsel has informed the government that defendant agrees the documents are admissible.

Court orders imposing a legal obligation on a party fall outside the scope of the definition of hearsay. *See, e.g.*, *United States v. Dupree*, 706 F.3d 131, 137 (2nd Cir. 2013). In any event, the documents are excepted from the hearsay rule as public records under Fed. R. Evid. 803(8). A record or statement of a public office is admissible if it sets out (1) the office's activities, or (2) a matter observed while under a legal duty to report, and the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness. Fed. R. Evid. 803(8).

Furthermore, such documents are "self-authenticating" as domestic public documents that are sealed and signed. Fed. R. Evid. 902(1). The documents bear a seal of a state of the United States and signature purporting to be an attestation, and thus "require no extrinsic evidence of authenticity in order to be admitted. *Id.*

### 2.    Certified Business Records

The government intends to introduce certified copies of the ATF Forms 4473 (Firearm Transaction Records) on which defendant made the false statements alleged in Counts 4 and 5, as well as the Concealed Pistol License application on which defendant made the false statements alleged in Count 6. Defense counsel has informed the government that defendant agrees the documents are admissible.

Certified records of regularly conducted activity are self-authenticating when accompanied by a written declaration establishing that (1) the records were made at or near the time by, or from information transmitted by, a person with knowledge; and (2) the records were made and kept in the course of a regularly conducted business activity. Fed. R. Evid. 902(11); Fed. R. Evid. 803(6)(A)-(C). "Generally, objections that an exhibit may contain inaccuracies, ambiguities, or omissions go to the weight and not the

United States' Trial Brief - 11
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  admissibility of the evidence." *United States v. Scholl*, 166 F.3d 964, 977 (9th Cir. 1999).

2  ### 3.  Certificate of Nonexistence of Record

3  The government intends to introduce a National Firearms Registration and

4  Transfer Record Search Certificate, evidencing the lack of a record that the firearm

5  silencer charged in Count 7 was registered in the National Firearms Registration and

6  Transfer Record. Defense counsel has informed the government that defendant agrees the

7  document is admissible.

8  Such documents are admissible as exceptions to the hearsay rule under Fed. R.

9  Evid. 803(7) and 803(10), and are self-authenticating under Fed. R. Evid. 902(2) and

10  902(3).

11  ### 4.  Statements of Defendant

12  The government intends to introduce into evidence various statements defendant

13  made before and after, his arrest. Statements by a party opponent are admissible non-

14  hearsay, as are statements which are not being admitted for the truth of the matter

15  asserted but rather to show the effect on the person who heard the statement. Fed. R.

16  Evid. 801(c), 801(d)(2)(A); *see also United States v. Valerio*, 441 F.3d 837, 844 (9th Cir.

17  2006) (informant's statements on a recording are admissible to give context to

18  defendant's statements). Defendant's statements are not hearsay, because he is a party

19  opponent.

20  ## B.  Physical Evidence/Chain of Custody

21  The government will seek to introduce into evidence the firearms and ammunition

22  seized on April 14, 2019, November 16, 2019, and May 6, 2022, and charged in the

23  Superseding Indictment.

24  Federal Rule of Evidence 901(a) provides that "the requirement of authentication

25  or identification as a condition precedent to admissibility is satisfied by evidence

26  sufficient to support a finding that the matter in question is what its proponent claims."

27  Fed. R. Evid. 901(a). Rule 901(a) only requires the government to make a prima facie

United States' Trial Brief - 12
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

showing of authenticity or identification "so that a reasonable juror could find in favor of authenticity or identification." *United States v. Chu Kong Yin*, 935 F.2d 990, 996 (9th Cir. 1991); *United States v. Blackwood*, 878 F.2d 1200, 1202 (9th Cir. 1989). Once the government meets this burden, "the credibility or probative force of the evidence offered is, ultimately, an issue for the jury." *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985).

To be admitted into evidence, a physical exhibit must be in substantially the same condition as when the crime was committed. Fed. R. Evid. 901. The Court may admit the evidence if there is a "reasonable probability the article has not been changed in important respects." *United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991). This determination is to be made by the trial judge and will not be overturned except for clear abuse of discretion. Factors the Court may consider in making this determination include the nature of the item, the circumstances surrounding its preservation, and the likelihood of intermeddlers having tampered with it. *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960).

In establishing chain of custody as to an item of physical evidence, the government is not required to call all persons who may have come into contact with the piece of evidence. *Harrington*, 923 F.2d at 1374. Moreover, a presumption of regularity exists in the handling of exhibits by public officials. *Id*. Therefore, to the extent that alleged or actual gaps in the chain of custody exist, such gaps go to the weight of the evidence rather than to its admissibility. *Id*.

## C.   Photographic Evidence

The government intends to introduce into evidence photographs of the charged firearms and ammunition and the locations where they were found. Photographs are generally admissible as evidence. *See United States v. Stearns*, 550 F.2d 1167, 1171 (9th Cir. 1977) (photographs of crime scene admissible). Photographs should be admitted so long as they fairly and accurately represent the event or object in question. *United States*

United States' Trial Brief - 13
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   *v. Oaxaca*, 569 F.2d 518, 525 (9th Cir. 1978). The Ninth Circuit has held that

2   "[p]hotographs are admissible as substantive as well as illustrative evidence." *United*

3   *States v. May*, 622 F.2d 1000, 1007 (9th Cir. 1980).

4   **D.      Proof of Alien Status**

5              In proving DeBorba's lack of lawful immigration status, and in addition to

6   DeBorba's statements to law enforcement that he is a citizen of Brazil, that he came to

7   the United States in 1999 on a B2 visa, and that he never completed the legal process

8   required to remain in the United States, the government will call TFO Vossler, who is

9   also a Deportation Officer with the United States Department of Homeland Security

10  (DHS), Immigration and Customs Enforcement. As lead investigator of DeBorba's

11  criminal offenses, Officer Vossler has custody and control of the DHS Alien File for

12  DeBorba. Officer Vossler will testify to the records maintained by DHS with respect to

13  DeBorba's entry and the contents of the Alien File, including the known date of his entry,

14  the immigration documents used for his entry, and the absence of any record of his

15  departing the United States, adjusting his immigration status in the United States, or

16  applying for lawful status in the United States since the expiration of his original visa.

17             The contents of DHS files may be used as evidence to prove alienage and other

18  facts related to immigration status, when testified to by a qualified DHS custodian, and

19  such testimony does not violate the Confrontation Clause. *See United States v. Albino-*

20  *Loe*, 747 F.3d 1206 (9th Cir. 2014). An agent's testimony on such matter is admissible

21  and reliable. *See United States v. Orozco-Acosta*, 607 F.3d 1156, 1164 (9th Cir. 2010)

22  (agent's review of the A-File and agency computer database disclosed no documentation

23  that defendant had applied for permission to re-enter the United States, and this testimony

24  was sufficient, in combination with defendant's statements, to prove re-entry without

25  permission).

26  //

27  //

1    **E.    Lay Opinions of Law Enforcement Witnesses**

2         Federal Rule of Evidence 701 "permits a lay witness to give opinion testimony as

3    long as the opinion is (a) rationally based on the perception of the witness and (b) helpful

4    to a clear understanding of the witness's testimony or the determination of a fact in

5    issue." *United States v. Pino-Noriega*, 189 F.3d 1089, 1097 (9th Cir. 1999) (quotation

6    marks omitted). Under Ninth Circuit law, opinion testimony by law enforcement officers

7    is admissible and not necessarily expert testimony within the meaning of Rule

8    16(a)(1)(G). *See United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995). As the

9    Ninth Circuit has explained, law enforcement officers' opinion testimony:

10        is a means of conveying to the jury what the witness has seen or heard. . . .
         Because it is sometimes difficult to describe the mental or physical
11        condition of a person, his character or reputation, the emotions manifest by
         his acts; speed of a moving object or other things that arise in a day to day
12        observation of lay witnesses; things that are of common occurrence and
         observation, such as size, heights, odors, flavors, color, heat, and so on;
13        witnesses may relate their opinions or conclusions of what they observed.

14

15    *United States v. Skeet*, 665 F.2d 983, 985 (9th Cir. 1982); *see also United States v.*

16    *Gadson*, 763 F.3d 1189, 1209 (9th Cir. 2014) ("[A]n investigator who has accumulated

17    months or even years of experience with the events, places, and individuals involved in

18    an investigation necessarily draws on that knowledge when testifying; indeed, it is those

19    out-of-court experiences that make the witness's testimony helpful to the jury."). Officers

20    Vossler, Liksakov, and Allred are in a unique position to explain the circumstances of

21    defendant's arrest and the recovery of the charged firearm and ammunition. Their opinion

22    testimony and conclusions will be helpful to the jury; and their opinions do not require

23    expert knowledge. *See United States v. Nelson*, 285 F. App'x 491, 493-94 (9th Cir. 2008)

24    ("The officers were in the unique position of observing both the manner in which the

25    vehicle was driven prior to the stop and the precise location and position in which the gun

26    was discovered, and their opinions did not require scientific, technical or other

27    specialized knowledge.").

United States' Trial Brief - 15
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**F.      Expert Witness Testimony**

Absent a stipulation, the government would expect to offer testimony from Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Firearms Enforcement Officer Jason Armstrong and ATF Special Agent Claudia Grigore. The government provided written notice of this expert testimony to defendant pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) on September 19, 2023.

Officer Armstrong will testify to his examination of the device charged as a firearm silencer in Count 7, and his experience and training with regard to firearms, firearms examinations, and the definitions of "firearm" and "firearm silencer." Specifically, Officer Armstrong will testify that, based on his examination, the device is a device for silencing, muffling, or diminishing the report of a portable firearm and therefore a "firearm silencer" as defined in 18 U.S.C. § 921(a)(25) and a "firearm" as defined in 18 U.S.C. § 921(a)(3)(C) and 26 U.S.C. § 5845(a)(7), and that the device bears no manufacturer's marks of identification or a serial number as required by 26 U.S.C. § 5842, and the reasons for his conclusions.

Absent a stipulation, Special Agent Grigore will testify to her examination of the firearms and ammunition charged in Counts 1 through 3, and her experience and training with regard to interstate nexus determinations of firearms. Specifically, Special Agent Grigore will testify that the firearms and ammunition charged in Counts 1 and 2 were manufactured outside the State of Washington, and that their recovery in Washington indicates that they have travelled in and affected interstate commerce. Additionally, Special Agent Grigore will testify that the firearm charged in Count 3 included primary components that were manufactured outside of the State of Washington.

A qualified expert witness may provide opinion testimony on the issue in question if specialized knowledge will assist the trier of fact. Fed. R. Evid. 702. The Court has broad discretion to determine whether to admit expert testimony. *United States v. Andersson*, 813 F.2d 1450, 1458 (9th Cir. 1987). Officer Armstrong's and Special Agent

United States' Trial Brief - 16
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Grigore's testimony should be allowed because they will assist the trier of fact in understanding the evidence and determining facts in issue. *See United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996), as amended (Oct. 28, 1996) (affirming admission of fingerprint expert's testimony); *United States v. Dunn*, 946 F.2d 615, 618 (9th Cir. 1991), as amended (Oct. 1, 1991) ("The Ninth Circuit allows expert testimony regarding the identity of the manufacturer to establish that a gun travelled in interstate commerce before the defendant received it.").

**G.    Forfeiture**

**1.    Property Subject to Forfeiture**

During the search of DeBorba's residence on or about May 6, 2022, law enforcement seized a Ruger model LCP 9mm caliber handgun and numerous rounds of ammunition, including Aguila .300 AAC blackout, and Blazer Brass .380 auto, and a firearms silencer. The United States intends to seek forfeiture of this firearm, ammunition, and silencer.

The United States gave notice in the Indictment and the Superseding Indictment of its intent to pursue forfeiture of this firearm and ammunition, pursuant to 18 U.S.C. § 924(d)(1), by way of 28 U.S.C. § 2461(c), as they were "involved in" defendant's commission of *Unlawful Possession of Firearms and Ammunition*, in violation of 18 U.S.C. § 922(g)(5) and (8), as charged in Count 1.

The United States gave notice in the Superseding Indictment of its intent to pursue forfeiture of the silencer, pursuant to Title 26, United States Code, Section 5872, by way of Title 28, United States Code, Section 2461(c), as it was "involved in" defendant's commission of *Unlawful Possession of a Firearm Silencer*, in violation of Title 26, United States Code, Sections 5861(d) and 5845(a)(7), as charged in Count 7.

**2.    Legal Standard for Forfeiture.**

Criminal forfeiture is a form of punishment that is imposed as part of a criminal sentence. *Libretti v. United States*, 516 U.S. 29, 39–40 (1995). For the government to

United States' Trial Brief - 17
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  criminally forfeit property, there must be a predicate criminal conviction, a statute

2  authorizing forfeiture for the crime of conviction, and evidence to support the statutorily

3  required nexus between the property and the crime of conviction. *See e.g., United States*

4  *v. Garcia-Guizar*, 160 F.3d 511, 518–20 (9th Cir. 1998) (reviewing requirements to

5  establish criminal forfeiture of property). With respect to the required nexus, the

6  government must establish the forfeitability of the relevant property by a preponderance

7  of the evidence. *Id*. at 517–18 ("[T]he government need prove by only preponderance of

8  the evidence, and not beyond a reasonable doubt, that property should be criminally

9  forfeited.") (citing *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1576-77 (9th

10  Cir. 1989)). In other words, depending on the relevant forfeiture statute, the government

11  must present evidence that establishes the relevant property is "more likely than not"

12  forfeitable. *See Garcia-Guizar*, 160 F.3d at 522 n.9. This lower standard of proof "is

13  constitutional because the criminal forfeiture provision does not itself describe a separate

14  offense but is merely an 'additional penalty' for an offense that must be proved beyond a

15  reasonable doubt." *See id*. at 518 (citing *Hernandez-Escarsega*, 886 F.2d at 1577).

16      Here, there is statutory authority to forfeit the Ruger model LCP 9mm caliber

17  handgun and the above-described ammunition as property "involved in" defendant's

18  commission of *Unlawful Possession of Firearms and Ammunition* (Count 1). Pursuant to

19  18 U.S.C. § 924(d)(1), any firearms and ammunition involved or used in certain firearms

20  offenses, including Unlawful Possession of Firearms and Ammunition, are subject to

21  civil and administrative forfeiture. Title 28, United States Code, Section 2461(c) extends

22  the applicability of § 924(d)(1) to criminal forfeiture.

23      There is also statutory authority to forfeit the firearms silencer as "involved in"

24  Defendant's commission of *Unlawful Possession of a Firearm Silencer* (Count 7).

25  Pursuant to 26 U.S.C. § 5872, any firearms silencers involved in the commission of such

26  offense are subject to civil and administrative forfeiture. Title 28, United States Code,

27  Section 2461(c) similarly extends the applicability of this statute to criminal forfeiture.

United States' Trial Brief - 18
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1        **3.     Forfeiture Process**

2        Rule 32.2 sets out the procedures for determining the forfeitability of property in a

3  criminal case. Forfeitures are decided after a guilty verdict is returned on a count that

4  supports the forfeiture. *See* Fed. R. Crim. P. 32.2(b)(1)(A). At that juncture, the specific

5  question for the fact finder is "whether the government [has established the] requisite

6  nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A). Either party

7  has a right for a jury to determine the forfeitability of specific property, however, the

8  Court must determine whether either party requests that the jury be retained to determine

9  forfeiture **before the jury begins deliberating**. *See* Fed. R. Crim. P. 32.2(b)(5)(A).

10        The United States is willing to waive its right to retain the jury as to forfeiture and

11  have the Court decide the forfeitability of the firearm and silencer. *See* Fed. R. Crim.

12  P. 32.2(b)(5)(A). If defendant is unwilling to waive his right to have the jury determine

13  forfeitability, the United States will be prepared to present the forfeiture case to the jury.

14        The forfeiture phase of the trial should be bifurcated from the guilt phase of the

15  trial, with separate jury deliberations and argument of counsel as to forfeiture. *See United*

16  *States v. Feldman*, 853 F.2d 648, 661–62 (9th Cir. 1988); *see also United States v.*

17  *Cauble*, 706 F.2d 1322, 1348 (5th Cir. 1983) (describing how a bifurcated trial "prevents

18  the potential penalty of forfeiture from influencing the jurors' deliberations about guilt or

19  innocence"). The United States will submit a special verdict form asking the jury "to

20  determine whether the government has established the requisite nexus between the

21  property [sought for forfeiture] and the offense committed by the defendant." Fed. R.

22  Crim. P. 32.2(b)(5)(B).

23        As forfeiture is determined post-conviction, and is considered part of sentencing,

24  the rules of evidence do not strictly apply to forfeiture proceedings. *See e.g., United*

25  *States v. Hatfield*, 795 F. Supp.2d 219, 229–30 (E.D.N.Y. 2011) (holding neither the

26  Federal Rules of Evidence nor *Daubert* apply to forfeiture hearings); *United States v.*

27  *Creighton*, 52 Fed. Appx. 31, 35–36 (9th Cir. 2002) ("[H]earsay evidence is permissible

United States' Trial Brief - 19
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

at sentencing and does not, per se, lack sufficient indicia of reliability."). The factfinder may consider any evidence that is "relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). This includes any evidence presented by the parties during trial on the substantive criminal offenses. See id. ("The court's [or jury's forfeiture] determination may be based on evidence already in the record. . . ."); *see also United States v. Newman*, 659 F.3d 1235, 1244–45 (9th Cir. 2011) (same), abrogated on other grounds by *Honeycutt v. United States*, 137 S. Ct. 1626, 1632 (2017).

Here, the United States expects that the trial testimony and evidence will establish the forfeiture nexus for the firearm and ammunition charged in Count 1 and the firearms silencer charged in Count 7. In the supplemental forfeiture proceeding, the United States will argue that because the defendant knowingly possessed the firearm and ammunition charged in Count 1, they were necessarily "involved in" his commission of that offense. Similarly, the United States will argue that because the defendant knowingly possessed the silencer charged in Count 7, it was necessarily "involved in" his commission of that offense. The United States does not anticipate presenting substantial additional testimony or exhibits in the supplemental forfeiture proceeding, although it reserves the right to do so if needed.

## V.    RECIPROCAL DISCOVERY

To date, the government has provided approximately 9,400 pages of discovery to the defense. The United States has not received any reciprocal discovery from the defense and will seek to exclude any offered during trial that should have been provided previously, pursuant to Rule 16(d)(2) of the Federal Rules of Criminal Procedure. Additionally, the defense has not provided the government with any "written summary of any [expert] testimony that the defendant intends to use . . . as evidence at trial," as required by Fed. R. Crim. P. 16(b)(1)(C). Therefore, the government will seek to exclude any testimony by a defense witness that falls within the scope of Rule 702.

United States' Trial Brief - 20
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

## VI.   CONCLUSION

2          This trial brief has been prepared to acquaint the Court with the legal and factual

3   issues that may arise at trial. The United States is not aware of other legal issues that are

4   likely to arise during the course of this trial. If other issues do arise, the government

5   requests the opportunity to address those issues by way of a supplemental brief or briefs.

6          DATED this 2nd day of January, 2024.

7                                          Respectfully submitted,

8

9                                          TESSA M. GORMAN
                                           Acting United States Attorney
10

11                                          *s/ Max B. Shiner*
                                           Max B. Shiner
12                                          Amanda McDowell
                                           Assistant United States Attorneys
13                                          United States Attorney's Office
                                           1201 Pacific Ave., Suite 700
14                                          Tacoma, WA 98402
                                           Telephone: (253) 428-3822
15                                          E-mail: max.shiner@usdoj.gov
16

17

18

19

20

21

22

23

24

25

26

27

United States' Trial Brief - 21
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800