The Honorable David G. Estudillo

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10   UNITED STATES OF AMERICA,                    NO. CR22-5139-DGE

11                    Plaintiff

12                                                STIPULATED FACTS

13              v.

14   JOAO RICARDO DEBORBA,

15                    Defendant.

16

17

18          The United States of America and defendant Joao Ricardo DeBorba and his

19   attorney, Rebecca Fish, agree and stipulate to the following facts. The parties further

20   agree that these facts and the attached exhibits may be considered by the Court at a bench

21   trial in determining the issue of defendant DeBorba's guilt on the charges contained in

22   the Superseding Indictment.

23          1.      In August of 2021, Federal Bureau of Investigation Task Force Officer

24   Jordan Vossler, a member of FBI's Vancouver Safe Streets Task Force, received a tip

25   from a person who wished to remain anonymous that defendant Joao Ricardo DeBorba

26   had been arrested for domestic violence and violation of a no-contact order in Clark

27   County, Washington.

Stipulated Facts - 1
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

2.      Officer Vossler is a Deportation Officer with United States Immigration and Customs Enforcement, Department of Homeland Security. As a Deportation Officer, Vossler has access to DHS immigration records and has custody and control of DeBorba's Alien File. An Alien File or "A-File" is the record of a noncitizen's interactions with the Department of Homeland Security and contains all records of any active case of an alien not yet naturalized as they pass through the United States immigration and inspection process and is also retained for aliens who are naturalized. An A-File may also be created in other circumstances where a law enforcement action is instituted against an alien.

3.      DeBorba's A-File shows that he entered the United States on November 10, 1999, via Miami International Airport, using a nonimmigrant B2 visitor visa. DeBorba presented a valid Brazilian passport bearing no. CK327642 and stating he was a citizen of Brazil.

4.      A B2 visa is a visa permitting entry to the United States for the purpose of tourism and permits the visa holder to stay in the United States for up to six months. Through the B2 visa issued to him, DeBorba was admitted to the United States for a period of up to six months and was not authorized to remain in the United States beyond May 2000.

5.      DeBorba is not a United States citizen and currently lacks legal status in the United States. DeBorba is a Brazilian national and citizen.

6.      DeBorba's A-File contains no record of DeBorba ever departing the United States after his November 1999 entry or applying for an extension of authorized stay in the United States. There is also no record of DeBorba receiving permission to legally remain in the United States or of any other legal entry to the United States by DeBorba at any time after November 10, 1999. DeBorba admits that he never sought permission to remain in the United States before or after his B2 visitor visa expired and that he was aware at all times relevant to this case that he did not have legal status in the United

Stipulated Facts - 2
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  States.

2      7.      DeBorba applied for and obtained a Brazilian passport on January 24, 2018,

3  issued in Boston, Massachusetts. The passport states that DeBorba was born in Joinville,

4  Santa Catarina, Brazil, and lists him as a national of Brazil. A photo of the Brazilian

5  passport is attached as Exhibit 1.

6      8.      On February 25, 2019, DeBorba applied for a Concealed Pistol License

7  from the Washington State Department of Licensing in Clark County, Washington.

8  DeBorba personally filled out the application. The application contains DeBorba's name,

9  date of birth, residence address at the time, and DeBorba's signature. Next to the

10  question, "Are you a U.S. citizen?" DeBorba checked "Yes." Next to the questions, "Are

11  you a permanent resident alien?" and "Are you a legal alien temporarily residing in

12  Washington?" DeBorba checked "No." DeBorba left the boxes provided for the entry of

13  an applicant's permanent resident card number and alien registration/I-94 number blank.

14  DeBorba knew that his answers to these questions about his citizenship and his legal

15  status in the United States were false, and thus made the misrepresentations voluntarily

16  and deliberately. These questions on the Washington State Department of Licensing form

17  were posed for the purpose of ensuring that the Concealed Pistol License could be issued

18  to DeBorba in compliance with Revised Code of Washington 9.41.070 and 9.41.173 and

19  that DeBorba's possession of a firearm would comply with Title 18, United States Code,

20  Section 922(g)(5). A certified copy of the Concealed Pistol License Application is

21  attached hereto as Exhibit 2.

22      9.      DeBorba personally completed two Bureau of Alcohol, Tobacco, Firearms

23  and Explosives (ATF) Form 4473 Firearms Transaction Records, both in 2019. On both,

24  DeBorba knowingly falsely claimed to be a U.S. Citizen.

25      10.     DeBorba submitted the first of these forms on April 4, 2019, in connection

26  with the purchase of a Sig Sauer model 1911 STX .45 auto caliber handgun from a

27  Cabela's store in Lacey, Washington. As a Federal Firearms License holder and firearms

Stipulated Facts - 3
*United States v. DeBorba*, CR22-5139-DGE

1   dealer, Cabela's in Lacey is required by federal law to document sales of firearms using
2   Form 4473. Under Section A, which Form 4473 states must be completed personally by
3   the transferee/buyer, DeBorba's name is listed as the transferee/buyer. The form also
4   bears DeBorba's date of birth and Washington Driver's License number. The form also
5   lists DeBorba's residence address at the time, as well as the social security number that
6   was also found on a card bearing DeBorba's name found in DeBorba's possession on
7   May 6, 2022. On line 12.a. for Country of Citizenship, DeBorba checked the box next to
8   "United States of America (U.S.A.)." On line 12.c., next to the question, "Are you an
9   alien illegally or unlawfully in the United States?" DeBorba checked "No." On line
10  12.d.1., next to the question, "Are you an alien who has been admitted to the United
11  States under a nonimmigrant visa?," DeBorba checked No." DeBorba's statements
12  regarding his citizenship and legal status influenced Cabela's into believing that the
13  firearm could be sold to DeBorba in compliance with Title 18, United States Code,
14  Section 922(d)(5). The form bears DeBorba's signature on line 14 as the
15  Transferee/Buyer under a certification that the answers in Section A are true, that the
16  Transferee/Buyer has read and understood all the notices, instructions, and definitions
17  included in the form, and understood that any false oral or written statement on the form
18  is a felony under Federal law. The form is dated April 4, 2019, on line 15 next to the
19  signature. A certified copy of the Form 4473 is attached hereto as Exhibit 3.

20      11.     DeBorba submitted the second Form 4473 on May 8, 2019, in connection
21  with the purchase of a Rock Island Armory model M200 .38 special caliber handgun
22  from Brass Tacks Munitions in Vancouver, Washington. As a Federal Firearms License
23  holder and firearms dealer, Brass Tacks Munitions is required by federal law to document
24  sales of firearms using Form 4473. Under Section A, which Form 4473 states must be
25  completed personally by the transferee/buyer, DeBorba's name is listed as the
26  transferee/buyer, and the Form 4473 bears DeBorba's date of birth and Washington
27  Driver's License number. The form also lists DeBorba's residence address at the time, as

Stipulated Facts - 4
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 well as the social security number that was also found on a card bearing DeBorba's name

2 found in DeBorba's possession on May 6, 2022. On line 12.a. for Country of Citizenship,

3 DeBorba checked the box next to "United States of America (U.S.A.)." On line 12.c.,

4 next to the question, "Are you an alien illegally or unlawfully in the United States?"

5 DeBorba checked "No." On line 12.d.1., next to the question, "Are you an alien who has

6 been admitted to the United States under a nonimmigrant visa?" DeBorba checked "No."

7 DeBorba's statements regarding his citizenship and legal status influenced Brass Tacks

8 Munitions into believing that the firearm could be sold to DeBorba in compliance with

9 Title 18, United States Code, Section 922(d)(5). The form bears DeBorba's signature on

10 line 14 as the Transferee/Buyer under a certification that the answers in Section A are

11 true, that the Transferee/Buyer has read and understood all the notices instructions and

12 definitions included in the form, and understood that any false oral or written statement

13 on the form is a felony under Federal law. The form is dated May 8, 2019, on line 15 next

14 to the signature. A certified copy of the Form 4473 is attached hereto as Exhibit 4.

15       12.    On April 14, 2019, Washington State Patrol Officer Andrey Liksakov

16 investigated a single-vehicle collision on State Route 500 in Clark County, Washington

17 involving a white SUV. DeBorba admitted to Officer Liksakov that he was driving the

18 white SUV. DeBorba also told Officer Liksakov that he had a Concealed Pistol License

19 with him. Officer Liksakov conducted an inventory search of the white SUV and found a

20 black tactical backpack on the floorboard behind the passenger's seat. DeBorba told

21 Officer Liksakov that his Glock 26 handgun was in the backpack and gave him

22 permission to open it. Officer Liksakov did so and found the Glock 26.

23       13.    The firearm recovered from the backpack was a pistol having the following

24 markings, among others: on the frame of the firearm, "POLYMER80, INC.  MADE IN

25 U.S.A  DAYTON, NV"; on the slide of the firearm, "GLOCK  BGBU719" and

26 "Glock 26  Gen4  AUSTRIA  9x19"; and on the barrel, "BGBU719." The firearm was

27 examined by ATF Special Agent (SA) Claudia Grigore, who has training in firearm

Stipulated Facts - 5
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  interstate nexus determinations. SA Grigore determined that the Glock had been shipped
2  or transported in interstate or foreign commerce and was a "firearm" as that term is
3  defined by federal statute. Specifically, the slide and barrel of the firearm were
4  manufactured by Glock in Austria, and the frame of the firearm was manufactured using
5  a Polymer80 component, which is distributed by Polymer 80 inc. in Dayton, Nevada.
6  DeBorba stipulates that SA Grigore's findings establish that the firearm was transported
7  in interstate and foreign commerce.

8         14.     On November 12, 2019, a judge of the District Court of Washington for
9  Clark County issued a Domestic Violence No-Contact Order in case number 9Z1074494.
10  The order named DeBorba as the defendant and the protected person as A.D., who is the
11  mother of DeBorba's children and was at that time DeBorba's wife. A.D. is DeBorba's
12  "intimate partner" as that term is defined by federal statute. The order compelled
13  DeBorba to, among other things, "not cause, attempt, or threaten to cause bodily injury
14  to, assault, sexually assault, harass, stalk, or keep under surveillance the protected
15  person." The order also prohibited DeBorba from owning, possessing, or controlling any
16  firearm, and from accessing, obtaining, or possessing a concealed pistol license, and
17  ordered DeBorba to immediately surrender all firearms within his possession or control
18  and any concealed pistol license. The order contained a statement that "the court finds
19  that the defendant has been charged with, arrested for, or convicted of a domestic
20  violence offense," "that the defendant represents a credible threat to the physical safety of
21  the protected person," and that possession of a firearm by the defendant "presents a
22  serious and imminent threat to public health or safety, or to the health and safety of any
23  individual." The order is dated November 12, 2019, and states that it expires on
24  November 12, 2024. As the order states, it was issued in open court with DeBorba
25  present. It bears DeBorba's signature acknowledging receipt of the order. DeBorba
26  received actual notice of the terms of the order including the requirement that he
27  surrender his firearms. A certified copy of the order is attached hereto as Exhibit 5.

Stipulated Facts - 6
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

15.     On November 14, 2019, a judge of the District Court of Washington for Clark County issued a replacement Domestic Violence No-Contact Order in case number 9Z1074494. The order named DeBorba as the defendant and the protected person as A.D., who is the mother of DeBorba's children and was at that time DeBorba's wife. A.D. is DeBorba's "intimate partner" as that term is defined by federal statute. By its terms, DeBorba was ordered to, among other things, "not cause, attempt, or threaten to cause bodily injury to, assault, sexually assault, harass, stalk, or keep under surveillance the protected person." The order also prohibited DeBorba from owning, possessing, or controlling any firearm, and from accessing, obtaining, or possessing a concealed pistol license, and ordered DeBorba to immediately surrender all firearms within his possession or control and any concealed pistol license. The order contained a statement that "the court finds that the defendant has been charged with, arrested for, or convicted of a domestic violence offense," "that the defendant represents a credible threat to the physical safety of the protected person," and that possession of a firearm by the defendant "presents a serious and imminent threat to public health or safety, or to the health and safety of any individual." The order is dated November 14, 2019, and it states that it expires on November 12, 2024. As the order states, it was issued in open court with DeBorba present. It bears DeBorba's signature acknowledging receipt of the order. DeBorba received actual notice of the terms of the order including the requirement that he surrender his firearms. A certified copy of the order is attached hereto as Exhibit 6.

16.     On November 16, 2019, Vancouver Police Department Officer Zachary Allred responded to a call from A.D. reporting a restraining-order violation by DeBorba based on DeBorba repeatedly calling and sending messages to A.D. Officer Allred found DeBorba at his apartment and arrested him on suspicion of violating the order. Officer Allred read DeBorba his *Miranda* rights and confirmed that DeBorba understood them. DeBorba then voluntarily agreed to speak to law enforcement. Officer Allred asked DeBorba if he possessed any firearms, and DeBorba stated he did and confirmed they

Stipulated Facts - 7
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

were located in his apartment. DeBorba provided voluntary consent for law enforcement to enter the apartment to collect the firearms and provided the combination to a gun safe. Officers found the following firearms and ammunition in DeBorba's apartment:

- a Savage Arms model M11 .308 caliber rifle;
- a Sig Sauer model 1911 STX .45 auto caliber handgun;
- a KelTec model Sub-2000 .40 caliber rifle;
- a Century Arms model RAS47 7.62 caliber rifle;
- a Rock Island Armory model M200 .38 special caliber handgun;
- a Tanfoglio model GT27 .25 ACP caliber handgun;
- a Sig Sauer model P226 9mm caliber handgun;
- a KelTec model P-32 .32 ACP caliber handgun;
- a Taurus.357 magnum caliber handgun;
- a Rock Island Armory model M1911 .380 caliber handgun;
- a Ruger model Precision .17 HMR caliber rifle;
- a Bear Creek Arsenal model BCA15 rifle;
- a Savage Arms model 110 .338 caliber rifle;
- a Fabrique Nationale Herstal model 1952 rifle;
- a .308 caliber 1917 Enfield rifle;
- a Deutsche Waffen model 1908 7mm caliber rifle;
- a Remington model 870 12-gauge shotgun;
- a Spike's Tactical model ST15 5.56mm caliber rifle;
- a Winchester model 94 .30-30 caliber rifle,
- 20 rounds of CBC 9mm caliber ammunition; and
- 7 rounds of Blazer Brass .380 caliber ammunition.

A copy of Officer Allred's report is attached hereto as Exhibit 7.

17.     The firearms and ammunition listed in the preceding paragraph were seized and retained by law enforcement, and later examined by ATF SA Grigore. SA Grigore

Stipulated Facts - 8
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 | determined that each of the listed firearms and ammunition had been shipped or

2 | transported in interstate or foreign commerce, or otherwise affected interstate commerce

3 | and were a "firearm" or "ammunition" as that term is defined by federal statute. DeBorba

4 | stipulates that SA Grigore's findings satisfy the interstate or foreign commerce element

5 | of the federal firearms offenses that he is charged with as to these firearms and

6 | ammunition.

7 |          18.     On June 3, 2020, a judge of the Superior Court of Washington for Clark

8 | County issued a Domestic Violence No Contact Order in case number 20-1-01294-06.

9 | The order named DeBorba as the defendant and the protected person as A.D., who is the

10 | mother of DeBorba's children and was at that time DeBorba's ex-wife. A.D. is

11 | DeBorba's "intimate partner" as that term is defined by federal statute. Among other

12 | things, it ordered the defendant to be restrained from: "Causing or attempting to cause

13 | physical harm, bodily injury, assault, including sexually assault, and from molesting,

14 | harassing, threatening, or stalking the protected person." The order also stated the

15 | defendant "shall immediately surrender all firearms and other dangerous weapons within

16 | the defendant's possession or control and any concealed pistol license," and included a

17 | warning that "upon the court issuing a no-contact order after a hearing at which the

18 | defendant had an opportunity to participate, the defendant may not possess a firearm or

19 | ammunition for as long as the no-contact order is in effect." The order cited to "18 U.S.C.

20 | section 922(g)" and set forth the penalties provided for by that provision. The order is

21 | dated June 3, 2020, and it expires on June 3, 2025. As the order states, it was issued in

22 | open court with DeBorba present. It bears DeBorba's signature acknowledging receipt of

23 | the order. DeBorba received actual notice of the terms of the order including the

24 | requirement that he surrender his firearms and that he was prohibited from possessing

25 | firearms by 18 U.S.C. § 922(g). A certified copy of the order is attached hereto as

26 | Exhibit 8.

27 |          19.     On October 14, 2020, a judge of the Superior Court of Washington for

1 | Clark County issued a replacement Domestic Violence No Contact Order in case number
2 | 20-1-01294-06. The order named DeBorba as the defendant and the protected person as
3 | A.D., who is the mother of DeBorba's children and was at that time DeBorba's ex-wife.
4 | A.D. is DeBorba's "intimate partner" as that term is defined by federal statute. Among
5 | other things, it ordered the defendant to be restrained from: "Causing or attempting to
6 | cause physical harm, bodily injury, assault, including sexually assault, and from
7 | molesting, harassing, threatening, or stalking the protected person." The order included a
8 | warning that "upon the court issuing a no-contact order after a hearing at which the
9 | defendant had an opportunity to participate, the defendant may not possess a firearm or
10 | ammunition for as long as the no-contact order is in effect." The order cited to "18 U.S.C.
11 | section 922(g)" and set forth the penalties provided for by that provision. The order is
12 | dated October 14, 2020, and it expires on October 14, 2022. As the order states, it was
13 | issued in open court with DeBorba present. It bears DeBorba's signature acknowledging
14 | receipt of the order. DeBorba received actual notice of the terms of the order including
15 | the requirement that he surrender his firearms and that he was prohibited from possessing
16 | firearms by 18 U.S.C. § 922(g). A certified copy of the order is attached hereto as
17 | Exhibit 9.

18 |     20.     On August 23, 2021, a judge of the Superior Court of Washington for Clark
19 | County issued a Domestic Violence No Contact Order in case number 21-1-01539-06.
20 | The order named DeBorba as the defendant and the protected person as A.D., who is the
21 | mother of DeBorba's children and was at that time DeBorba's ex-wife. A.D. is
22 | DeBorba's "intimate partner" as that term is defined by federal statute. Among other
23 | things, it ordered the defendant to be restrained from: "Causing or attempting to cause
24 | physical harm, bodily injury, assault, including sexually assault, and from molesting,
25 | harassing, threatening, or stalking the protected person." The order included a warning
26 | that "upon the court issuing a no-contact order after a hearing at which the defendant had
27 | an opportunity to participate, the defendant may not possess a firearm or ammunition for

Stipulated Facts - 10
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 as long as the no-contact order is in effect." The order cited to "18 U.S.C. section 922(g)"

2 set forth the penalties provided for by that provision. The order is dated August 23, 2021,

3 and expires on August 23, 2026. As the order states, it was issued in open court with

4 DeBorba present. It bears DeBorba's signature acknowledging receipt of the order.

5 DeBorba received actual notice of the terms of the order including the requirement that

6 he surrender his firearms and that he was prohibited from possessing firearms by

7 18 U.S.C. § 922(g). A certified copy of the order is attached hereto as Exhibit 10.

8      21.     On January 31, 2022, a judge of the Superior Court of Washington for

9 Clark County issued a replacement Domestic Violence No Contact Order in case number

10 21-1-01539-06. The order named DeBorba as the defendant and the protected person as

11 A.D., who is the mother of DeBorba's children and was at that time DeBorba's ex-wife.

12 A.D. is DeBorba's "intimate partner" as that term is defined by federal statute. The order

13 stated it was "a post-conviction order prohibiting possession of firearms," and, among

14 other things, it ordered the defendant to be restrained from: "Causing or attempting to

15 cause physical harm, bodily injury, assault, including sexually assault, and from

16 molesting, harassing, threatening, or stalking the protected person." The order included a

17 warning that "upon the court issuing a no-contact order after a hearing at which the

18 defendant had an opportunity to participate, the defendant may not possess a firearm or

19 ammunition for as long as the no-contact order is in effect." The order cited to "18 U.S.C.

20 section 922(g)" and set forth the penalties provided for by that provision. The order is

21 dated January 31, 2022, and expires on January 31, 2027. As the order states, it was

22 issued in open court with DeBorba present. It bears DeBorba's signature acknowledging

23 receipt of the order. DeBorba received actual notice of the terms of the order including

24 the requirement that he surrender his firearms and that he was prohibited from possessing

25 firearms by 18 U.S.C. § 922(g). A certified copy of the order is attached hereto as

26 Exhibit 11.

27 //

Stipulated Facts - 11
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1      22.    Between August 2021 and May 2022, Officer Vossler received information

2 that DeBorba continued to possess firearms. That information included: (1) an additional

3 tip from the person who wished to remain anonymous; (2) a video posted to DeBorba's

4 Instagram social media account in which DeBorba fires an AR-15 type rifle outdoors.

5 Metadata associated with the video indicated that the video was taken on May 20, 2020,

6 in Washougal, Washington; (3) a video posted to a YouTube channel titled "joao

7 deborba" that shows DeBorba holding and operating a rifle at a firing range; and (4)

8 information from DeBorba's roommates indicating that he possessed a rifle. Based on

9 this information, Officer Vossler obtained a federal search warrant for DeBorba's

10 apartment in Vancouver, Washington.

11      23.    On May 6, 2022, law enforcement executed the federal search warrant at

12 DeBorba's apartment; DeBorba was present. Law enforcement located five firearms in

13 the apartment, specifically: two AR-15-type rifles bearing no serial number or

14 manufacturer's marks; an AR-15-type rifle with an attached bipod, bearing no serial

15 number or manufacturer's marks; a Ruger model LCP 9mm caliber handgun; and two

16 Polymer80 Glock-type handguns, one in 9mm and one in .380 caliber, bearing no serial

17 number or manufacturer's mark. Law enforcement also located numerous rounds of

18 ammunition, including Aguila .300 AAC blackout and Blazer Brass .380 auto

19 ammunition. Photos of some of the items found in the apartment are attached hereto as

20 Exhibit 12.

21      24.    In the bedroom, the officers found a workbench with a vice, and a large

22 amount of ammunition, firearms parts, firearms tools, AR-15 assembly instructions, a

23 Polymer80 pistol drilling jig, high-capacity magazines including what appeared to be a

24 50-round drum magazine for a Glock-type firearm, and other firearms accessories

25 including gun and rifle cases.

26      25.    Inside the workbench, law enforcement located what appeared to them to

27 be a completed firearms silencer or suppressor, in a box on which was written the words

Stipulated Facts - 12
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  "Tick Suppressor." A photo of the device in its box where it was located in a drawer of

2  the workbench is attached hereto as Exhibit 13 (Bates 08975). The device was seized and

3  later examined by ATF Firearms Enforcement Officer Jason Armstrong, who is trained in

4  examining devices to determine if they meet the definition of a "firearm" under the

5  National Firearms Act. Officer Armstrong examined and tested the firearm and

6  concluded that it is a device for silencing, muffling, or diminishing the report of a

7  portable firearm, meeting the definition of "firearm silencer" under 18 U.S.C.

8  § 921(a)(25) and therefore a "firearm" as defined in 26 U.S.C. § 5845(a)(7). A copy of

9  Officer Armstrong's curriculum vitae is attached hereto as Exhibit 14. A copy of Officer

10  Armstrong's report of his examination is attached hereto as Exhibit 15.

11       26.    Additionally, Elicia Elkins, a Firearms and Explosives Specialist and

12  custodian of the National Firearms Registration and Transfer Record, conducted a search

13  and confirmed that there is no evidence that the silencer was registered or lawfully

14  acquired by DeBorba. A copy of Elkins' report is attached hereto as Exhibit 16. DeBorba

15  stipulates that the silencer was not registered as a firearm silencer with the National

16  Firearms Registration and Transfer Record.

17       27.    DeBorba stipulates that Officer Armstrong's and Elkins's findings establish

18  that the item in the "Tick Suppressor" box in his workbench is a "firearm silencer" as

19  defined in 18 U.S.C. § 921(a)(25) and therefore a "firearm" as defined in 26 U.S.C.

20  § 5845(a)(7), and that he did not register or lawfully acquire it under the National

21  Firearms Act.

22       28.    Additionally, law enforcement seized the Ruger model LCP 9mm caliber

23  handgun and the Aguila .300 AAC blackout and Blazer Brass .380 auto ammunition

24  located at DeBorba's apartment on May 6, 2022 during the execution of the search

25  warrant. ATF SA Grigore later examined them. SA Grigore determined that the Ruger

26  model LCP 9mm caliber handgun and the above-listed ammunition had been shipped or

27  transported in interstate or foreign commerce, or otherwise affected interstate commerce

Stipulated Facts - 13
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

and were a "firearm" or "ammunition" as that term is defined by federal statute. DeBorba stipulates that SA Grigore's findings establish that these firearms and ammunition were transported in interstate or foreign commerce.

29.     In addition, during the execution of the federal search warrant on May 6, 2022, inside a safe located in DeBorba's bedroom, officers found, among other things:

- A Brazilian birth certificate bearing DeBorba's name and date of birth documenting DeBorba's birth on that date in Joinville, Santa Catarina, Brazil;
- A Washington State Concealed Pistol License bearing DeBorba's name and date of birth;

30.     On May 6, 2022, DeBorba voluntarily agreed to speak to law enforcement after being advised of his *Miranda* rights and confirming that he understood his rights. DeBorba told Special Agent Grant Taylor that he knew he was not supposed to have firearms due to his immigration status and his prior domestic violence convictions. DeBorba admitted he was a citizen of Brazil, that he came to the United States in 1999 on a B-2 tourist visa, and that he never sought or obtained authorization to remain in the United States. DeBorba reviewed pictures of the firearms seized from his residence during the execution of the federal search warrant. DeBorba admitted that the firearms in the pictures were his. A true and correct copy of SA Taylor's report is attached hereto as Exhibit 17.

IT IS SO STIPULATED.

DATED this 1ˢᵗ day of ~~January,~~ February, 2024.


_____
JOAO RICARDO DEBORBA
Defendant


_____
REBECCA FISH
Counsel for Defendant


_____
MAX SHINER
Assistant United States Attorney


_____
Max Shiner for
AMANDA MCDOWELL
Assistant United States Attorney

Stipulated Facts - 14
*United States v. DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Exhibit 1

*João Ricardo de Borba*

Assinatura do titular / Signature du titulaire
Bearer's signature / Firma del titular

Este passaporte deve ser assinado pelo titular,
salvo em caso de incapacidade.

Ce passeport doit être signé par le titulaire,
sauf en cas d'incapacité

This passport must be signed,
except where the bearer is unable to do so

Este pasaporte debe ser firmado por el titular,
salvo en caso de incapacidad




## REPÚBLICA FEDERATIVA DO BRASIL

**PASSAPORTE**
**PASSPORT**



| TIPO / TYPE | PAÍS EMISSOR / ISSUING COUNTRY | PASSAPORTE Nº / PASSPORT No. |
|---|---|---|
| P | BRA | YC609122 |

SOBRENOME / SURNAME
DE BORBA

NOME / GIVEN NAMES
JOÃO RICARDO

NACIONALIDADE / NATIONALITY
BRASILEIRO

DATA DE NASCIMENTO / DATE OF BIRTH ▬▬▬▬    IDENTIDADE Nº / PERSONAL No.

SEXO / SEX     NATURALIDADE / PLACE OF BIRTH
M              JOINVILLE, SC, BRASIL

DATA DE EXPEDIÇÃO / DATE OF ISSUE    AUTORIDADE / AUTHORITY
24 JAN/ JAN 2018                     BOSTON CG

VÁLIDO ATÉ / DATE OF EXPIRY
23 JAN/ JAN 2028

P<BRADE<BORBA<<JOAO<RICARDO<<<<<<<<<<<<<<<<<
YC609122<8BRA▬▬▬▬6M2801234<<<<<<<<<<<<<04

Exhibit 2

1

2

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)**

3   I, _Evelina Kuilenko_, attest, under penalties of perjury by

4   the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the

5   information contained in this certification is true and correct. I am employed by the

6   Clark County Sheriff's Office, and my title is _sup. Civil /CPL unit_. I am

7   qualified to authenticate the records attached hereto because I am familiar with how the

8   records were created, managed, stored, and retrieved. I state that the records attached

9   hereto are true duplicates of the original records in the custody of the Clark County

10   Sheriff's Office. The attached records consist of

11   _Deborba   CPL Application dated2/25/19_ I further state that:

12        a.  all records attached to this certificate were made at or near the time of the

13             occurrence of the matter set forth by, or from information transmitted by, a

14             person with knowledge of those matters;

15        b.  they were kept in the ordinary course of the regularly conducted business

16             activity of the Clark County Sheriff's Office; and

17        c.  they were made by the Clark County Sheriff's Office as a regular practice.

18        I further state that this certification is intended to satisfy Rule 902(11) of the

19   Federal Rules of Evidence.

20

21   _9-12-23_                    _Evelina Kuilenko_

22   Date                              Signature

23

24

25

26

27

**WASHINGTON STATE DEPARTMENT OF LICENSING**

3.18 ~~2/25.~~ JB    $49.25 LLB # 5508212~

# Concealed Pistol License Application

**PRINT or TYPE all information.**

Office use only
ID number ____
SID number ____
FBI number ____
CPL number ____

Application type
☒ Original application  ☐ Renewal of license  ☐ Late renewal of license  ☐ Replacement license

Name (Last, First, Middle)
DEBORBA  JOAO  Ricardo

CPL number, if applicable

Expiration date

Other names by which you have been known (for example: maiden name)

Driver license number

State
WA

Physical address—required
12800 SE 7th STREET

City
VANCOUVER

State
WA

ZIP code
98083

Mailing address (if different)

City

State

ZIP code

Date of birth ████████

Birthplace (City, State/Province, Country)
JOINVILLE  SC. / BRAZIL

(Area code) Telephone number
(978) 3985793

Gender
☒ Male  ☐ Female

Height
5 feet 7 inches

Weight
190 pounds

Eyes (color)
BROWN

Hair color
NONE

Ethnicity
☐ Hispanic or Latino  ☐ Not Hispanic or Latino

Race (Check all that apply)
☐ Black or African American  ☐ American Indian or Alaska Native  ☒ White  ☐ Asian  ☐ Native Hawaiian or Other Pacific Islander

List type and location of all marks, scars, and tattoos

EMAIL ADDRESS: KOLINHO2005@YAHOO.COM

**Residency**
1. Are you a U.S. citizen? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☒ Yes ☐ No
   If no, enter country of citizenship _____
2. Are you a permanent resident alien? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No
   If yes, enter your permanent resident card number _____
3. Are you a legal alien temporarily residing in Washington? . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No
   If yes, enter your alien registration/I-94 number _____ and;
   Enter your alien firearms license number: _____ Expiration date: _____

Answer the following
1. Have you ever been convicted in adult court or adjudicated in a juvenile court of the following crimes when committed by one family or household member against another, on or after July 1, 1993: assault in the fourth degree, coercion, stalking, reckless endangerment, criminal trespass in the first degree, or violation of the provision of a protection order or no-contact order restraining the person or excluding the person from a residence?. . . . . . ☐ Yes ☒ No
2. Are you now on bond or personal recognizance pending trial, appeal or sentence for any serious offense as defined in RCW 9.41.010 or for a felony for any crime where the judge can imprison you for more than one year? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No
3. Have you been convicted of 3 or more violations of Washington's firearms laws within any 5-year period? . . . ☐ Yes ☒ No
4. Are you an unlawful user of, or addicted to, marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No
5. Have you ever been adjudicated mentally defective (which includes having been adjudicated incompetent to manage your own affairs) or have you ever been committed to a mental institution? . . . . . . . ☐ Yes ☒ No
6. Have you been discharged from the Armed Forces under dishonorable conditions? . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No
7. Are you subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No
8. Have you been convicted in any court of a misdemeanor crime of domestic violence? . . . . . . . . . . ☐ Yes ☒ No
9. Have you ever renounced your United States citizenship? . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No
10. Are you an alien illegally in the United States? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No

Signing this application authorizes the Department of Social and Health Services, as well as mental-health institutions and other health-care facilities, to release information relevant to your eligibility for a concealed pistol license to an inquiring court or law-enforcement agency.

*I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.*

02/25/2019

Date and place signed

X _____
Applicant signature

09285

BM3 SA
CDL / Rbn't
WASHINGTON STATE DEPARTMENT OF
**LICENSING**

s.18 2/25. JB · 9.25 LLB # 5508212

## Concealed Pistol License Application

Office use only

ID number

SID number

FBI number

CPL number

**PRINT or TYPE all information.**

**Application type**
☒ Original application ☐ Renewal of license ☐ Late renewal of license ☐ Replacement license

CPL number, if applicable

Expiration date

**Name** (Last, First, Middle)
DEBORBA   JOAO   RICARDO

Other names by which you have been known (for example: maiden name)

Driver license number

State
WA

**Physical address—required**
12800 SE 7th STREET

City
VANCOUVER

State
WA

ZIP code
98083

Mailing address (if different)

City

State

ZIP code

**Date of birth**

**Birthplace** (City, State/Province, Country)
JOINVILLE SC / BRAZIL

(Area code) Telephone number
(978) 3985793

**Gender**
☒ Male ☐ Female

**Height** 5 feet 7 inches   **Weight** 190 pounds   **Eyes** (color) BROWN   **Hair color** NONE

**Ethnicity**
☐ Hispanic or Latino ☐ Not Hispanic or Latino

**Race** (Check all that apply)
☐ Black or African American ☐ American Indian or Alaska Native ☒ White ☐ Asian ☐ Native Hawaiian or Other Pacific Islander

List type and location of all marks, scars, and tattoos

EMAIL ADDRESS: KOLINHO2005@YAHOO.CO

**Residency**

1. Are you a U.S. citizen? ........................................................... ☒ Yes ☐ No

   If no, enter country of citizenship _____

2. Are you a permanent resident alien? ........................................ ☐ Yes ☒ No

   If yes, enter your permanent resident card number _____

3. Are you a legal alien temporarily residing in Washington? .................... ☐ Yes ☒ No

   If yes, enter your alien registration/I-94 number _____ and;

   Enter your alien firearms license number: _____ Expiration date: _____

**Answer the following**

1. Have you ever been convicted in adult court or adjudicated in a juvenile court of the following crimes when committed by one family or household member against another, on or after July 1, 1993: assault in the fourth degree, coercion, stalking, reckless endangerment, criminal trespass in the first degree, or violation of the provision of a protection order or no-contact order restraining the person or excluding the person from a residence?. . . . ☐ Yes ☒ No

2. Are you now on bond or personal recognizance pending trial, appeal or sentence for any serious offense as defined in RCW 9.41.010 or for a felony for any crime where the judge can imprison you for more than one year? ........................ ☐ Yes ☒ No

3. Have you been convicted of 3 or more violations of Washington's firearms laws within any 5-year period?. . . ☐ Yes ☒ No

4. Are you an unlawful user of, or addicted to, marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance? .......................... ☐ Yes ☒ No

5. Have you ever been adjudicated mentally defective (which includes having been adjudicated incompetent to manage your own affairs) or have you ever been committed to a mental institution?. . . . ☐ Yes ☒ No

6. Have you been discharged from the Armed Forces under dishonorable conditions? ........... ☐ Yes ☒ No

7. Are you subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner?. . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No

8. Have you been convicted in any court of a misdemeanor crime of domestic violence? . . . . . . . . ☐ Yes ☒ No

9. Have you ever renounced your United States citizenship? ..................... ☐ Yes ☒ No

10. Are you an alien illegally in the United States? ........................... ☐ Yes ☒ No

Signing this application authorizes the Department of Social and Health Services, as well as mental-health institutions and other health-care facilities, to release information relevant to your eligibility for a concealed pistol license to an inquiring court or law-enforcement agency.

*I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.*

02/25/2019

Date and place signed

X _____
Applicant signature

FIR-652-007 (R/2/17) WA Page 1 of 2

09286

Exhibit 3

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _Raul Aguiar Garibay_, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Cabela's, and my title is _Hardlines Manager_. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Cabela's. The attached records consist of _Deborah 4473 on 4/4/2019 6 pages_.

I further state that:

    a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters;

    b. they were kept in the ordinary course of the regularly conducted business activity of Cabela's; and

    c. they were made by Cabela's as a regular practice.

I further state that

    this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_9/8/2023_

Date

_Raul Aguir_

Signature

OMB No. 1140-0020

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

Gun IDs: 8331337

**Firearms Transaction Record**
Phone Number: 978-398-5793

Double Check: *MC*

| | |
|---|---|

WARNING: You may not receive a firearm if prohibited by Federal or State law. The information you provide will be used to determine whether you are prohibited from receiving a firearm. Certain violations of the Gun Control Act, 18 U.S.C. 921 et. seq., are punishable by up to 10 years imprisonment and/or up to a $250,000 fine.

Read the Notices, Instructions, and Definitions on this form. Prepare in original only at licensed premises *("licensed premises" includes business temporarily conducted from a qualifying gun show or event in the same State in which the licensed premises is located)* unless the transaction qualifies under 18 U.S.C. 922(c). All entries must be handwritten in ink. "PLEASE PRINT."

Transferor's/Seller's Transaction Serial Number *(If any)*

**200558**

**Section A – Must Be Completed Personally By Transferee/Buyer**

1. Transferee's/Buyer's Full Name *(If legal name contains an initial only, record "IO" after the initial. If no middle initial or name, record "NMN".)*

| Last Name *(Including suffix (e.g., Jr, Sr, II, III))* | First Name | Middle Name |
|---|---|---|
| **DEBORBA** | **JOAO** | **RICARDO** |

2. Current State of Residence and Address (U.S. Postal abbreviations are acceptable. Cannot be a post office box.)

| Number and Street Address | City | County | State | ZIP Code |
|---|---|---|---|---|
| **12800 SE 7TH STREET APT# E1** | **VANCOUVER** | **CLARK** | **WA** | **98683** |

| 3. Place of Birth | 4. Height | 5. Weight (Lbs.) | 6. Sex | 7. Birth Date | | |
|---|---|---|---|---|---|---|
| U.S. City and State   -OR-   Foreign Country **BRAZIL** | Ft. **5** In. **7** | **190** | ☒ Male  ☐ Female | Month ▇ | Day ▇ | Year ▇▇ |

8. Social Security Number *(Optional, but will help prevent misidentification)*
▇▇▇▇▇▇

9. Unique Personal Identification Number *(UPIN)* if applicable *(See Instructions for Question 9.)*

| 10.a. Ethnicity | 10.b. Race *(In addition to ethnicity, select one or more race in 10.b. Both 10.a. and 10.b. must be answered.)* | | | |
|---|---|---|---|---|
| ☐ Hispanic or Latino | ☐ American Indian or Alaska Native | ☐ Black or African American | ☒ White | |
| ☒ Not Hispanic or Latino | ☐ Asian | ☐ Native Hawaiian or Other Pacific Islander | | |

11. Answer the following questions by checking or marking *"yes"* or *"no"* in the boxes to the right of the questions.

| | | Yes | No |
|---|---|---|---|
| a. | Are you the actual transferee/buyer of the firearm(s) listed on this form? Warning:   You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person.  If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you. *Exception: If you are picking up a repaired firearm(s) for another person, you are not required to answer question 11.a. and may proceed to question 11.b. (See Instructions for Question 11.a.)* | ☒ | ☐ |
| b. | Are you under indictment or information in any court for a felony, or any other crime for which the judge could imprison you for more than one year? *(See Instructions for Question 11.b.)* | ☐ | ☒ |
| c. | Have you ever been convicted in any court of a felony,or any other crime for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation? *(See Instructions for Question 11.c.)* | ☐ | ☒ |
| d. | Are you a fugitive from justice? *(See Instructions for Question 11.d.)* | ☐ | ☒ |
| e. | Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance? Warning: The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside. | ☐ | ☒ |
| f. | Have you ever been adjudicated mentally defective OR have you ever been committed to a mental institution? *(See Instructions for Question 11.f.)* | ☐ | ☒ |
| g. | Have you been discharged from the Armed Forces under dishonorable conditions? | ☐ | ☒ |
| h. | Are you subject to a court order restraining you from harassing,stalking,or threatening your child or an intimate partner or child of such partner? *(See Instructions for Question 11.h.)* | ☐ | ☒ |
| i. | Have you ever been convicted in any court of a misdemeanor crime of domestic violence? *(See Instructions for Question 11.i.)* | ☐ | ☒ |

12.a. Country of Citizenship *(Check/List more than one, if applicable. Nationals of the United States may check U.S.A.)*
☒ United States of America *(U.S.A)*   ☐ Other Country/Countries *(Specify)*:

| | | Yes | No |
|---|---|---|---|
| 12.b. | Have you ever renounced your United States citizenship? | ☐ | ☒ |
| 12.c. | Are you an alien illegally or unlawfully in the United States? | ☐ | ☒ |
| 12.d.1. | Are you an alien who has been admitted to the United States under a nonimmigrant visa? *(See Instructions for Question 12.d.)* | ☐ | ☒ |
| 12.d.2. | If "yes", do you fall within any of the exceptions stated in the instructions? | ☒ N/A | ☐ ☐ |

13. If you are an alien, record your U.S.-Issued Alien or Admission number *(AR#, USCIS#, or I94#)*:

| | | |
|---|---|---|
| Previous Editions Are Obsolete | **Transferee/Buyer Continue to Next Page** | ATF E-Form 4473 (5300.9) |
| Page 1 of 6 | **STAPLE IF PAGES BECOME SEPARATED** | Revised October 2016 |

I certify that my answers in Section A are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473. I understand that answering "yes" to question 11.a. if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I understand that a person who answers "yes" to any of the questions 11.b. through 11.i and/or 12.b. through 12.c. is prohibited from purchasing or receiving a firearm. I understand that a person who answers "yes" to question 12.d.1. is prohibited from receiving or possessing a firearm, unless the person answers "yes" to question 12.d.2. and provides the documentation required in 18.c. I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable under Federal law, and may also violate State and/or local law. I further understand that the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of Federal law. (See Instructions for Question 14).

| 14. Transferee's/Buyer's Signature | 15. Certification Date |
| --- | --- |
| | 04/04/2019 |

### Section B – Must Be Completed By Transferor/Seller

| 16. Type of firearm(s) to be transferred (check or mark all that apply)  : | 17. If transfer is at a qualifying gun show or event: |
| --- | --- |
| [X] Handgun   [ ] Long Gun   [ ] Other Firearm (frame, receiver, etc. See Instructions for Question 16.) (rifles or shotguns) | Name of Function: _____<br>City, State: _____ |

18.a. Identification (e.g., VA driver's license (VA DL) or other valid government-issued photo identification.) (See Instructions for Question 18.a.)

| Issuing Authority and Type of Identification | Number on Identification | Expiration Date of Identification (if any) | | |
| --- | --- | --- | --- | --- |
| **WA/DRIVER'S LICENSE** | ████████ B | Month ██ | Day ██ | Year 2024 |

18.b. Supplemental Government Issued Documentation (if identification document does not show current residence address)   (See Instructions for Question 18.b.)

**WA CPL CLARK COUNTY SHERIFF:CK0042517:03/23/2024**

18.c. Exception to the Nonimmigrant Alien Prohibition: If the transferee/buyer answered "YES" to 12.d.2. the transferor/seller must record the type of documentation showing the exception to the prohibition and attach a copy to this ATF Form 4473. (See Instructions for Question 18.c.)

### Questions 19, 20, or 21 Must Be Completed Prior To The Transfer Of The Firearm(s) (See Instructions for Questions 19, 20 and 21.)

| 19.a. Date the transferee's/buyer's identifying information in Section A was transmitted to NICS or the appropriate State agency: | 19.b. The NICS or State transaction number (if provided) was: |
| --- | --- |
| Month 04   Day 04   Year 2019 | 100YTP0TJ |

| 19.c. The response initially (first) provided by NICS or the appropriate State agency was: | 19.d. The following response(s) was/were later received from NICS or the appropriate State agency: |
| --- | --- |
| [X] Proceed   [ ] Delayed<br>[ ] Denied   [The firearm(s) may be transferred on<br>[ ] Cancelled   _____ if State law permits (optional)] | [ ] Proceed _____ (date)   [ ] Overturned<br>[ ] Denied _____ (date)<br>[ ] Cancelled _____ (date)<br>[ ] No response was provided within 3 business days. |

19.e. (Complete if applicable.) After the firearm was transferred, the following response was received from NICS or the appropriate State agency on:

_____ (date).   [ ] Proceed   [ ] Denied   [ ] Cancelled

| 19.f. The name and Brady identification number of the NICS examiner (Optional) | 19.g. Name of FFL Employee Completing NICS check. (Optional) |
| --- | --- |
| _____ (name)   _____ (number) | **BARBARA KUNDA** |

| 20. | [ ] No NICS check was required because a background check was completed during the NFA approval process on the individual who will receive the NFA firearm(s), as reflected on the approved NFA application. (See Instructions for Question 20.) |
| --- | --- |

| 21. | [ ] No NICS check was required because the transferee/buyer has a valid permit from the State where the transfer is to take place, which qualifies as an exemption to NICS. (See Instructions for Question 21.) |
| --- | --- |

| Issuing State and Permit Type | Date of Issuance (if any) | Expiration Date (if any) | Permit Number (if any) |
| --- | --- | --- | --- |
| | | | |

### Section C - Must Be Completed Personally By Transferee/Buyer

If the transfer of the firearm(s) takes place on a different day from the date that the transferee/buyer signed Section A, the transferee/buyer must complete Section C immediately prior to the transfer of the firearm(s). (See Instructions for Question 22 and 23.)

I certify that my answers to the questions in Section A of this form are still true, correct and complete.

| 22. Transferee's/Buyer's Signature | 23. Recertification Date |
| --- | --- |
| | |

Transferor/Seller Continue to Next Page
STAPLE IF PAGES BECOME SEPARATED

ATF E-Form 4473 (5300.9)
Revised October 2016

00502

09289

**Section D – Must Be Completed By Transferor /Seller Even If The Firearm(s) is Not Transferred**

| 24. Manufacturer and Importer (If any) (if the manufacturer and importer are different, the FFL should include both.) | 25. Model (If Designated) | 26. Serial Number | 27. Type (See Instructions for Question 27.) | 28. Caliber or Gauge |
|---|---|---|---|---|
| 1. **SIG SAUER** | **1911 STX** | **54E026501** | **PISTOL** | **.45 AUTO** |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |

REMINDER - By the Close of Business Complete ATF Form 3310.4 For Multiple Purchases of Handguns Within 5 Consecutive Business Days

| 29. Total Number of Firearms Transferred (Please handwrite by printing e.g., zero, one, two, three, etc Do not use numerals.) **ONE** | 30. Check if any part of this transaction is a pawn redemption. ☐ Line Number(s) From Question 24 Above: |
|---|---|
| 31. For Use by Licensee (See Instructions for Question 31.) | 32. Check if this transaction is to facilitate a private party transfer. ☐ (See Instructions for Question 32) |

33. Trade/corporate name and address of transferor/seller and Federal Firearm License Number (Must contain at least first three and last five digits of FFL Number X-XX-XXXXX.) (Hand stamp may be used.)

**Cabela's 026**
**9-91-02712**

**1600 Gateway Blvd NE**
**Lacey, Washington 98516**

The Person Transferring The Firearm(s) Must Complete Questions 34-37.
For Denied/Cancelled Transactions, The Person Who Completed Section B Must Complete Questions 34-36.

I certify that: (1) I have read and understand the Notices, Instructions, and Definitions on this ATF Form 4473; (2) the information recorded in Sections B and D is true, correct, and complete; and (3) this entire transaction record has been completed at my licensed business premises ("licensed premises" includes business temporarily conducted from a qualifying gun show or event in the same State in which the licensed premises is located) unless this transaction has met the requirements of 18 U.S.C. 922(c). Unless this transaction has been denied or cancelled, I further certify on the basis of — (1) the transferee's/buyer's responses in Section A (and Section C, if applicable); (2) my verification of the identification recorded in question 18 (and my re-verification at the time of transfer,if Section C was completed); and (3) State or local law applicable to the firearms business — it is my belief that it is not unlawful for me to sell, deliver, transport, or otherwise dispose of the firearm(s) listed on this form to the person identified in Section A.

| 34. Transferor's/Seller's Name (Please print) | 35. Transferor's/Seller's Signature | 36. Transferor's/Seller's Title | 37. Date Transferred |
|---|---|---|---|
| **BARBARA KUNDA** | *Barbara Kunda* | **OUTFITTER** | **04/04/2019** |

### NOTICES, INSTRUCTIONS AND DEFINITIONS

**Purpose of the Form:**The information and certification on this form are designed so that a person licensed under 18 U.S.C. 923 may determine if he/she may lawfully sell or deliver a firearm to the person identified in Section A, and to alert the transferee/buyer of certain restrictions on the receipt and possession of firearms. The transferor/seller of a firearm must determine the lawfulness of the transaction and maintain proper records of the transaction. Consequently, the transferor/seller must be familiar with the provisions of 18 U.S.C. 921-931 and the regulations in 27 CFR Parts 478 and 479. In determining the lawfulness of the sale or delivery of a rifle or shotgun to a resident of another State, the transferor/seller is presumed to know the applicable State laws and published ordinances in both the transferor's/seller's State and the transferee's/buyer's State. (See ATF Publication 5300.5, State Laws and Published Ordinances.)

Generally, ATF Form 4473 must be completed at the licensed business premises when a firearm is transferred over-the-counter. Federal law, 18 U.S.C. 922(c), allows a licensed importer, manufacturer, or dealer to sell a firearm to a nonlicensee who does not appear in person at the licensee's business premises only if the transferee/buyer meets certain requirements. These requirements are set forth in section 922(c), 27 CFR 478.96(b), and ATF Procedure 2013-2.

After the transferor/seller has completed the firearms transaction, he/she must make the completed, original ATF Form 4473 (which includes the Notices, General Instructions, and Definitions), and any supporting documents, part of his/her permanent records. Such Forms 4473 must be retained for at least 20 years and after that period may be submitted to ATF. Filing may be chronological (by date of disposition), alphabetical (by name of purchaser), or numerical (by transaction serial number), as long as all of the transferor's/seller's completed Forms 4473 are filed in the same manner.

FORMS 4473 FOR DENIED/CANCELLED TRANSFERS MUST BE RETAINED. If the transfer of a firearm is denied/cancelled by NICS, or if for any other reason the transfer is not completed after a NICS check is initiated, the licensee must retain the ATF Form 4473 in his/her records for at least 5 years. Forms 4473 with respect to which a sale, delivery, or transfer did not take place shall be separately retained in alphabetical (by name of transferee) or chronological (by date of transferee's certification) order.

If the transferor/seller or the transferee/buyer discovers that an ATF Form 4473 is incomplete or improperly completed after the firearm has been transferred, and the transferor/seller or the transferee/buyer wishes to correct the omission(s) or error(s), photocopy the inaccurate form and make any necessary additions or revisions to the photocopy. The transferor/seller should only make changes to Sections B and D. The transferee/buyer should only make changes to Section A and C. Whoever made the changes should initial and date the changes. The corrected photocopy should be attached to the original Form 4473 and retained as part of the transferor's/seller's permanent records.

**Exportation of Firearms:** The State or Commerce Departments may require a firearms exporter to obtain a license prior to export. **Warning:** Any person who exports a firearm without proper authorization may be fined not more than $1,000,000 and/or imprisoned for not more than 20 years. See 22 U.S.C. 2778(c)

#### Section A

The transferee/buyer must personally complete Section A of this form and certify (sign) that the answers are true, correct, and complete. However, if the transferee/ buyer is unable to read and/or write, the answers (other than the signature) may be completed by another person, excluding the transferor/seller. Two persons (other than the transferor/seller) must then sign as witnesses to the transferee's/buyer's answers and signature/certification in question 14

ATF E-Form 4473 (5300.9)
Revised October 2016

00503

09290

When the transferee/buyer of a firearm is a corporation, company, association, partnership, or other such business entity, an officer authorized to act on behalf of the business must complete Section A of the form with his/her personal information, sign Section A, and attach a written statement, executed under penalties of perjury, stating: (A) the firearm is being acquired for the use of and will be the property of that business entity, and (B) the name and address of that business entity.

**Question 1.** If the transferee's/buyer's name in question 1 is illegible, the transferor/seller must print the transferee's/buyer's name above the name written by the transferee/buyer

**Question 2. Current Residence Address:** A rural route (RR) may be accepted provided the transferee/buyer lives in a State or locality where it is considered a legal residence address  County and Parish are one and the same.

If the transferee/buyer is a member of the Armed Forces on active duty, his/her State of residence is the State in which his/her permanent duty station is located. If the service member is acquiring a firearm in a State where his/her permanent duty station is located, but resides in a different State, the transferee/buyer must list both his/her permanent duty station address and his/her residence address in response to question 2. If the transferee/buyer has two States of residence, the transferee/buyer should list his/her current residence address in response to question 2  (e.g., if the transferee/buyer is purchasing a firearm while staying at his/her weekend home in State X, he/she should list the address in State X in response to question 2).

**Question 9. Unique Personal Identification Number (UPIN):** For transferees/buyers approved to have information maintained about them in the FBI NICS Voluntary Appeal File, NICS will provide them with a UPIN, which the transferee/buyer should record in question 9, The licensee should provide the UPIN when conducting background checks through the NICS or the State POC.

**Question 10.a. and 10.b.** Federal regulations (27 CFR 478 124(c)(1)) require licensees to obtain the race of the transferee/buyer. This information helps the FBI and/or State POC make or rule out potential matches during the background check process and can assist with criminal investigations. Pursuant to Office of Management and Budget (OMB), effective January 1, 2003, all Federal agencies requiring collection of race and ethnicity information on administrative forms and records, were required to collect this information in a standard format. (See 62 FR 58782) The standard OMB format consists of two categories for data on ethnicity: "Hispanic or Latino," and "Not Hispanic or Latino" and five categories for data on race, American Indian or Alaska Native, Asian, Black or African American, Native Hawaiian or Other Pacific Islander, and White

Ethnicity refers to a person's heritage  Persons of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin, regardless of race, are considered Hispanic or Latino

Race - one or more of the following responses must be selected: (1) American Indian or Alaska Native - A person having origins in any of the original peoples of North and South America (including Central America), and who maintains a tribal affiliation or community attachment; (2) Asian - A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian subcontinent including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam; (3) Black or African American - A person having origins in any of the Black racial groups of Africa; (4) Native Hawaiian or Other Pacific Islander - A person having origins in any of the original peoples of Hawaii, Guam, Samoa, or other Pacific Islands; and (5) White - A person having origins in any of the original peoples of Europe, the Middle East, or North Africa. Any other race or ethnicity that does not fall within those indicated, please select the closest representation

**Question 11.a. Actual Transferee/Buyer:** For purposes of this form, a person is the actual transferee/buyer if he/she is purchasing the firearm for him/herself or otherwise acquiring the firearm for him/herself  (e.g., redeeming the firearm from pawn, retrieving it from consignment, firearm raffle winner). A person is also the actual transferee/buyer if he/she is legitimately purchasing the firearm as a bona fide gift for a third party. A gift is not bona fide if another person offered or gave the person completing this form money, service(s), or item(s) of value to acquire the firearm for him/her, or if the other person is prohibited by law from receiving or possessing the firearm.

**Actual TRANSFEREE/buyer examples:** Mr. Smith asks Mr. Jones to purchase a firearm for Mr. Smith  (who may or may not be prohibited). Mr. Smith gives Mr Jones the money for the firearm. Mr. Jones is NOT THE
Page 4 of 6

**ACTUAL TRANSFEREE/BUYER** of the firearm and must answer "NO" to question 11.a. The licensee may not transfer the firearm to Mr. Jones. However, if Mr. Brown buys the firearm with his own money to give to Mr  Black as a gift  (with no service or tangible thing of value provided by Mr. Black), Mr. Brown is the actual transferee/buyer of the firearm and should answer "YES" to question 11.a. However, the transferee/seller may not transfer a firearm to any person he/she knows or has reasonable cause to believe is prohibited under 18 U.S.C. 922(g), (n) or (x).
**EXCEPTION:** If a person is picking up a repaired firearm(s) for another person, he/she is not required to answer 11.a. and may proceed to question 11.b.

**Question 11.b.-12.** Generally, 18 U.S.C. 922(g) prohibits the shipment, transportation, receipt, or possession in or affecting interstate commerce of a firearm by one who: has been convicted of a felony in any Federal, State or local court, or any other crime, punishable by imprisonment for a term exceeding one year  (this does not include State misdemeanors punishable by imprisonment of two years or less); is a fugitive from justice; is an unlawful user of, or addicted to, marijuana or any depressant, stimulant, or narcotic drug, or any other controlled substance; has been adjudicated as a mental defective or has been committed to a mental institution, has been discharged from the Armed Forces under dishonorable conditions; is subject to certain restraining orders; convicted of a misdemeanor crime of domestic violence under Federal, State or Tribal law; has renounced his/her U.S. citizenship; is an alien illegally in the United States or an alien admitted to the United States under a nonimmigrant visa. Furthermore, section 922(n) prohibits the shipment, transportation, or receipt in or affecting interstate commerce of a firearm by one who is under indictment or information for a felony in any Federal, State or local court, or any other crime, punishable by imprisonment for a term exceeding one year. An information is a formal accusation of a crime verified by a prosecutor.

A member of the Armed Forces must answer "yes" to 11 b. or 11.c  if charged with an offense that was either referred to a General Court Martial, or at which the member was convicted. Discharged "under dishonorable conditions" means separation from the Armed Forces resulting from a dishonorable discharge or dismissal adjudged by a General Court-Martial. That term does not include any other discharge or separation from the Armed Forces.

*EXCEPTION:* A person who has been convicted of a felony, or any other crime, for which the judge could have imprisoned the person for more than one year, or who has been convicted of a misdemeanor crime of domestic violence, is not prohibited from purchasing, receiving, or possessing a firearm if: (1) under the law of the jurisdiction where the conviction occurred, the person has been pardoned, the conviction has been expunged or set aside, or the person has had their civil rights  (the right to vote, sit on a jury, and hold public office) taken away and later restored, AND (2) the person is not prohibited by the law of the jurisdiction where the conviction occurred from receiving or possessing firearms. Persons subject to this exception, or who receive relief from disabilities under 18 U.S.C. 925(c), should answer "no" to the applicable question.

**Question 11.d. Fugitive from Justice:** Any person who has fled from any State to avoid prosecution for a felony or a misdemeanor, or any person who leaves the State to avoid giving testimony in any criminal proceeding. The term also includes any person who knows that misdemeanor or felony charges are pending against such person and who leaves the State of prosecution.

**Question 11.f. Adjudicated as a Mental Defective:** A determination by a court, board, commission, or other lawful authority that a person, as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease  (1) is a danger to himself or to others; or (2) lacks the mental capacity to contract or manage his own affairs. This term shall include: (1) a finding of insanity by a court in a criminal case; and (2) those persons found incompetent to stand trial or found not guilty by reason of lack of mental responsibility.

**Committed to a Mental Institution:** A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution

*EXCEPTION:* Under the NICS Improvement Amendments Act of 2007, a person who has been adjudicated as a mental defective or committed to a mental institution in a State proceeding is not prohibited by the adjudication or commitment if

ATF E-Form 4473 (5300 9)
Revised October 2016

00504

09291

the person has been granted relief for the adjudicating/committing State pursuant to a qualifying mental health relief from disabilities program. Also, a person who has been adjudicated as a mental defective or committed to a mental institution by a department or agency of Federal Government is not prohibited by the adjudication or commitment if either: (a) the person's adjudication or commitment was set-aside or expunged by the adjudicating/committing agency; (b) the person has been fully released or discharged from all mandatory treatment, supervision, or monitoring by the agency; (c) the person was found by the agency to no longer suffer from the mental health condition that served as the basis of the initial adjudication/commitment; or (d) the adjudication or commitment, respectively, is based solely on a medical finding of disability, without an opportunity for a hearing by a court, board, commission, or other lawful authority, and the person has not been adjudicated as a mental defective consistent with section 922(g)(4) of title 18, United States Code, (e) the person was granted relief from the adjudicating/committing agency pursuant to a qualified mental health relief from disabilities program. Persons who fall within one of the above exceptions should answer "no" to question 11.f. This exception to an adjudication or commitment by a Federal department or agency does not apply to any person who was adjudicated or found incompetent to stand trial, in any criminal case or under the Uniform Code of Military Justice.

**Question 11.h. Qualifying Restraining Orders:** Under 18 U.S.C. 922, firearms may not be sold to or received by persons subject to a court order that: (A) was issued after a hearing which the person received actual notice of and had an opportunity to participate in; (B) restrains such person from harassing, stalking, or threatening an intimate partner or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury. An "intimate partner" of a person is: the spouse or former spouse of the person, the parent of a child of the person, or an individual who cohabitates or has cohabitated with the person.

**Question 11.i. Misdemeanor Crime of Domestic Violence:** A Federal, State, local, or tribal offense that is a misdemeanor under Federal, State, or tribal law and has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with, or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim. The term includes all misdemeanors that have as an element the use or attempted use of physical force or the threatened use of a deadly weapon *(e.g., assault and battery)*, if the offense is committed by one of the defined parties. *(See Exception in 11.h. - 12.)* A person who has been convicted of a misdemeanor crime of domestic violence also is not prohibited unless: (1) the person was represented by a lawyer or gave up the right to a lawyer; or (2) if the person was entitled to a jury, was tried by a jury, or gave up the right to a jury trial. Persons subject to this exception should answer "no" to 11.i.

**Question 12.d. Immigration Status:** An alien admitted to the United States under a nonimmigrant visa includes, among others, persons visiting the United States temporarily for business or pleasure, persons studying in the United States who maintain a residence abroad, and certain temporary foreign workers. These aliens must answer "yes" to this question and provide the additional documentation required under question 18.c. Permanent resident aliens and aliens legally admitted to the United States pursuant to either the Visa Waiver Program or to regulations otherwise exempting them from visa requirements may answer "no" to this question and are not required to submit the additional documentation under question 18.c.

**Question 13. U.S.-issued Alien Number or Admission Number:** U.S.-issued alien and admission numbers may be found on the following U.S. Department of Homeland Security documents: Legal Resident Card or Employment Authorization Card (AR# or USCIS#); Arrival/Departure Record, Form 194, or Form 797A (194#). Additional information can be obtained from www.cbp.gov. If you are a U.S. citizen or U.S. national then this question should be left blank.

**Question 14.** Under 18 U.S.C. 922(a)(1), it is unlawful for a person to engage in the business of dealing in firearms without a license. A person is engaged in the business of dealing in firearms if he/she devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal

objective of livelihood and profit through the repetitive purchase and resale of firearms. A license is not required of a person who only makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his/her personal collection of firearms.

**Section B**

**Question 16. Type of Firearm(s):** "Other" refers to frames, receivers and other firearms that are neither handguns nor long guns (rifles or shotguns), such as firearms having a pistol grip that expel a shotgun shell, or National Firearms Act (NFA) firearms, including silencers.

If a frame or receiver can only be made into a long gun (rifle or shotgun), it is still a frame or receiver not a handgun or long gun. However, frames and receivers are still "firearms" by definition, and subject to the same GCA limitations as any other firearms. See Section 922(b)(1) makes it unlawful for a licensee to sell any firearm other than a shotgun or rifle to any person under the age of 21. Since a frame or receiver for a firearm, to include one that can only be made into a long gun, is a "firearm other than a shotgun or rifle," it cannot be transferred to anyone under the age of 21, nor can these firearms be transferred to anyone who is not a resident of the State where the transfer is to take place. Also, note that multiple sales forms are not required for frames or receivers of any firearms, or pistol grip shotguns, since they are not "pistols or revolvers" under Section 923(g)(3)(A)

**Question 17. Qualifying Gun Show or Event:** As defined in 27 CFR 478.100, a gun show or event is a function sponsored by any national, State, or local organization, devoted to the collection, competitive use, or other sporting use of firearms, or an organization or association that sponsors functions devoted to the collection, competitive use, or other sporting use of firearms in the community

**Question 18.a. Identification:** Before a licensee may sell or deliver a firearm to a nonlicensee, the licensee must establish the identity, place of residence, and age of the transferee/buyer. The transferee/buyer must provide a valid government-issued photo identification document to the transferor/seller that contains the transferee's/ buyer's name, residence address, and date of birth. A driver's license or an identification card issued by a State in place of a license is acceptable. Social Security cards are not acceptable because no address, date of birth, or photograph is shown on the cards. A combination of government-issued documents may be provided. See instructions for question 18.b. Supplemental Documentation.

If the transferee/buyer is a member of the Armed Forces on active duty acquiring a firearm in the State where his/her permanent duty station is located, but he/she has a driver's license from another State, the transferor/seller should list the transferee's/ buyer's military identification card and official orders showing where his/her permanent duty station is located in response to question 18.a. Licensees may accept electronic PCS orders to establish residency

**Question 18.b. Supplemental Documentation:** Licensees may accept a combination of valid government-issued documents to satisfy the identification document requirements of the law. The required valid government-issued photo identification document bearing the name, photograph, and date of birth of transferee/buyer may be supplemented by another valid, government-issued document showing the transferee's/buyer's residence address. This supplemental documentation should be recorded in question 18.b., with the issuing authority and type of identification presented. For example, if the transferee/buyer has two States of residence and is trying to buy a handgun in State X, he may provide a driver's license *(showing his name, date of birth, and photograph)* issued by State Y and another government-issued document *(such as a tax document)* from State X showing his residence address. A valid electronic document from a government website may be used as supplemental documentation provided it contains the transferee's/buyer's name and current residence address.

**Question 18.c. Exceptions to the Nonimmigrant Alien Prohibition and Acceptable Documentation:** An alien admitted to the United States under a nonimmigrant visa is not prohibited from purchasing, receiving, or possessing a firearm if the alien: (1) is in possession of a hunting license or permit lawfully issued by the Federal Government, a State or local government, or an Indian tribe federally recognized by the Bureau of Indian Affairs, which is valid and unexpired; (2) was admitted to the United States for lawful hunting or sporting purposes; (3) has received a waiver from the prohibition from the Attorney General of the United States; (4) is an official representative of a foreign government who is accredited to the United States Government or the Government's mission to an international organization having its

ATF E-Form 4473 (5300.9)
Revised October 2016

00505
09292

headquarters in the United States; (5) is an official representative of a foreign government who is en route to or from another country to which that alien is accredited; (6) is an official of a foreign government or a distinguished foreign visitor who has been so designated by the Department of State; or (7) is a foreign law enforcement officer of a friendly foreign government entering the United States on official law enforcement business.

**Question 19. NICS BACKGROUND CHECKS:** 18 U.S.C. 922(t) requires that prior to transferring any firearm to an unlicensed person, a licensed importer, manufacturer, or dealer must first contact the National Instant Criminal Background Check System (NICS). NICS will advise the licensee whether the system finds any information that the purchaser is prohibited from possessing or receiving a firearm. For purposes of this form, contacts to NICS include State agencies designated as points-of-contact ("or POCs") to conduct NICS checks for the Federal Government.

The licensee should NOT contact NICS and must stop the transaction if there is reasonable cause to believe that the transferee/buyer is prohibited from receiving or possessing a firearm, including if: the transferee/buyer answers "no" to question 11.a.; the transferee/buyer answers "yes" to any question in 11.b. - 11.i. or 12.b. - 12.c.; the transferee/buyer has answered "yes" to question 12.d.1., and answered "no" to question 12.d.2.; or the transferee/buyer cannot provide the documentation required by questions 18.a, b, or c. WARNING: Any person who transfers a firearm to any person he/she knows or has reasonable cause to believe is prohibited from receiving or possessing a firearm violates the law, even if the transferor/seller has complied with the Federal background check requirements.

At the time that NICS is contacted, the licensee must record in question 19.a. - 19.c.: the date of contact, the NICS (or State) transaction number, and the initial (first) response provided by NICS or the State. The licensee may record the date the firearms may be transferred to the transferee/buyer (also known as the Missing Disposition Information (MDI) date) in 19.c. that NICS provides for delayed transactions (States may not provide this date). If the licensee receives any subsequent response(s) before transferring the firearm, the licensee must record in question 19.d. any response later provided by NICS or the State, or that no response was provided within 3 business days. If the transaction was denied and later overturned in addition to checking the "Proceed" and entering the date, the licensee must also check the "Overturned" box and, if provided, attach the overturn certificate issued by NICS or the State POC to the ATF Form 4473. If the licensee receives a response from NICS or the State after the firearm has been transferred, he/she must record this information in question 19.e. Note: States acting as points of contact for NICS checks may use terms other than "proceed," "delayed," "cancelled," or "denied." In such cases, the licensee should check the box that corresponds to the State's response. Some States may not provide a transaction number for denials. However, if a firearm is transferred within the three business day period, a transaction number is required

**NICS Responses:** : If NICS provides a "proceed" response, the transaction may proceed. If NICS provides a "cancelled" or "denied" response, the transferor/seller is prohibited from transferring the firearm to the transferee/buyer. If NICS provides a "delayed" response, the transferor/seller is prohibited from transferring the firearm unless 3 business days have elapsed and, before the transfer, NICS or the State has not advised the transferor/seller that the transferee's/ buyer's receipt or possession of the firearm would be in violation of law. (See 27 CFR 478.102(a) for an example of how to calculate 3 business days.) If NICS provides a "delayed" response, NICS also will provide a Missing Disposition Information (MDI) date that calculates the 3 business days and reflects when the firearm(s) can be transferred under Federal law. States may not provide an MDI date. State law may impose a waiting period on transferring firearms.

**Questions 20 and 21. NICS EXCEPTIONS :** A NICS check is not required if the transfer qualifies for any of the exceptions in 27 CFR 478.102(d). Generally these include: (a) transfers of National Firearms Act firearms to an individual who has undergone a background check during the NFA approval process; (b) transfers where the transferee/buyer has presented the licensee with a permit or license that allows the transferee/buyer to possess, acquire, or carry a firearm, and the permit has been recognized by ATF as a valid alternative to the NICS check requirement, or (c) transfers certified by ATF as exempt because compliance with the NICS check requirements is impracticable. If the transfer qualifies for one of these exceptions, the licensee must obtain the documentation required by 27 CFR 478.131. A firearm must not be transferred to any transferee/buyer who fails to provide such documentation.

A NICS check must be conducted if an NFA firearm has been approved for transfer to a trust, or to a legal entity such as a corporation, and no background check was conducted as part of the NFA approval process on the individual who will receive the firearm. Individuals who have undergone a background check during the NFA application process are listed on the approved NFA transfer form.

**Section C**

**Questions 22 and 23. Transfer on a Different Day and Recertification:** If the transfer takes place on a different day from the date that the transferee/buyer signed Section A, the licensee must again check the photo identification of the transferee/buyer at the time of transfer

**Section D**

**Question 24-28. Firearm(s) Description:** These blocks must be completed with the firearm(s) information. Firearms manufactured after 1968 by Federal firearms licensees should all be marked with a serial number. Should you acquire a firearm that is legally not marked with a serial number (i.e. pre-1968); you may answer question 26 with "NSN" (No Serial Number), "N/A" or "None."

If more than five firearms are involved in a transaction, the information required by Section D, questions 24-28, must be provided for the additional firearms on a separate sheet of paper, which must be attached to this ATF Form 4473.

**Types of firearms include, but are not limited to:** pistol, revolver, rifle, shotgun, receiver, frame and other firearms that are neither handguns nor long guns (rifles or shotguns), such as firearms having a pistol grip that expel a shotgun shell (pistol grip firearm) or NFA firearms (machinegun, silencer, short-barreled shotgun, short-barreled rifle, destructive device or "any other weapon").

Additional firearms purchases by the same transferee/buyer may not be added to the form after the transferor/seller has signed and dated it. A transferee/buyer who wishes to acquire additional firearms after the transferor/seller has signed and dated the form must complete a new ATF Form 4473 and undergo a new NICS check.

**Question 31.** This item is for the licensee's use in recording any information he/she finds necessary to conduct business.

**Question 32.** Check this box, or write "Private Party Transfer" in question 31, if the licensee is facilitating the sale or transfer of a firearm between private unlicensed individuals in accordance with ATF Procedure 2013-1. This will assist the licensee by documenting which transaction records correspond with private party transfers, and why there may be no corresponding A&D entries when the transfer did not proceed because it was denied, delayed, or cancelled

**Privacy Act Information**

Solicitation of this information is authorized under 18 U.S.C. 923(g). Disclosure of this information by the transferee/buyer is mandatory for the transfer of a firearm. Disclosure of the individual's Social Security number is voluntary. The number may be used to verify the transferee's/buyer's identity.

For information about the routine uses of this form see System of Records Notice Justice/ATF-008, Regulatory Enforcement Records System (68 FR 163558, January 24, 2003).

**Paperwork Reduction Act Notice**

The information required on this form is in accordance with the Paperwork Reduction Act of 1995. The purpose of the information is to determine the eligibility of the transferee to receive and possess firearms under Federal law. The information is subject to inspection by ATF officers and is required by 18 U.S.C. 922 and 923.

The estimated average burden associated with this collection is 30 minutes per respondent or recordkeeper, depending on individual circumstances. Comments about the accuracy of this burden estimate and suggestions for reducing it should be directed to Reports Management Officer, IT Coordination Staff, Bureau of Alcohol, Tobacco, Firearms and Explosives, Washington, DC 20226.

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number. Confidentiality is not assured.

ATF E-Form 4473 (5300.9)
Revised October 2016

00506

09293

Exhibit 4

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT
TO FEDERAL RULE OF EVIDENCE 902(11)**

I, _RANDOLPH C. WINKEL_, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Brass Tacks Munitions, Vancouver, WA, and my title is _PRESIDENT_.

I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Brass Tacks Munitions. The attached records consist of

_____.

I further state that: _DS BORBA  4473  SIGNED ON  5/08/2019; INC 6 PAGES_

    a.  all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters;

    b.  they were kept in the ordinary course of the regularly conducted business activity of Brass Tacks Munitions; and

    c.  they were made by Brass Tacks Munitions as a regular practice.

I further state that

   this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_SEPT 01, 2023_      _Randolph C. Winkel_
Date                   Signature

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

OMB No. 1140-0020

## Firearms Transaction Record

Transferor's/Seller's Transaction Serial Number (if any)
100ZX1448
BTM 191

**WARNING:** You may not receive a firearm if prohibited by Federal or State law. The information you provide will be used to determine whether you are prohibited from receiving a firearm. Certain violations of the Gun Control Act, 18 U.S.C. 921 et. seq., are punishable by up to 10 years imprisonment and/or up to a $250,000 fine.

Read the Notices, Instructions, and Definitions on this form. Prepare in original only at the licensed premises ("licensed premises" includes business temporarily conducted from a qualifying gun show or event in the same State in which the licensed premises is located) unless the transaction qualifies under 18 U.S.C. 922(c). All entries must be handwritten in ink. **"PLEASE PRINT."**

### Section A - Must Be Completed Personally By Transferee/Buyer

1. Transferee's/Buyer's Full Name (if legal name contains an initial only, record "IO" after the initial. If no middle initial or name, record "NMN".)

| Last Name (including suffix (e.g., Jr, Sr, II, III)) | First Name | Middle Name |
|---|---|---|
| DEBORBA | JOAO | RICARDO |

2. Current State of Residence and Address (U.S. Postal abbreviations are acceptable. Cannot be a post office box.)

| Number and Street Address | City | County | State | ZIP Code |
|---|---|---|---|---|
| 12800 SE 7th, Apt #E1 | VANCOUVER | CLARK | WA | 98683 |

| 3. Place of Birth | 4. Height | 5. Weight (Lbs) | 6. Sex | 7. Birth Date |
|---|---|---|---|---|
| U.S. City and State  -OR-  Foreign Country BRAZIL | Ft. 5  In. 7 | 190 | ☒ Male ☐ Female | Month  Day  Year |

8. Social Security Number (Optional, but will help prevent misidentification) ▮▮▮▮

9. Unique Personal Identification Number (UPIN) if applicable (See Instructions for Question 9.)

10.a Ethnicity
☐ Hispanic or Latino
☒ Not Hispanic or Latino

10.b Race (In addition to ethnicity, select one or more race in 10.b. Both 10.a. and 10.b. must be answered.)
☐ American Indian or Alaska Native
☐ Asian
☐ Black or African American
☐ Native Hawaiian or Other Pacific Islander
☒ White

| 11. Answer the following questions by checking or marking "yes" or "no" in the boxes to the right of the questions. | Yes | No |
|---|---|---|
| a. Are you the actual transferee/buyer of the firearm(s) listed on this form? Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you. Exception: If you are picking up a repaired firearm(s) for another person, you are not required to answer 11.a. and may proceed to question 11.b (See Instructions for Question 11.a.) | ☒ | ☐ |
| b. Are you under indictment or information in any court for a felony, or any other crime for which the judge could imprison you for more than one year? (See Instructions for Question 11.b.) | ☐ | ☒ |
| c. Have you ever been convicted in any court of a felony, or any other crime for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation? (See Instructions for Question 11.c.) | ☐ | ☒ |
| d. Are you a fugitive from justice? (See Instructions for Question 11.d.) | ☐ | ☒ |
| e. Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance? Warning: The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside. | ☐ | ☒ |
| f. Have you ever been adjudicated as a mental defective OR have you ever been committed to a mental institution? (See Instructions for Question 11.f.) | ☐ | ☒ |
| g. Have you been discharged from the Armed Forces under dishonorable conditions? | ☐ | ☒ |
| h. Are you subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner? (See Instructions for Question 11.h.) | ☐ | ☒ |
| i. Have you ever been convicted in any court of a misdemeanor crime of domestic violence? (See Instructions for Question 11.i.) | ☐ | ☒ |

12.a. Country of Citizenship: (Check/List more than one, if applicable. Nationals of the United States may check U.S.A.)
☒ United States of America (U.S.A)    ☐ Other Country/Countries (Specify):

| | | Yes | No |
|---|---|---|---|
| 12.b. | Have you ever renounced your United States citizenship? | ☐ | ☒ |
| 12.c. | Are you an alien illegally or unlawfully in the United States? | ☐ | ☒ |
| 12.d.1. | Are you an alien who has been admitted to the United States under a nonimmigrant visa? (See Instructions for Question 12.d.) | ☐ | ☒ |
| 12.d.2. | If "yes", do you fall within any of the exceptions stated in the instructions? | ☒ N/A | ☐ ☐ |

13. If you are an alien, record your U.S.-issued Alien or Admission number (AR#, USCIS#, or I94#):

Previous Editions Are Obsolete

Transferee/Buyer Continue to Next Page
STAPLE IF PAGES BECOME SEPARATED

ATF Form 4473 (5300.9)
Revised Oct 2016

00488
09268

I certify that my answers in Section A are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473. I understand that answering "yes" to question 11.a. if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I understand that a person who answers "yes" to any of the questions 11.b. through 11.l and/or 12.b. through 12.c. is prohibited from purchasing or receiving a firearm. I understand that a person who answers "yes" to question 12.d.1. is prohibited from receiving or possessing a firearm, unless the person answers "yes" to question 12.d.2. and provides the documentation required in 18.c. I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I further understand that the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of Federal law. *(See Instructions for Question 14.)*

| 14. Transferee's/Buyer's Signature | 15. Certification Date |
|---|---|
| | 5/8/19 |

## Section B - Must Be Completed By Transferor/Seller

| 16. Type of firearm(s) to be transferred *(check or mark all that apply)*: | 17. If transfer is at a qualifying gun show or event: |
|---|---|
| ☑ Handgun ☐ Long Gun ☐ Other Firearm *(frame, receiver, etc. See Instructions for Question 16.)* *(rifles or shotguns)* | Name of Function: _____ City, State: _____ |

18.a. Identification *(e.g., Virginia Driver's license (VA DL) or other valid government-issued photo identification.)* *(See Instructions for Question 18.a.)*

| Issuing Authority and Type of Identification | Number on Identification | Expiration Date of Identification *(if any)* | | |
|---|---|---|---|---|
| | | Month | Day | Year |
| WA DL | ▮▮▮▮▮▮▮ | | | 2024 |

18.b. Supplemental Government Issued Documentation *(if identification document does not show current residence address)* *(See Instructions for Question 18.b.)*

18.c. Exception to the Nonimmigrant Alien Prohibition: If the transferee/buyer answered "YES" to 12.d.2. the transferor/seller must record the type of documentation showing the exception to the prohibition and attach a copy to this ATF Form 4473. *(See Instructions for Question 18.c.)*

| Questions 19, 20, or 21 Must Be Completed Prior To The Transfer Of The Firearm(s) *(See Instructions for Questions 19, 20 and 21.)* | |
|---|---|
| 19.a. Date the transferee's/buyer's identifying information in Section A was transmitted to NICS or the appropriate State agency: | 19.b. The NICS or State transaction number *(if provided)* was: |
| Month 05  Day 08  Year 2019 | 1002X1448 |

| 19.c. The response initially (first) provided by NICS or the appropriate State agency was: | 19.d. The following response(s) was/were later received from NICS or the appropriate State agency: |
|---|---|
| ☑ Proceed  ☐ Delayed *(The firearm(s) may be transferred on _____ if State law permits (optional))* ☐ Denied ☐ Cancelled | ☐ Proceed _____ *(date)*   ☐ Overturned ☐ Denied _____ *(date)* ☐ Cancelled _____ *(date)* ☐ No response was provided within 3 business days. |

19.e. *(Complete if applicable.)* After the firearm was transferred, the following response was received from NICS or the appropriate State agency on:
_____ *(date)*   ☐ Proceed   ☐ Denied   ☐ Cancelled

| 19.f. The name and Brady identification number of the NICS examiner. *(Optional)* | 19.g. Name of FFL Employee Completing NICS check. *(Optional)* |
|---|---|
| _____ *(name)*   _____ *(number)* | |

20. ☐ No NICS check was required because a background check was completed during the NFA approval process on the individual who will receive the NFA firearm(s), as reflected on the approved NFA application. *(See Instructions for Question 20.)*

21. ☐ No NICS check was required because the transferee/buyer has a valid permit from the State where the transfer is to take place, which qualifies as an exemption to NICS. *(See Instructions for Question 21.)*

| Issuing State and Permit Type | Date of issuance *(if any)* | Expiration Date *(if any)* | Permit Number *(if any)* |
|---|---|---|---|
| | | | |

## Section C - Must Be Completed Personally By Transferee/Buyer

If the transfer of the firearm(s) takes place on a different day from the date that the transferee/buyer signed Section A, the transferee/buyer must complete Section C immediately prior to the transfer of the firearm(s). *(See Instructions for Question 22 and 23.)*

I certify that my answers to the questions in Section A of this form are still true, correct, and complete.

| 22. Transferee's/Buyer's Signature | 23. Recertification Date |
|---|---|
| | |

Transferor/Seller Continue to Next Page

**STAPLE IF PAGES BECOME SEPARATED**

ATF Form 4473 (5300.9)
Revised October 2016

00489
09269

| Section D - Must Be Completed By Transferor /Seller Even If The Firearm(s) is Not Transferred | | | | |
|---|---|---|---|---|
| 24. Manufacturer and Importer (if any) (if the manufacturer and Importer are different, the FFL must include both.) | 25. Model (If Designated) | 26. Serial Number | 27. Type (See Instructions for Question 27.) | 28. Caliber or Gauge |
| 1. Rock Island Armory | M200 | RIA 1999506 | revolver | 38sp/ |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |

REMINDER - By the Close of Business Complete ATF Form 3310.4 For Multiple Purchases of Handguns Within 5 Consecutive Business Days

| 29 Total Number of Firearms Transferred (Please handwrite by printing e.g., zero, one, two, three, etc  Do not use numerals.) ONE | 30. Check if any part of this transaction is a pawn redemption. Line Number(s) From Question 24 Above |
|---|---|
| 31 For Use by Licensee (See Instructions for Question 31.) | 32. Check if this transaction is to facilitate a private party transfer. (See Instructions for Question 32.) |

33 Trade/corporate name and address of transferor/seller and Federal Firearm License Number (Must contain at least first three and last five digits of FFL Number X-XX-XXXXX ) (Hand stamp may be used.)

Brass Tacks Munitions
7939 NE St  Johns Rd
Vancouver, WA 98665
FFL #9-91-011-07-0K-07628

## The Person Transferring The Firearm(s) Must Complete Questions 34-37. For Denied/Cancelled Transactions, the Person Who Completed Section B Must Complete Questions 34-36.

I certify that:  (1) I have read and understand the Notices, Instructions, and Definitions on this ATF Form 4473; (2) the information recorded in Sections B and D is true, correct, and complete; and (3) this entire transaction record has been completed at my licensed business premises ("licensed premises" includes business temporarily conducted from a qualifying gun show or event in the same State in which the licensed premises is located) unless this transaction has met the requirements of 18 U.S.C. 922(c).  Unless this transaction has been denied or cancelled, I further certify on the basis of — (1) the transferee's/buyer's responses in Section A (and Section C, if applicable); (2) my verification of the identification recorded in question 18 (and my re-verification at the time of transfer, if Section C was completed); and (3) State or local law applicable to the firearms business — It is my belief that it is not unlawful for me to sell, deliver, transport, or otherwise dispose of the firearm(s) listed on this form to the person identified in Section A.

| 34.  Transferor's/Seller's Name (Please print) | 35.  Transferor's/Seller's Signature | 36.  Transferor's/Seller's Title | 37. Date Transferred |
|---|---|---|---|
| DAVID  hilmich | | SALES | 5/8/15 |

## NOTICES, INSTRUCTIONS, AND DEFINITIONS

Purpose of the Form:  The information and certification on this form are designed so that a person licensed under 18 U.S.C. 923 may determine if he/she may lawfully sell or deliver a firearm to the person identified in Section A, and to alert the transferee/buyer of certain restrictions on the receipt and possession of firearms. The transferor/seller of a firearm must determine the lawfulness of the transaction and maintain proper records of the transaction.  Consequently, the transferor/seller must be familiar with the provisions of 18 U.S.C  921-931 and the regulations in 27 CFR Parts 478 and 479.  In determining the lawfulness of the sale or delivery of a rifle or shotgun to a resident of another State, the transferor/seller is presumed to know the applicable State laws and published ordinances in both the transferor's/seller's State and the transferee's/buyer's State.  (See ATF Publication 5300.5, State Laws and Published Ordinances )

Generally, ATF Form 4473 must be completed at the licensed business premises when a firearm is transferred over-the-counter.  Federal law, 18 U.S.C. 922(c), allows a licensed importer, manufacturer, or dealer to sell a firearm to a non-licensee who does not appear in person at the licensee's business premises only if the transferee/buyer meets certain requirements.  These requirements are set forth in section 922(c), 27 CFR 478.96(b), and ATF Procedure 2013-2.

After the transferor/seller has completed the firearms transaction, he/she must make the completed, original ATF Form 4473 (which includes the Notices, General Instructions, and Definitions), and any supporting documents, part of his/her permanent record.  Such Forms 4473 must be retained for at least 20 years and after that period may be submitted to ATF. Filing may be chronological (by date of disposition), alphabetical (by name of purchaser), or numerical (by transaction serial number), as long as all of the transferor's/seller s completed Forms 4473 are filed in the same manner.

FORMS 4473 FOR DENIED/CANCELLED TRANSFERS MUST BE RETAINED: If the transfer of a firearm is denied/cancelled by NICS, or if for any other reason the transfer is not completed after a NICS check is initiated, the licensee must retain the ATF Form 4473 in his/her records for at least 5 years.  Forms 4473 with respect to which a sale, delivery, or transfer did not take place shall be separately retained in alphabetical (by name of transferee) or chronological (by date of transferee s certification) order.

If the transferor/seller or the transferee/buyer discovers that an ATF Form 4473 is incomplete or improperly completed after the firearm has been transferred, and the transferor/seller or the transferee/buyer wishes to correct the omission(s) or error(s), photocopy the inaccurate form and make any necessary additions or revisions to the photocopy. The transferor/seller should only make changes to Sections B and D. The transferee/buyer should only make changes to Section A and C.  Whoever made the changes should initial and date the changes. The corrected photocopy should be attached to the original Form 4473 and retained as part of the transferor's/seller's permanent records.

Exportation of Firearms:  The State or Commerce Departments may require a firearms exporter to obtain a license prior to export.  Warning:  Any person who exports a firearm without proper authorization may be fined not more than $1,000,000 and/or imprisoned for not more than 20 years.  See 22 U.S.C. 2778(c).

### Section A

The transferee/buyer must personally complete Section A of this form and certify (sign) that the answers are true, correct, and complete.  However, if the transferee/buyer is unable to read and/or write, the answers (other than the signature) may be completed by another person, excluding the transferor/seller. Two persons (other than the transferor/seller) must then sign as witnesses to the transferee's/buyer's answers and signature/certification in question 14.

ATF Form 4473 (5300.9)
Revised  October 2016

00490
09270

Application                                                    Page 1 of 1

Search Request Details

The following is a list of detailed information for the selected transaction

| NTN | 100ZX14Y8 |
| Created Date | 5/8/19 7:27 PM |
| Expiration Date | 6/7/19 7:27 PM |
| Last Name | DEBORBA |
| First Name | JOAO |
| Middle Name | RICARDO |
| Cadence (Ex. Jr., Sr., III) | Not Supplied |
| Gender | M |
| Height | 507 |
| Weight | 190 |
| Race and/or Ethnicity | W |
| Date of Birth | ▇▇▇▇▇ |
| Place of Birth | BZ |
| Social Security No | ▇▇▇▇▇ |
| UPIN | Not Supplied |
| Miscellaneous No. | DL-WDL▇▇▇▇▇ |
| Miscellaneous Field | |
| State of Residence | WA |
| Citizenship | C |
| Country of Citizenship | US |
| Country of Citizenship 2 | Not Supplied |
| Country of Citizenship 3 | Not Supplied |
| Purpose ID | 1 |
| Submitted By | david.helmick |
| Retrieved By | david.helmick |
| Retrieved Date | 5/8/19 7:27 PM |
| Status | Proceed |
| Status Date | 5/8/2019 7:27 PM |

00491
09271

☐ LAYAWAY
☐ GUN REPAIR
☐ JEWELRY REPAIR

**FA$T CA$H**
3055 S. Santiam Hwy.
Lebanon, OR 97355
(541) 259-1112

☐ CREDIT
☒ BUY
☐ SELL

DATE 5/4/15 , 20__   PHONE ~~541~~

NAME Soao R.   ~~541~~ 978-398-5793

ADDRESS _____ Ocburba

| Quantity | Description | Date | Amount |
|---|---|---|---|
| 1 | RIA M200 | | 189— |
| | # RIA 1999546 | | |
| 1 | Shipping | | 20— |
| | (Trans to Brasi Fratt) | | |

**ALL GOODS SOLD AS IS!!**
**NO REFUNDS · NO RETURNS**

Customer Signature:

Employee Signature: 

**TOTAL** 209—



**CONCEALED PISTOL LICENSE**

CK0040517      EXP DATE: 03/23/2024

DEBORBA, JOAO RICARDO

DOB: ▇▇▇▇   WDL ▇▇▇▇ WA

12800 SE 7TH ST

VANCOUVER, WA 98683

RACE: W   SEX: M   HT: 507

WT: 190   HAIR: BLD   EYES: BRO



When the transferee/buyer of a firearm is a corporation, company, association, partnership, or other such business entity, an officer authorized to act on behalf of the business must complete Section A of the form with his/her personal information, sign Section A, and attach a written statement, executed under penalties of perjury, stating: (A) the firearm is being acquired for the use of and will be the property of that business entity; and (B) the name and address of that business entity.

**Question 1.** If the transferee's/buyer's name in question 1 is illegible, the transferor/seller must print the transferee's/buyer's name above the name written by the transferee/buyer.

**Question 2. Current Residence Address:** A rural route (RR) may be accepted provided the transferee/buyer lives in a State or locality where it is considered a legal residence address. County and Parish are one and the same.

If the transferee/buyer is a member of the Armed Forces on active duty, his/her State of residence is the State in which his/her permanent duty station is located. If the service member is acquiring a firearm in a State where his/her permanent duty station is located, but resides in a different State, the transferee/buyer must list both his/her permanent duty station address and his/her residence address in response to question 2. If the transferee/buyer has two States of residence, the transferee/buyer should list his/her current residence address in response to question 2 *(e.g., if the transferee/buyer is purchasing a firearm while staying at his/her weekend home in State X, he/she should list the address in State X in response to question 2).*

**Question 9. Unique Personal Identification Number (UPIN):** For transferees/ buyers approved to have information maintained about them in the FBI NICS Voluntary Appeal File, NICS will provide them with a UPIN, which the transferee/buyer should record in question 9. The licensee should provide the UPIN when conducting background checks through the NICS or the State POC.

**Question 10.a. and 10.b.** Federal regulations (27 CFR 478.124(c)(1)) require licensees to obtain the race of the transferee/buyer. This information helps the FBI and/or State POC make or rule out potential matches during the background check process and can assist with criminal investigations. Pursuant to Office of Management and Budget (OMB), effective January 1, 2003, all Federal agencies requiring collection of race and ethnicity information on administrative forms and records, were required to collect this information in a standard format. (See 62 FR 58782) The standard OMB format consists of two categories for data on ethnicity: "Hispanic or Latino," and "Not Hispanic or Latino" and five categories for data on race: American Indian or Alaska Native, Asian, Black or African American, Native Hawaiian or Other Pacific Islander, and White.

Ethnicity refers to a person's heritage. Persons of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin, regardless of race, are considered Hispanic or Latino.

Race - one or more of the following responses must be selected: (1) American Indian or Alaska Native - A person having origins in any of the original peoples of North and South America (including Central America), and who maintains a tribal affiliation or community attachment; (2) Asian - A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian subcontinent including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam; (3) Black or African American - A person having origins in any of the Black racial groups of Africa; (4) Native Hawaiian or Other Pacific Islander - A person having origins in any of the original peoples of Hawaii, Guam, Samoa, or other Pacific Islands; and (5) White - A person having origins in any of the original peoples of Europe, the Middle East, or North Africa. Any other race or ethnicity that does not fall within those indicated, please select the closest representation.

**Question 11.a. Actual Transferee/Buyer:** For purposes of this form, a person is the actual transferee/buyer if he/she is purchasing the firearm for him/herself or otherwise acquiring the firearm for him/herself. *(e.g., redeeming the firearm from pawn, retrieving it from consignment, firearm raffle winner).* A person is also the actual transferee/buyer if he/she is legitimately purchasing the firearm as a bona fide gift for a third party. A gift is not bona fide if another person offered or gave the person completing this form money, service(s), or item(s) of value to acquire the firearm for him/her, or if the other person is prohibited by law from receiving or possessing the firearm.

**ACTUAL TRANSFEREE/BUYER EXAMPLES:** Mr. Smith asks Mr. Jones to purchase a firearm for Mr. Smith *(who may or may not be prohibited).* Mr. Smith gives Mr. Jones the money for the firearm. Mr. Jones is **NOT THE**

Page 4 of 6

**ACTUAL TRANSFEREE/BUYER** of the firearm and must answer "NO" to question 11.a. The licensee may not transfer the firearm to Mr. Jones. However, if Mr. Brown buys the firearm with his own money to give to Mr. Black as a gift ... or for any tangible thing of value provided by Mr. Black), Mr. Brown is then by definition the transferee/buyer of the firearm and should answer "YES" to question 11.a. However, if the transferor/seller may not transfer a firearm to any person he/she knows or has reasonable cause to believe is prohibited under 18 U.S.C. 922(g), (n) or (x). [EXCEPTION: If a person is picking up a repaired firearm(s) for another person, he/she is not required to answer 11.a. and may proceed to question 11.b.]

**Question 11.b. - 12.** Generally, 18 U.S.C. 922(g) prohibits the shipment, transportation, receipt, or possession in or affecting interstate commerce of a firearm by one who: has been convicted of a felony in any Federal, State or local court, or any other crime, punishable by imprisonment for a term exceeding one year *(this does not include State misdemeanors punishable by imprisonment of two years or less);* is a fugitive from justice; is an unlawful user of, or addicted to, marijuana or any depressant, stimulant, or narcotic drug, or any other controlled substance; has been adjudicated as a mental defective or has been committed to a mental institution; has been discharged from the Armed Forces under dishonorable conditions; is subject to certain restraining orders; convicted of a misdemeanor crime of domestic violence under Federal, State or Tribal law; has renounced his/her U.S. citizenship; is an alien illegally in the United States or an alien admitted to the United States under a nonimmigrant visa. Furthermore, section 922(n) prohibits the shipment, transportation, or receipt in or affecting interstate commerce of a firearm by one who is under indictment or information for a felony in any Federal, State or local court, or any other crime, punishable by imprisonment for a term exceeding one year. An information is a formal accusation of a crime verified by a prosecutor.

A member of the Armed Forces must answer "yes" to 11.b. or 11.c. if charged with an offense that was either referred to a General Court Martial, or at which the member was convicted. Discharged "under dishonorable conditions" means separation from the Armed Forces resulting from a dishonorable discharge or dismissal adjudged by a General Court-Martial. That term does not include any other discharge or separation from the Armed Forces.

**EXCEPTION:** A person who has been convicted of a felony, or any other crime, for which the judge could have imprisoned the person for more than one year, or who has been convicted of a misdemeanor crime of domestic violence, is not prohibited from purchasing, receiving, or possessing a firearm if: (1) under the law of the jurisdiction where the conviction occurred, the person has been pardoned, the conviction has been expunged or set aside, or the person has had their civil rights *(the right to vote, sit on a jury, and hold public office)* taken away and later restored, AND (2) the person is not prohibited by the law of the jurisdiction where the conviction occurred from receiving or possessing firearms. Persons subject to this exception, or who receive relief from disabilities under 18 U.S.C. 925(c), should answer "no" to the applicable question.

**Question 11.d. Fugitive from Justice:** Any person who has fled from any State to avoid prosecution for a felony or a misdemeanor; or any person who leaves the State to avoid giving testimony in any criminal proceeding. The term also includes any person who knows that misdemeanor or felony charges are pending against such person and who leaves the State of prosecution.

**Question 11.f. Adjudicated as a Mental Defective:** A determination by a court, board, commission, or other lawful authority that a person, as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease: (1) is a danger to himself or to others; or (2) lacks the mental capacity to contract or manage his own affairs. This term shall include: (1) a finding of insanity by a court in a criminal case; and (2) those persons found incompetent to stand trial or found not guilty by reason of lack of mental responsibility.

**Committed to a Mental Institution:** A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution.

*EXCEPTION:* Under the NICS Improvement Amendments Act of 2007, a person who has been adjudicated as a mental defective or committed to a mental institution in a State proceeding is not prohibited by the adjudication or commitment if

the person has been granted relief by the adjudicating/committing State pursuant to a qualifying mental health relief from disabilities program. Also, a person who has been adjudicated as a mental defective or committed to a mental institution by a department or agency of Federal Government is not prohibited by the adjudication or commitment if either: (a) the person's adjudication or commitment was set-aside or expunged by the adjudicating/committing agency; (b) the person has been fully released or discharged from all mandatory treatment, supervision, or monitoring by the agency; (c) the person was found by the agency to no longer suffer from the mental health condition that served as the basis of the initial adjudication/commitment; or (d) the adjudication or commitment, respectively, is based solely on a medical finding of disability, without an opportunity for a hearing by a court, board, commission, or other lawful authority, and the person has not been adjudicated as a mental defective consistent with section 922(g)(4) of title 18, United States Code; (e) the person was granted relief from the adjudicating/committing agency pursuant to a qualified mental health relief from disabilities program. **Persons who fall within one of the above exceptions should answer "no" to question 11.f.** This exception to an adjudication or commitment by a Federal department or agency does not apply to any person who was adjudicated to be not guilty by reason of insanity, or based on lack of mental responsibility, or found incompetent to stand trial, in any criminal case or under the Uniform Code of Military Justice.

**Question 11.h.  Qualifying Restraining Orders:** Under 18 U.S.C. 922, firearms may not be sold to or received by persons subject to a court order that: (A) was issued after a hearing which the person received actual notice of and had an opportunity to participate in; (B) restrains such person from harassing, stalking, or threatening an intimate partner or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury. An "intimate partner" of a person is: the spouse or former spouse of the person, the parent of a child of the person, or an individual who cohabitates or has cohabitated with the person.

**Question 11.i.  Misdemeanor Crime of Domestic Violence:** A Federal, State, local, or tribal offense that is a misdemeanor under Federal, State, or tribal law and has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with, or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim. The term includes all misdemeanors that have as an element the use or attempted use of physical force or the threatened use of a deadly weapon (*e.g., assault and battery*), if the offense is committed by one of the defined parties. *(See Exception to 11.b. - 12.)* A person who has been convicted of a misdemeanor crime of domestic violence also is not prohibited unless: (1) the person was represented by a lawyer or gave up the right to a lawyer; or (2) if the person was entitled to a jury, was tried by a jury, or gave up the right to a jury trial. Persons subject to this exception should answer **"no"** to 11.i.

**Question 12.d.  Immigration Status:** An alien admitted to the United States under a nonimmigrant visa includes, among others, persons visiting the United States temporarily for business or pleasure, persons studying in the United States who maintain a residence abroad, and certain temporary foreign workers. These aliens must answer "yes" to this question and provide the additional documentation required under question 18.c. Permanent resident aliens and aliens legally admitted to the United States pursuant to either the Visa Waiver Program or to regulations otherwise exempting them from visa requirements may answer "no" to this question and are not required to submit the additional documentation under question 18.c.

**Question 13.  U.S.-issued Alien Number or Admission Number:** U.S.-issued alien and admission numbers may be found on the following U.S. Department of Homeland Security documents: Legal Resident Card or Employment Authorization Card (AR# or USCIS#); Arrival/Departure Record, Form I94, or Form 797A (I94#). Additional information can be obtained from www.cbp.gov. If you are a U.S. citizen or U.S. national then this question should be left blank.

**Question 14.** Under 18 U.S.C. 922(a)(1), it is unlawful for a person to engage in the business of dealing in firearms without a license. A person is engaged in the business of dealing in firearms if he/she devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms. A license is not required of a person who only makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his/her personal collection of firearms.

**Section B**

**Question 16.  Type of Firearm(s):** "Other" refers to frames, receivers and other firearms that are neither handguns nor long guns (rifles or shotguns), such as firearms having a pistol grip that expel a shotgun shell, or National Firearms Act (NFA) firearms, including silencers.

If a frame or receiver can only be made into a long gun *(rifle or shotgun)*, it is still a frame or receiver not a handgun or long gun. However, frames and receivers are still "firearms" by definition, and subject to the same GCA limitations as any other firearms. See Section 921(a)(3)(B). Section 922(b)(1) makes it unlawful for a licensee to sell any firearm other than a shotgun or rifle to any person under the age of 21. Since a frame or receiver for a firearm, to include one that can only be made into a long gun, is a "firearm other than a shotgun or rifle," it cannot be transferred to anyone under the age of 21, nor can these firearms be transferred to anyone who is not a resident of the State where the transfer is to take place. Also, note that multiple sales forms are not required for frames or receivers of any firearms, or pistol grip shotguns, since they are not "pistols or revolvers" under Section 923(g)(3)(A).

**Question 17.  Qualifying Gun Show or Event:** As defined in 27 CFR 478.100, a gun show or event is a function sponsored by any national, State, or local organization, devoted to the collection, competitive use, or other sporting use of firearms, or an organization or association that sponsors functions devoted to the collection, competitive use, or other sporting use of firearms in the community.

**Question 18.a.  Identification:** Before a licensee may sell or deliver a firearm to a nonlicensee, the licensee must establish the identity, place of residence, and age of the transferee/buyer. The transferee/buyer **must** provide a valid government-issued photo identification document to the transferor/seller that contains the transferee's/buyer's name, residence address, and date of birth. A driver's license or an identification card issued by a State in place of a license is acceptable. Social Security cards are not acceptable because no address, date of birth, or photograph is shown on the cards. A combination of government-issued documents may be provided. See instructions for question 18.b. Supplemental Documentation.

If the transferee/buyer is a member of the Armed Forces on active duty acquiring a firearm in the State where his/her permanent duty station is located, but he/she has a driver's license from another State, the transferor/seller should list the transferee's/buyer's military identification card and official orders showing where his/her permanent duty station is located in response to question 18.a. Licensees may accept electronic PCS orders to establish residency.

**Question 18.b.  Supplemental Documentation:** Licensees may accept a combination of valid government-issued documents to satisfy the identification document requirements of the law. The required valid government-issued photo identification document bearing the name, photograph, and date of birth of transferee/buyer may be supplemented by another valid, government-issued document showing the transferee's/buyer's residence address. This supplemental documentation should be recorded in question 18.b., with the issuing authority and type of identification presented. For example, if the transferee/buyer has two States of residence and is trying to buy a handgun in State X, he may provide a driver's license (*showing his name, date of birth, and photograph*) issued by State Y and another government-issued document (*such as a tax document*) from State X showing his residence address. A valid electronic document from a government website may be used as supplemental documentation provided it contains the transferee's/buyer's name and current residence address.

**Question 18.c.  Exceptions to the Nonimmigrant Alien Prohibition and Acceptable Documentation:** An alien admitted to the United States under a nonimmigrant visa is not prohibited from purchasing, receiving, or possessing a firearm if the alien: (1) is in possession of a hunting license or permit lawfully issued by the Federal Government, a State or local government, or an Indian tribe federally recognized by the Bureau of Indian Affairs, which is valid and unexpired; (2) was admitted to the United States for lawful hunting or sporting purposes; (3) has received a waiver from the prohibition from the Attorney General of the United States; (4) is an official representative of a foreign government who is accredited to the United States Government or the Government's mission to an international organization having its

ATF Form 4473 (5300.9)
Revised October 2016

09275

headquarters in the United States; (5) is an official representative of a foreign government who is en route to or from another country to which that alien is accredited; (6) is an official of a foreign government or a distinguished foreign visitor who has been so designated by the Department of State; or (7) is a foreign law enforcement officer of a friendly foreign government entering the United States on official law enforcement business.

**Question 19. NICS BACKGROUND CHECKS:** 18 U.S.C. 922(t) requires that prior to transferring any firearm to an unlicensed person, a licensed importer, manufacturer, or dealer must first contact the National Instant Criminal Background Check System (NICS). NICS will advise the licensee whether the system finds any information that the purchaser is prohibited by law from possessing or receiving a firearm. For purposes of this form, contacts to NICS include State agencies designated as points-of-contact ("or POCs") to conduct NICS checks for the Federal Government.

The licensee should NOT contact NICS and must stop the transaction if there is reasonable cause to believe that the transferee/buyer is prohibited from receiving or possessing a firearm, including if: the transferee/buyer answers "no" to question 11.a.; the transferee/buyer answers "yes" to any question in 11.b. - 11.i. or 12.b. - 12.c.; the transferee/buyer has answered "yes" to question 12.d.1, and answered "no" to question 12.d.2.; or the transferee/buyer cannot provide the documentation required by questions 18.a, b, or c. **WARNING:** Any person who transfers a firearm to any person he/she knows or has reasonable cause to believe is prohibited from receiving or possessing a firearm violates the law, even if the transferor/seller has complied with the Federal background check requirements.

At the time that NICS is contacted, the licensee must record in question 19.a. - 19.c.: the date of contact, the NICS *(or State)* transaction number, and the initial (first) response provided by NICS or the State. The licensee may record the date the firearms may be transferred to the transferee/buyer (also known as the Missing Disposition Information (MDI) date) in 19.c. that NICS provides for delayed transactions *(States may not provide this date)*. If the licensee receives any subsequent response(s) before transferring the firearm, the licensee must record in question 19.d. any response later provided by NICS or the State, or that no response was provided within 3 business days. If the transaction was denied and later overturned in addition to checking the "Proceed" and entering the date, the licensee must also check the "Overturned" box and, if provided, attach the overturn certificate issued by NICS or the State POC to the ATF Form 4473. If the licensee receives a response from NICS or the State after the firearm has been transferred, he/she must record this information in question 19.e. **Note:** States acting as points of contact for NICS checks may use terms other than *"proceed," "delayed," "cancelled,"* or *"denied."* In such cases, the licensee should check the box that corresponds to the State's response. Some States may not provide a transaction number for denials. However, if a firearm is transferred within the three business day period, a transaction number is required.

**NICS Responses:** If NICS provides a *"proceed"* response, the transaction may proceed. If NICS provides a *"cancelled"* or *"denied"* response, the transferor/seller is prohibited from transferring the firearm to the transferee/buyer. If NICS provides a *"delayed"* response, the transferor/seller is prohibited from transferring the firearm unless 3 business days have elapsed and, before the transfer, NICS or the State has not advised the transferor/seller that the transferee's/buyer's receipt or possession of the firearm would be in violation of law. (See 27 CFR 478.102(a) for an example of how to calculate 3 business days.) If NICS provides a *"delayed"* response, NICS also will provide a Missing Disposition Information (MDI) date that calculates the 3 business days and reflects when the firearm(s) can be transferred under Federal law. States may not provide an MDI date. *State law may impose a waiting period on transferring firearms.*

**Questions 20 and 21. NICS EXCEPTIONS:** A NICS check is not required if the transfer qualifies for any of the exceptions in 27 CFR 478.102(d). Generally these include: (a) transfers of National Firearms Act firearms to an individual who has undergone a background check during the NFA approval process; (b) transfers where the transferee/buyer has presented the licensee with a permit or license that allows the transferee/buyer to possess, acquire, or carry a firearm, and the permit has been recognized by ATF as a valid alternative to the NICS check requirement; or (c) transfers certified by ATF as exempt because compliance with the NICS check requirements is impracticable. If the transfer qualifies for one of these exceptions, the licensee must obtain the documentation required by 27 CFR 478.131. A firearm must **not** be transferred to any transferee/buyer who fails to provide such documentation.

A NICS check must be conducted if an NFA firearm has been approved for transfer to a trust, or to a legal entity such as a corporation, and no background check was conducted as part of the NFA approval process on the individual who will receive the firearm. Individuals who have undergone a background check during the NFA application process are listed on the approved NFA transfer form.

**Section C**

**Questions 22 and 23. Transfer on a Different Day and Recertification:** If the transfer takes place on a different day from the date that the transferee/buyer signed Section A, the licensee must again check the photo identification of the transferee/buyer at the time of transfer.

**Section D**

**Question 24-28. Firearm(s) Description:** These blocks must be completed with the firearm(s) information. Firearms manufactured after 1968 by Federal firearms licensees should all be marked with a serial number. Should you acquire a firearm that is legally not marked with a serial number (i.e. pre-1968); you may answer question 26 with "NSN" (No Serial Number), "N/A" or "None."

If more than four firearms are involved in a transaction, the information required by Section D, questions 24-28, must be provided for the additional firearms on a separate sheet of paper, which must be attached to this ATF Form 4473.

**Types of firearms include, but are not limited to:** pistol, revolver, rifle, shotgun, receiver, frame and other firearms that are neither handguns nor long guns (rifles or shotguns), such as firearms having a pistol grip that expel a shotgun shell (pistol grip firearm) or NFA firearms (machinegun, silencer, short-barreled shotgun, short-barreled rifle, destructive device or "any other weapon").

Additional firearms purchases by the same transferee/buyer may not be added to the form after the transferor/seller has signed and dated it. A transferee/buyer who wishes to acquire additional firearms after the transferor/seller has signed and dated the form must complete a new ATF Form 4473 and undergo a new NICS check.

**Question 31.** This item is for the licensee's use in recording any information he/she finds necessary to conduct business.

**Question 32.** Check this box, or write "Private Party Transfer" in question 31, if the licensee is facilitating the sale or transfer of a firearm between private unlicensed individuals in accordance with ATF Procedure 2013-1. This will assist the licensee by documenting which transaction records correspond with private party transfers, and why there may be no corresponding A&D entries when the transfer did not proceed because it was denied, delayed, or cancelled.

**Privacy Act Information**

Solicitation of this information is authorized under 18 U.S.C. 923(g). Disclosure of this information by the transferee/buyer is mandatory for the transfer of a firearm. Disclosure of the individual's Social Security number is voluntary. The number may be used to verify the transferee's/buyer's identity.

For information about the routine uses of this form see System of Records Notice Justice/ATF-008, Regulatory Enforcement Records System (68 FR 163558, January 24, 2003).

**Paperwork Reduction Act Notice**

The information required on this form is in accordance with the Paperwork Reduction Act of 1995. The purpose of the information is to determine the eligibility of the transferee to receive and possess firearms under Federal law. The information is subject to inspection by ATF officers and is required by 18 U.S.C. 922 and 923.

The estimated average burden associated with this collection is 30 minutes per respondent or recordkeeper, depending on individual circumstances. Comments about the accuracy of this burden estimate and suggestions for reducing it should be directed to Reports Management Officer, IT Coordination Staff, Bureau of Alcohol, Tobacco, Firearms and Explosives, Washington, DC 20226.

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number. Confidentiality is not assured.

ATF Form 4473 (5300.9)
Revised October 2016

09276

Exhibit 5

STATE OF WASHINGTON }
COUNTY OF CLARK    } ss.

, Bryan M. Farrell, Court Administrator and Clerk of the District Court of Clark County, Washington and Municipal Court of Camas/Washougal, Washington DO HEREBY CERTIFY that this document, consisting of __2__ page(s), is a true and correct copy of the original now on file and of record in my office and as Court Clerk I am the legal custodian thereof.
Signed and sealed at Vancouver, Washington this date: 9|8|23

BRYAN M. FARRELL, COURT ADMINISTRATOR
BY _____ Deputy

FILED
Clark County District Court
Nov 12, 2019

FILED
Clark County District Court
Nov 12, 2019

| DISTRICT COURT OF WASHINGTON FOR THE COUNTY OF CLARK | No. 9Z1074494   VPD CN |
|---|---|
| STATE OF WASHINGTON/ CITY OF VANCOUVER/ CITY OF CAMAS/ WASHOUGAL   Plaintiff, | ☒ Pre-Trial  ☐ Post Conviction ☐ Replacement Order (paragraph 10) **Domestic Violence No-Contact Order** |
| vs. DEBORBA, JOAO RICARDO | (clj = NOCON, Superior cts = ORNC, ORWPNP) |
| DOB ▓▓▓▓  Defendant, | Clerk's action required: Para 9 |

**No-Contact Order**

1. **Protected Person's Identifiers:**

| AD | | | Name (Last, First Middle) | | |
|---|---|---|---|---|---|
| Name (Last, First Middle) | | | | | |
| F   W | | | | | |
| DOB | Gender | Race | DOB | Gender | Race |

**Defendant's Identifiers:**

| Date of Birth: ▓▓▓▓ | Gender M | Race U |
|---|---|---|

2. **Defendant:**

   A. do not cause, attempt, or threaten to cause bodily injury to, assault, sexually assault, harass, stalk, or keep under surveillance the protected person.

   B. do not contact the protected person, directly, indirectly, in person or through others, by phone, mail, or electronic means, except for mailing or service of process of court documents through a third party, or contact by the defendant's lawyers.

   C. do not knowingly enter, remain, or come within ___250FT___ (1,000 feet if no distance entered) of the protected person's residence, school, workplace, other: _____.

   D. other: third party contact allowed to obtain essential personal belongings and tools of trade.
   _____
   _____
   _____
   _____
   _____
   _____

3. **Firearms, Weapons, and Concealed Pistol License, Defendant:**
   ☒ do not, own, possess, or control a firearm. (RCW 9.41.040.)
   ☒ do not access, obtain, or possess a firearm, other dangerous weapon, or concealed pistol license. (RCW 9.41.800.)
   ☒ shall **immediately surrender** all firearms and other dangerous weapons within the defendant's possession or control and any concealed pistol license. Comply with the *Order to Surrender Weapons* filed separately. (RCW 9.41.800.)

4. | **This no-contact order expires on** ___11/12/2024___. Five years from today if no date is entered. |

**Warning:** Violation of this order with actual notice of its terms is a criminal offense under chapter 26.50 RCW and will subject a violator to arrest; any assault, drive-by shooting, or reckless endangerment that is a violation of this order is a felony. **You can be arrested even if the person protected by this order invites or allows you to violate the order's prohibitions.** You have the sole responsibility to avoid or refrain from violating the order's provisions. Only the court can change the order upon written request.

*Domestic Violence No-Contact Order (NOCON) (ORNC) (ORWPNP) - Page 1 of 2*
*WPF NC 02.0100 (07/2019) - RCW 10.99.040, .045, .050, RCW 9.41.800*

4767
DC 1401
Rev 09/2019

09299

**Findings of Fact**

5. Based upon the record both written and oral, the court finds that the defendant has been charged with, arrested for, or convicted of a domestic violence offense, that the defendant represents a credible threat to the physical safety of the protected person, and the court issues this Domestic Violence No-Contact Order under chapter 10.99 RCW to prevent possible recurrence of violence.

6. The court finds that the defendant's relationship to the person protected by this order is as a/an:
   ☒ Intimate partner because they are:
   ☒ current or former spouses or domestic partners, ☐ parents of a child-in-common, ☐ age 16 or older and are/were in a dating relationship, and are currently residing together or resided together in the past. ☐ age 16 or older and are/were in a dating relationship, but have *never* resided together.
   or
   ☐ Family or household member as defined by RCW 26.50.010(6): _____.

7. ☒ For crimes not defined as a serious offense, the court makes the following mandatory findings pursuant to RCW 9.41.800(1) and (2): ☐ The defendant used, displayed, or threatened to use a firearm or other dangerous weapon in a felony; or ☐ The defendant is ineligible to possess a firearm pursuant to RCW 9.41.040; or ☒ Possession of a firearm or other dangerous weapon by the defendant presents a serious and imminent threat to public health or safety, or to the health or safety of any individual.

> *Additional Warnings to Defendant*: This order does not modify or terminate any order entered in any other case. You are still required to comply with other orders.
>
> Willful violation of this order is punishable under RCW 26.50.110. State and federal firearm restrictions apply. 18 U.S.C. § 922(g)(8)(9); RCW 9.41.040. A violation is a felony and will subject you to arrest.
>
> Pursuant to 18 U.S.C. § 2265, a court in any of the 50 states, the District of Columbia, Puerto Rico, any United States territory, and any tribal land within the United States shall accord full faith and credit to the order.

**Additional Orders**

8. ☐ Civil standby: The appropriate law enforcement agency shall, at a reasonable time and for a reasonable duration, assist the defendant in obtaining personal belongings located at:
   _____

9. **Washington Crime Information Center (WACIC) Data Entry**: The clerk of the court shall forward a copy of this order on or before the next judicial day to: _____
   ☐ County Sheriff's Office              ☐ Camas Police Department
   ☒ Vancouver Police Department          ☐ Washougal Police Department
   where the case is filed, which shall enter it into WACIC.

10. ☒ This order replaces all prior no-contact orders protecting the same person issued under this cause number.

Dated: ___November 12, 2019___ in open court with the defendant present.

I acknowledge receipt of a copy of this order:

Commissioner
Abigail E. Bartlett

Digitally signed by Commissioner Abigail E. Bartlett
DN: cn=Commissioner Abigail E. Bartlett, o=Clark County, ou=District Court, email=district.court@clark.wa.gov, c=US
Date: 2019.11.12 14:04:57 -08'00'

Defendant
Tue Nov 12 2019 14:05:19

Commissioner Abigail Bartlett

Defendant

The protected person shall be provided with a certified copy of this order.

I am a certified or registered interpreter or found by the court to be qualified to interpret in the _____ language, which the defendant understands. I translated this order for the defendant from English into that language.

Signed on __11/12/2019_____ (Date) at (City) _____, (State) _____.

Interpreter: _____ Print name: _____

*Domestic Violence No-Contact Order (NOCON) (ORNC) (ORWPNP) - Page 2 of 2*
*WPF NC 02.0100 (07/2019) - RCW 10.99.040, .045, .050, RCW 9.41.800*
9Z1074494  VPD  CN

4767
DC 1401
Rev 09/2019

09300

Exhibit 6

STATE OF WASHINGTON } ss.
COUNTY OF CLARK
I, Bryan M. Farrell, Court Administrator and Clerk of the District Court of Clark County,
Washington and Municipal Court of Camas/Washougal, Washington DO HEREBY
CERTIFY that this document, consisting of ___2___ page(s), is a true and correct copy of
the original now on file and of record in my office and as Court Clerk I am the legal custodian
thereof.
Signed and sealed at Vancouver, Washington  this date: 9|8|23

**FILED**
**Clark County District Court**
Nov 14, 2019

| DISTRICT COURT OF WASHINGTON | No. 9Z1074494   VPD CN |
|---|---|
| FOR THE COUNTY OF CLARK | |

STATE OF WASHINGTON/ CITY OF
VANCOUVER/ CITY OF CAMAS/ WASHOUGAL
Plaintiff,

vs.

DEBORBA, JOAO RICARDO

DOB ▉                    Defendant.

☒ Pre-Trial    ☐ Post Conviction
☒ Replacement Order (paragraph **10**)

**Domestic Violence No-Contact Order**

(clj = NOCON, Superior cts = ORNC, ORWPNP)
Clerk's action required: Para **9**

**No-Contact Order**

1. **Protected Person's Identifiers:**

| AD | | | | | |
|---|---|---|---|---|---|
| Name (Last, First Middle) | | | Name (Last, First Middle) | | |
| ▉ | F | W | | | |
| DOB | Gender | Race | DOB | Gender | Race |

**Defendant's Identifiers:**

| Date of Birth: ▉ | Gender M | Race W |
|---|---|---|

2. **Defendant:**

   A. do not cause, attempt, or threaten to cause bodily injury to, assault, sexually assault, harass, stalk, or keep under surveillance the protected person.

   B. do not contact the protected person, directly, indirectly, in person or through others, by phone, mail, or electronic means, except for mailing or service of process of court documents through a third party, or contact by the defendant's lawyers.

   C. do not knowingly enter, remain, or come within 250 FT____ (1,000 feet if no distance entered) of the protected person's residence, school, workplace, other: _____

   D. other: Third Party contact allowed regarding child welfare and to arrange child visits, if any.

   Electronic communication with children allowed, if children have their own cell phone.

   _____

   _____

   _____

   _____

   _____

3. **Firearms, Weapons, and Concealed Pistol License, Defendant:**
   ☒ do not own, possess, or control a firearm. (RCW 9.41.040.)
   ☒ do not access, obtain, or possess a firearm, other dangerous weapon, or concealed pistol license. (RCW 9.41.800.)
   ☒ shall **immediately surrender** all firearms and other dangerous weapons within the defendant's possession or control and any concealed pistol license. Comply with the **Order to Surrender Weapons** filed separately. (RCW 9.41.800.)

4. | **This no-contact order expires on** | 11/12/2024 | . Five years from today if no date is entered. |

**Warning:** Violation of this order with actual notice of its terms is a criminal offense under chapter 26.50 RCW and will subject a violator to arrest; any assault, drive-by shooting, or reckless endangerment that is a violation of this order is a felony. **You can be arrested even if the person protected by this order invites or allows you to violate the order's prohibitions.** You have the sole responsibility to avoid or refrain from violating the order's provisions. Only the court can change the order upon written request.

Domestic Violence No-Contact Order (NOCON) (ORNC) (ORWPNP) - Page 1 of 2
WPF NC 02.0100 (07/2019) - RCW 10.99.040, .045, .050, RCW 9.41.800

DC 1401
Rev 09/2019

09296

**Findings of Fact**

5. Based upon the record both written and oral, the court finds that the defendant has been charged with, arrested for, or convicted of a domestic violence offense, that the defendant represents a credible threat to the physical safety of the protected person, and the court issues this Domestic Violence No-Contact Order under chapter 10.99 RCW to prevent possible recurrence of violence.

6. The court finds that the defendant's relationship to the person protected by this order is as a/an:
   ☒ Intimate partner because they are:
   ☒ current or former spouses or domestic partners, ☐ parents of a child-in-common, ☐ age 16 or older and are/were in a dating relationship, and are currently residing together or resided together in the past. ☐ age 16 or older and are/were in a dating relationship, but have *never* resided together.
   or
   ☐ Family or household member as defined by RCW 26.50.010(6): _____.

7. ☒ For crimes not defined as a serious offense, the court makes the following mandatory findings pursuant to RCW 9.41.800(1) and (2): ☐ The defendant used, displayed, or threatened to use a firearm or other dangerous weapon in a felony; or ☐ The defendant is ineligible to possess a firearm pursuant to RCW 9.41.040; or ☒ Possession of a firearm or other dangerous weapon by the defendant presents a serious and imminent threat to public health or safety, or to the health or safety of any individual.

---

***Additional Warnings to Defendant***: This order does not modify or terminate any order entered in any other case. You are still required to comply with other orders.

Willful violation of this order is punishable under RCW 26.50.110. State and federal firearm restrictions apply. 18 U.S.C. § 922(g)(8)(9); RCW 9.41.040. A violation is a felony and will subject you to arrest.

Pursuant to 18 U.S.C. § 2265, a court in any of the 50 states, the District of Columbia, Puerto Rico, any United States territory, and any tribal land within the United States shall accord full faith and credit to the order.

---

**Additional Orders**

8. ☐ Civil standby: The appropriate law enforcement agency shall, at a reasonable time and for a reasonable duration, assist the defendant in obtaining personal belongings located at:
   _____

9. **Washington Crime Information Center (WACIC) Data Entry**: The clerk of the court shall forward a copy of this order on or before the next judicial day to: _____
   ☐ County Sheriff's Office                          ☐ Camas Police Department
   ☒ Vancouver Police Department                 ☐ Washougal Police Department
   where the case is filed, which shall enter it into WACIC.

10. This order replaces all prior no-contact orders protecting the same person issued under this cause number.

Dated: ___November 14, 2019___ in open court with the defendant present.

I acknowledge receipt of a copy of this order:

Defendant
Thu Nov 14 2019 14:21

_____
Defendant

Commissioner
Abigail E. Bartlett

Digitally signed by Commissioner Abigail E. Bartlett
DN: cn=Commissioner Abigail E. Bartlett,
o=Clark County, ou=District Court,
email=district.court@clark.wa.gov, c=US
Date: 2019.11.14 14:18:07 -08'00'

Commissioner Abigail Bartlett

The protected person shall be provided with a certified copy of this order.

I am a certified or registered interpreter or found by the court to be qualified to interpret in the
_____ language, which the defendant understands. I translated this order for the defendant from English into that language.

Signed on ___11/14/2019___ (Date) at (City) _____, (State) _____.

Interpreter: _____   Print name: _____

*Domestic Violence No-Contact Order (NOCON) (ORNC) (ORWPNP) - Page 2 of 2*
*WPF NC 02.0100 (07/2019) - RCW 10.99.040, .045, .050, RCW 9.41.800*
*9Z1074494  VPD  CN*

DC 1401
Rev 09/2019

Exhibit 7



**Vancouver Police Department**

## Report Number 2019-019034 - *Offense / Incident --GO~5378036 Report

| REPORT DATE / TIME | EVENT START DATE / TIME - EVENT END DATE / TIME | REPORT WRITER |
|---|---|---|
| Nov 16, 2019 17:17 | Nov 16, 2019 16:24 - 17:17 | Zachary Allred #1564 |

REPORT TAKEN LOCATION
VILLAGE PARK APARTMENTS, 3214 NE 62ND AVE, VANCOUVER, WA 98661

### NARRATIVE

Document No: GO0053780360001
Subject: NCO VIO SUM 1564
Author: ZACHARY ALLRED (231564)
Date:2019-11-16 23:37:00

[23RCW01 ] VPD CASE SUMMARY AND RCW v.150611_____ CASE
SUMMARY[■■■■AD■■■■] CALLED TO REPORT HER HUSBAND, JOAO DEBORBA, WHO IS THERESPONDENT IN A VALID AND SERVED
NO CONTACT ORDER HAD CALLED AND SENT HERMULTIPLE TEXT MESSAGES.]ATTACHMENTS[PHOTO/EVIDENCE:PHOTOGRAPHS OF
MESSAGES AND CALL LOG20 FIREARMS COLLECTED FOR SAFEKEEPINGCONSENT TO SEARCH FORM SIGNED BY JOAO DEBORBA ORPHAN
DOCS:COPY OF ORDERCOPY OF CONSENT TO SEARCH FORM]EVIDENCE SUBMITTED IN TRAQ: [ ]NONE [X ]PHYSICAL EVIDENCE[X ]DIGITAL
EVIDENCELIST OF CHARGES[ORDE - 26.50.110(1) – VIOLATION OF ORDER - GM ][ ][][ ]RECOMMENDATIONS[FORWARD TO DV PC AND DV
UNIT FOR REVIEW ]EXTERNAL DISTRIBUTION (Other than options available in Routing) [No ][ ] [ ] [ ]Other External Distribution:[]

Document No: GO0053780360002
Subject: NCO VIO DV NAR 1564
Author: ZACHARY ALLRED (231564)
Date:2019-11-17 00:26:00

On 15 November 2019, at approximately 1820 hours, while on uniformed patrol in a marked patrol car in Vancouver, WA, I was dispatched
to the Vancouver West Precinct located at 2800 NE Stapleton Road, in regards to a
restraining orderviolation. It was reported by[■■■■AD■■■■] her husband, Joao Deborba, had been calling her and there was a served
no contact order listing Joao as the respondent.
Upon arrival I contacted [■■AD■■] who advised she had startedreceiving phone calls and text messages on the "WhatsApp" from Joao.
[■■AD■■] had the valid and served No Contact Order (9Z1074494) which stated "do not contact the protected person, directly,
indirectly, in person or through others, by phone, mail, or electronic means." [■■AD■■] showed me her phone and the call log shows
approximately 20 phone calls from 1624 hours
to 1651 hours. The messages in the WhatsApp show multiple text and voice messages from 1308hours to 1525 hours. I took photographs
of both the
call logs and the messages in the app and have entered them into TraQ as evidence.
[■■AD■■] stated she was afraid to go home; she lives at ■■■■■■■■■■■■■■■■■■■■ as Joao stated he would come over to see the kids.
Joao livesat 3214 NE 62nd Avenue Unit J6, and [■■AD■■] believed he was at his apartment at the time of sending the messages.
[■■AD■■] also advised
Joao possessed firearms, but she thought he had turned them in after he was arrested earlier in the week. She did not know how many or
what types of firearms he had. I observed in the order it was stated Joao needed to surrender his weapons to comply with the order.
[■■AD■■] and I talked about options she had to feel safe and comfortable in her own residence and she stated she had friends coming
over to stay with her. She also stated she would be changing the locks as soon as possible.
I conducted a criminal history check on Joao which returned with no prior violations of a no contact order. I spoke with CPL Henderson and
advised him of the information about the provided by [■■■AD■■■] I also advised him about thestatement of possibly having firearms and
finding no indication the said firearms had been turned over to Law Enforcement. Me, CPL Henderson, and additional units changed
location to Joao s apartment to attempt contact.
The lights were on in the unit and I attempted to call him via phone and have him exit the residence, there was no answer and we

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| Zachary Allred #1564   Nov 16, 2019 17:17 (e-signature) | Brian Ruder #1423   Nov 17, 2019 00:00 (e-signature) |
| PRINT NAME | PRINT NAME |
| Zachary Allred #1564 | Brian Ruder #1423 |

**Vancouver Police Department**
Ma k43 RMS  o m v2 0 gene ated by   Boyle #1778 on Aug 24, 2021 01 15
mpo ted Repo t

Pg 1 of 3
08781

Report Number 2019 019034   *Offense / nc dent   GO~5378036 Report (Vancouver Po ce Department)                                    Pg 2 of 3

attempted to knock on the front door. This again resulted in no answer, Officer Merrill and Officer Mckenzie advised over the radio they had contact with Joao on the raised patio deck on the rear of the apartment. Joao was advised he was under arrest and to come out of the apartment. After spending a few

minutes speaking with us he stated he would exit out of the front of the apartment with nothing in his hands.

I returned to the front of the apartment to wait for Joao to exit; however, he did not. Additional units arrived on scene and a perimeter was set up. The Bearcat was also brought to scene to assist in doing PA announcements advising Joao to exit the residence as he was under arrest. For approximately 12 minutes there were multiple announcements advising Joao to exit the residence, eventually he did exit the apartment with nothing in

his hands. He complied with verbal commands and walked down the stairs

from his apartment and I placed him in handcuffs behind his back, checked the handcuffs for fit, and double locked them.

I escorted Joao to my patrol vehicle and placed him in the backseat. I advised Joao again that he was under arrest and read him the Miranda Warnings from my department issued card; I asked Joao if he understood his rights, and he said "yes." I then asked if he would still like to speak to me about what had happened, and he said "yes." I advised Joao he was under arrest for calling and sending messages to ▆▆AD▆▆ Joao advised he thought the judge had stated he could call ▆▆AD▆▆ in order to speak to their children. I advised that was not correct due to the No Contact Order he is not allowed contact with ▆▆AD▆▆

I asked Joao if he had any firearms, and he advised he did. I asked if

they were in the apartment and he confirmed they were. He also advised he attempted to turn the weapons in at the Vancouver East Precinct but came in after hours and was told to return between work hours Monday through

Friday. I asked Joao if he would be willing give Law Enforcement consent

to enter the residence and collect the firearms in accordance to the order.

Joao stated he would give Police consent and I completed a Voluntary Consent To Search form with Joao. I released him from handcuffs and he signed the form and wrote down the combination for his gun safe where the firearms were located. After he completed the form and Officer Mckenzie

and I signed the form as witnesses. I then placed Joao in handcuffs using two sets of handcuffs behind his back, checked the handcuffs for fit, and double locked them.

As part of the consent to search form Joao was advised he could revoke his consent at any time during the search. CPL Henderson, Officer Epperson, Officer Merrill, and Officer Mckenzie entered the residence and using the information provided by Joao collected 20 firearms from Joao s gun safe. There was a combination of handguns and long rifles. All of the firearms have been entered into TraQ for safekeeping; I also have entered the

Consent to Search Form into evidence as well.

Based on the statements provided by Alessandra and Joao about the exchange of messages and multiple phone calls; there is probable cause to arrest

Joao for Violation for No Contact Order DV RCW 26.50.110. I transported Joao to Clark County Jail where he was booked for the above listed charge.

RECOMMENDATION:

Forward to DV Unit and DV PC for review

## OFFENSE-1

OFFENSE CODE

50992 | PROTECTION ORDERS (WA)

| OFFENSE START DATE | OFFENSE END DATE | OFFENSE COMPLETION | DOES EVENT CONTAIN BIAS ELEMENTS? |
|---|---|---|---|
| Nov 16, 2019 00:00 | Nov 16, 2019 00:00 | ▣ COMPLETED  ☐ ATTEMPTED | ☐ YES ▣ NO |

| DOMESTIC VIOLENCE | WAS METHOD OF ENTRY FORCED? |
|---|---|
| ▣ YES ☐ NO | ☐ YES ▣ NO |

*OFFENSE LOCATION*

LOCATION NAME / STREET ADDRESS/LOCATION NAME / APT, UNIT, STE / DESCRIPTION

VILLAGE PARK APARTMENTS, 3214 NE 62ND AVE, J6

| CITY | STATE | ZIP | COUNTRY CODE |
|---|---|---|---|
| VANCOUVER | WA | 98661 | US |

LOCATION CATEGORY

Residence/ Home

*VICTIMS 1*

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| Zachary Allred #1564   Nov 16, 2019 17:17 (e-signature) | Brian Ruder #1423   Nov 17, 2019 00:00 (e-signature) |
| PRINT NAME | PRINT NAME |
| Zachary Allred #1564 | Brian Ruder #1423 |

**Vancouver Police Department**
Ma k43 RMS  o m v2 0 gene ated by  Boyle #1778 on Aug 24, 2021 01 15
mpo ted Repo t                                                                                                Pg 2 of 3

08782

Report Number 2019 019034   *Offense / nc dent   GO~5378036 Report (Vancouver Po ce Department)                                    Pg 3 of 3

| VICTIMS- NAME (LAST, FIRST MIDDLE) | | | | DOB / ESTIMATED AGE RANGE |
|---|---|---|---|---|
| V-1 | AD | | | |

| SEX | RACE / ETHNICITY | PHONE NUMBER | |
|---|---|---|---|
| Female | White / Not Hispanic Or Latino | | (Mobile) |

HOME ADDRESS

*INVOLVED OTHER 1*

| INVOLVED OTHER- (PERSON) | | | DOB / ESTIMATED AGE RANGE |
|---|---|---|---|
| O-1 DEBORBA, JOAO RICARDO | | | |

| SEX | RACE / ETHNICITY | PHONE NUMBER | |
|---|---|---|---|
| Male | White / Not Hispanic Or Latino | | (Mobile) |

HOME ADDRESS

VILLAGE PARK APARTMENTS, 3214 NE 62ND AVE, J6, VANCOUVER, WA 98661

## INCIDENT INFO

INCIDENT TYPE

T6140 | PROPERTY SAFEKEEPING

*OFFENSE LOCATION*

LOCATION NAME / STREET ADDRESS/LOCATION NAME / APT, UNIT, STE / DESCRIPTION

VILLAGE PARK APARTMENTS, 3214 NE 62ND AVE, J6

| CITY | STATE | ZIP | COUNTRY CODE |
|---|---|---|---|
| VANCOUVER | WA | 98661 | US |

LOCATION CATEGORY

Residence/ Home

## ATTACHMENTS ADDENDUM

| FILE NAME | UPLOAD DATE/TIME | UPLOADED BY |
|---|---|---|
| 3543232.pdf | Nov 5, 2020 01:54 | L. Data Migration |
| 3547193.pdf | Nov 5, 2020 01:54 | L. Data Migration |
| 3547195.pdf | Nov 5, 2020 01:54 | L. Data Migration |
| 3547197.pdf | Nov 5, 2020 01:54 | L. Data Migration |
| 3547200.pdf | Nov 5, 2020 01:54 | L. Data Migration |
| 3547202.pdf | Nov 5, 2020 01:54 | L. Data Migration |
| GO_2019_19034.pdf | Oct 28, 2020 15:29 | L. Data Migration |

This report was generated in Mark43 and the e-signature was affixed using the undersigned officer s unique login and password. I certify (or declare) under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct to the best of my knowledge and belief.

| ELECTRONICALLY SIGNED | DATE | PLACE |
|---|---|---|
| Zachary Allred | 11/16/2019 | Vancouver Police Department, WA |

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| Zachary Allred #1564   Nov 16, 2019 17:17 (e-signature) | Brian Ruder #1423   Nov 17, 2019 00:00 (e-signature) |
| PRINT NAME | PRINT NAME |
| Zachary Allred #1564 | Brian Ruder #1423 |

**Vancouver Police Department**
Ma k43 RMS  o m v2 0 gene ated by   Boyle #1778 on Aug 24, 2021 01 15
mpo ted Repo t

Pg 3 of 3

08783

## Report Number 2019-019034 - Custodial Property Summary Report

### VEHICLE / PROPERTY & ITEMS SUMMARY

| DESCRIPTION / MAKE / MODEL / COLOR | STATUS / DATE / REASON FOR CUSTODY | VIN # / SERIAL # | QTY. | TOTAL ($) VALUE |
|---|---|---|---|---|
| AR-15 upper / UNK / AR15 | Property, Safekeeping / Dec 5, 2019 / SAFEKEEPING ITEM | none | | |
| AR-15 upper / UNK / AR15 | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | none | | |
| Misc firearm magazine | Property, Safekeeping / May 4, 2020 / SAFEKEEPING ITEM | | | |
| Misc ammo | Property, Safekeeping / May 4, 2020 / SAFEKEEPING ITEM | | | |
| Sig Saur Semi auto hand gun / Sig Sauer / 1911 | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | 54E026501 | | |
| Sig Sauer hand gun / Sig Sauer / P226 | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | uu 721886 | | |
| Rock Island semi auto / Rock Island / m1911 | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | ria2079951 | | |
| Rock Island Revolver / Rock Island / 200 | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | RIA 1999506 | | |
| Taurus revolver / Taurus / Brasil | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | 0F278125 | | |
| Keltec semi auto / KELTEC / p 32 | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | CVF93 | | |
| .25 ACP semi auto / Armi Tanfoglio Giuse / GT27 | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | mk15153 | | |
| Savage 338 Lapua / SAVAGE / 110 | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | n028975 | | |
| Kel Tec folding gun / KEL TEC / SUB-2000 | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | FF4Q08 | | |
| AR style rifle / bear creek / Bca 15 | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | 25385 | | |
| pump shotgun / REMINGTON / 870 | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | rs56585u | | |
| bolt action rifle / Deulsche Waffen / 1908 | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | 9547UU | | |
| semi auto rifle / Centaury Arms / Ak-47 | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | Ras47071128 | | |
| Semi Auto Rifle / UNK / AR-pistol | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | UNK | | |
| bolt action rifle / Norma / 308 | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | 1245225 | | |
| bolt action rifle / Ruger / precision | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | 840-60026 | | |

Vancouver Police Department
Ma k43 RMS  o  m v2 0 gene ated by    Boyle #1778 on Aug 24, 2021 01 15
mpo ted Repo t

Pg 1 of 11

08784

| | | |
|---|---|---|
| bolt action rifle / SAVAGE / 308 | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | K324833 |
| bolt action rifle / Herstal / 1952 | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | 14606 |
| semi auto rifle / spikes tactical / ST15 | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | 035314 |
| lever action rifle / 3030 | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | 3154796 |
| Voluntary Consent to Search Form | Property, Evidence/Seized / Nov 18, 2019 / CAMO | |
| Front Rifle Rest Box | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | |
| Palmetto State Arms Cardboard Box | Property, Safekeeping / Nov 18, 2019 / SAFEKEEPING ITEM | |

## PROPERTY & ITEMS ADDENDUM

*2019 019034 252834 FIREARM   AR 15 UPPER*

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| RIFLE | AR-15 upper | |
| FIREARM MAKE | SERIAL # | REGISTRATION # |
| UNK | none | none |

IDENTIFIER

TRAQ: TRAQ EVIDENCE, TRAQ: Legacy Item#: 1549-001

CALIBER / GAUGE

5.56 MM

| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
|---|---|---|
| Property, Safekeeping | Dec 5, 2019 14:58 | Yes |

REASON FOR POLICE CUSTODY

SAFEKEEPING ITEM

STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON

RR5 / Abernathy, Kit

*2019 019034 252835 FIREARM   AR 15 UPPER*

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| RIFLE | AR-15 upper | |
| FIREARM MAKE | SERIAL # | REGISTRATION # |
| UNK | none | none |

IDENTIFIER

TRAQ: Legacy Item#: 1549-002, TRAQ: TRAQ EVIDENCE

CALIBER / GAUGE

300 SAVAGE

| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
|---|---|---|
| Property, Safekeeping | Nov 18, 2019 16:23 | Yes |

REASON FOR POLICE CUSTODY

SAFEKEEPING ITEM

STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON

RR5 / Abernathy, Kit

*2019 019034 252836 OTHER ITEM   MISC FIREARM MAGAZINE*

ITEM CATEGORY

GUN MAGAZINE

**Vancouver Police Department**
Ma k43 RMS  o m v2 0 gene ated by   Boyle #1778 on Aug 24, 2021 01 15
mpo ted Repo t                                                                                          Pg 2 of 11

08785

| IDENTIFIER | | |
|---|---|---|
| TRAQ: Legacy Item#: 1549-003, TRAQ: TRAQ EVIDENCE | | |

| DESCRIPTION | | |
|---|---|---|
| Misc firearm magazine | | |

| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
|---|---|---|
| Property, Safekeeping | May 4, 2020 14:54 | Yes |

| REASON FOR POLICE CUSTODY | | |
|---|---|---|
| SAFEKEEPING ITEM | | |

| STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON | | |
|---|---|---|
| 7K8 / Abernathy, Kit | | |

*2019 019034 252837 OTHER ITEM   MISC AMMO*

| ITEM CATEGORY | | |
|---|---|---|
| AMMUNITION | | |

| IDENTIFIER | | |
|---|---|---|
| TRAQ: TRAQ EVIDENCE, TRAQ: Legacy Item#: 1549-004 | | |

| DESCRIPTION | | |
|---|---|---|
| Misc ammo | | |

| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
|---|---|---|
| Property, Safekeeping | May 4, 2020 14:54 | Yes |

| REASON FOR POLICE CUSTODY | | |
|---|---|---|
| SAFEKEEPING ITEM | | |

| STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON | | |
|---|---|---|
| 7K8 / Abernathy, Kit | | |

*2019 019034 252838 FIREARM   SIG SAUR SEMI AUTO HAND GUN*

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| PISTOL | Sig Saur Semi auto hand gun | |

| FIREARM MAKE | SERIAL # | REGISTRATION # |
|---|---|---|
| Sig Sauer | 54E026501 | 54E026501 |

| IDENTIFIER | | |
|---|---|---|
| TRAQ: TRAQ EVIDENCE, TRAQ: Legacy Item#: 1731-001 | | |

| CALIBER / GAUGE | | |
|---|---|---|
| .45 | | |

| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
|---|---|---|
| Property, Safekeeping | Nov 18, 2019 16:32 | Yes |

| REASON FOR POLICE CUSTODY | | |
|---|---|---|
| SAFEKEEPING ITEM | | |

| STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON | | |
|---|---|---|
| GS2 / Abernathy, Kit | | |

*2019 019034 252839 FIREARM   SIG SAUER HAND GUN*

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| PISTOL | Sig Sauer hand gun | |

| FIREARM MAKE | SERIAL # | REGISTRATION # |
|---|---|---|
| Sig Sauer | uu 721886 | uu 721886 |

| IDENTIFIER | | |
|---|---|---|
| TRAQ: Legacy Item#: 1731-002, TRAQ: TRAQ EVIDENCE | | |

| CALIBER / GAUGE | | |
|---|---|---|
| 9 MM | | |

| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
|---|---|---|
| Property, Safekeeping | Nov 18, 2019 16:32 | Yes |

| REASON FOR POLICE CUSTODY | | |
|---|---|---|
| SAFEKEEPING ITEM | | |

**Vancouver Police Department**
Ma k43 RMS  o m v2 0 gene ated by   Boyle #1778 on Aug 24, 2021 01 15
mpo ted Repo t                                                                                    Pg 3 of 11

08786

Report Number 2019 019034    Custod a  Property Summary Report (Vancouver Po ce Department)                                          Pg 4 of 11

| STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON | | |
|---|---|---|
| GS2 / Abernathy, Kit | | |

*2019 019034 252840 FIREARM   ROCK ISLAND SEMI AUTO*

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| PISTOL | Rock Island semi auto | |

| FIREARM MAKE | SERIAL # | REGISTRATION # |
|---|---|---|
| Rock Island | ria2079951 | ria2079951 |

| IDENTIFIER | | |
|---|---|---|
| TRAQ: TRAQ EVIDENCE, TRAQ: Legacy Item#: 1731-003 | | |

| CALIBER / GAUGE | | |
|---|---|---|
| .380 | | |

| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
|---|---|---|
| Property, Safekeeping | Nov 18, 2019 16:32 | Yes |

| REASON FOR POLICE CUSTODY | | |
|---|---|---|
| SAFEKEEPING ITEM | | |

| STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON | | |
|---|---|---|
| GS2 / Abernathy, Kit | | |

*2019 019034 252841 FIREARM   ROCK ISLAND REVOLVER*

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| PISTOL | Rock Island Revolver | |

| FIREARM MAKE | SERIAL # | REGISTRATION # |
|---|---|---|
| Rock Island | RIA 1999506 | RIA 1999506 |

| IDENTIFIER | | |
|---|---|---|
| TRAQ: Legacy Item#: 1731-004, TRAQ: TRAQ EVIDENCE | | |

| CALIBER / GAUGE | | |
|---|---|---|
| .38 | | |

| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
|---|---|---|
| Property, Safekeeping | Nov 18, 2019 16:32 | Yes |

| REASON FOR POLICE CUSTODY | | |
|---|---|---|
| SAFEKEEPING ITEM | | |

| STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON | | |
|---|---|---|
| GS2 / Abernathy, Kit | | |

*2019 019034 252842 FIREARM   TAURUS REVOLVER*

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| PISTOL | Taurus revolver | |

| FIREARM MAKE | SERIAL # | REGISTRATION # |
|---|---|---|
| Taurus | 0F278125 | 0F278125 |

| IDENTIFIER | | |
|---|---|---|
| TRAQ: Legacy Item#: 1731-005, TRAQ: TRAQ EVIDENCE | | |

| CALIBER / GAUGE | | |
|---|---|---|
| .357 MAGNUM | | |

| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
|---|---|---|
| Property, Safekeeping | Nov 18, 2019 16:32 | Yes |

| REASON FOR POLICE CUSTODY | | |
|---|---|---|
| SAFEKEEPING ITEM | | |

| STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON | | |
|---|---|---|
| GS2 / Abernathy, Kit | | |

*2019 019034 252843 FIREARM   KELTEC SEMI AUTO*

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| PISTOL | Keltec semi auto | |

| FIREARM MAKE | SERIAL # | REGISTRATION # |
|---|---|---|
| KELTEC | CVF93 | CVF93 |

**Vancouver Police Department**                                                                    Pg 4 of 11
Ma k43 RMS  o m v2 0 gene ated by    Boyle #1778 on Aug 24, 2021 01 15
mpo ted Repo t

08787

| IDENTIFIER | | |
|---|---|---|
| TRAQ: Legacy Item#: 1731-006, TRAQ: TRAQ EVIDENCE | | |
| CALIBER / GAUGE | | |
| .380 | | |
| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
| Property, Safekeeping | Nov 18, 2019 16:32 | Yes |
| REASON FOR POLICE CUSTODY | | |
| SAFEKEEPING ITEM | | |
| STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON | | |
| GS2 / Abernathy, Kit | | |

### 2019 019034 252844 FIREARM   25 ACP SEMI AUTO

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| PISTOL | .25 ACP semi auto | |
| FIREARM MAKE | SERIAL # | REGISTRATION # |
| Armi Tanfoglio Giuse | mk15153 | mk15153 |

| IDENTIFIER | | |
|---|---|---|
| TRAQ: TRAQ EVIDENCE, TRAQ: Legacy Item#: 1731-007 | | |
| CALIBER / GAUGE | | |
| .25 | | |
| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
| Property, Safekeeping | Nov 18, 2019 16:32 | Yes |
| REASON FOR POLICE CUSTODY | | |
| SAFEKEEPING ITEM | | |
| STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON | | |
| GS2 / Abernathy, Kit | | |

### 2019 019034 252845 FIREARM   SAVAGE 338 LAPUA

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| RIFLE | Savage 338 Lapua | |
| FIREARM MAKE | SERIAL # | REGISTRATION # |
| SAVAGE | n028975 | n028975 |

| IDENTIFIER | | |
|---|---|---|
| TRAQ: Legacy Item#: 1731-008, TRAQ: TRAQ EVIDENCE | | |
| CALIBER / GAUGE | | |
| .338 | | |
| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
| Property, Safekeeping | Nov 18, 2019 16:23 | Yes |
| REASON FOR POLICE CUSTODY | | |
| SAFEKEEPING ITEM | | |
| STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON | | |
| RR5 / Abernathy, Kit | | |

### 2019 019034 252846 FIREARM   KEL TEC FOLDING GUN

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| RIFLE | Kel Tec folding gun | |
| FIREARM MAKE | SERIAL # | REGISTRATION # |
| KEL TEC | FF4Q08 | FF4Q08 |

| IDENTIFIER | | |
|---|---|---|
| TRAQ: TRAQ EVIDENCE, TRAQ: Legacy Item#: 1731-009 | | |
| CALIBER / GAUGE | | |
| .40 | | |
| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
| Property, Safekeeping | Nov 18, 2019 16:23 | Yes |

**Vancouver Police Department**
Ma k43 RMS  o  m v2 0 gene ated by   Boyle #1778 on Aug 24, 2021 01 15
mpo ted Repo t

Pg 5 of 11

08788

Report Number 2019 019034   Custod a   Property Summary Report (Vancouver Po ce Department)                    Pg 6 of 11

| REASON FOR POLICE CUSTODY | | |
|---|---|---|
| SAFEKEEPING ITEM | | |

STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON

RR5 / Abernathy, Kit

*2019 019034 252847 FIREARM   AR STYLE RIFLE*

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| RIFLE | AR style rifle | |
| **FIREARM MAKE** | **SERIAL #** | **REGISTRATION #** |
| bear creek | 25385 | 25385 |

IDENTIFIER

TRAQ: Legacy Item#: 1731-010, TRAQ: TRAQ EVIDENCE

CALIBER / GAUGE

5.56 MM

| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
|---|---|---|
| Property, Safekeeping | Nov 18, 2019 16:23 | Yes |

| REASON FOR POLICE CUSTODY | | |
|---|---|---|
| SAFEKEEPING ITEM | | |

STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON

RR5 / Abernathy, Kit

*2019 019034 252848 FIREARM   PUMP SHOTGUN*

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| RIFLE | pump shotgun | |
| **FIREARM MAKE** | **SERIAL #** | **REGISTRATION #** |
| REMINGTON | rs56585u | rs56585u |

IDENTIFIER

TRAQ: Legacy Item#: 1731-011, TRAQ: TRAQ EVIDENCE

CALIBER / GAUGE

12 GAUGE

| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
|---|---|---|
| Property, Safekeeping | Nov 18, 2019 16:23 | Yes |

| REASON FOR POLICE CUSTODY | | |
|---|---|---|
| SAFEKEEPING ITEM | | |

STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON

RR5 / Abernathy, Kit

*2019 019034 252849 FIREARM   BOLT ACTION RIFLE*

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| RIFLE | bolt action rifle | |
| **FIREARM MAKE** | **SERIAL #** | **REGISTRATION #** |
| Deulsche Waffen | 9547UU | 9547UU |

IDENTIFIER

TRAQ: Legacy Item#: 1731-012, TRAQ: TRAQ EVIDENCE

CALIBER / GAUGE

7MM

| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
|---|---|---|
| Property, Safekeeping | Nov 18, 2019 16:23 | Yes |

| REASON FOR POLICE CUSTODY | | |
|---|---|---|
| SAFEKEEPING ITEM | | |

STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON

RR5 / Abernathy, Kit

*2019 019034 252850 FIREARM   SEMI AUTO RIFLE*

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| RIFLE | semi auto rifle | |

**Vancouver Police Department**                    Pg 6 of 11
Ma k43 RMS  o m v2 0 gene ated by    Boyle #1778 on Aug 24, 2021 01 15
mpo ted Repo t

08789

Report Number 2019 019034   Custod a  Property Summary Report (Vancouver Po ce Department)                    Pg 7 of 11

| FIREARM MAKE | SERIAL # | REGISTRATION # |
|---|---|---|
| Centuary Arms | Ras47071128 | Ras47071128 |

| IDENTIFIER | | |
|---|---|---|
| TRAQ: Legacy Item#: 1731-013, TRAQ: TRAQ EVIDENCE | | |

| CALIBER / GAUGE | | |
|---|---|---|
| 7.62 | | |

| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
|---|---|---|
| Property, Safekeeping | Nov 18, 2019 16:23 | Yes |

| REASON FOR POLICE CUSTODY | | |
|---|---|---|
| SAFEKEEPING ITEM | | |

| STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON | | |
|---|---|---|
| RR5 / Abernathy, Kit | | |

*2019 019034 252851 FIREARM   SEMI AUTO RIFLE*

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| RIFLE | Semi Auto Rifle | |

| FIREARM MAKE | SERIAL # | REGISTRATION # |
|---|---|---|
| UNK | UNK | UNK |

| IDENTIFIER | | |
|---|---|---|
| TRAQ: TRAQ EVIDENCE, TRAQ: Legacy Item#: 1731-014 | | |

| CALIBER / GAUGE | | |
|---|---|---|
| .223 | | |

| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
|---|---|---|
| Property, Safekeeping | Nov 18, 2019 16:23 | Yes |

| REASON FOR POLICE CUSTODY | | |
|---|---|---|
| SAFEKEEPING ITEM | | |

| STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON | | |
|---|---|---|
| RR5 / Abernathy, Kit | | |

*2019 019034 252852 FIREARM   BOLT ACTION RIFLE*

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| RIFLE | bolt action rifle | |

| FIREARM MAKE | SERIAL # | REGISTRATION # |
|---|---|---|
| Norma | 1245225 | 1245225 |

| IDENTIFIER | | |
|---|---|---|
| TRAQ: Legacy Item#: 1731-015, TRAQ: TRAQ EVIDENCE | | |

| CALIBER / GAUGE | | |
|---|---|---|
| .308 CALIBRE | | |

| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
|---|---|---|
| Property, Safekeeping | Nov 18, 2019 16:23 | Yes |

| REASON FOR POLICE CUSTODY | | |
|---|---|---|
| SAFEKEEPING ITEM | | |

| STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON | | |
|---|---|---|
| RR5 / Abernathy, Kit | | |

*2019 019034 252853 FIREARM   BOLT ACTION RIFLE*

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| RIFLE | bolt action rifle | |

| FIREARM MAKE | SERIAL # | REGISTRATION # |
|---|---|---|
| Ruger | 840-60026 | 840-60026 |

| IDENTIFIER | | |
|---|---|---|
| TRAQ: Legacy Item#: 1731-016, TRAQ: TRAQ EVIDENCE | | |

| CALIBER / GAUGE | | |
|---|---|---|
| .22 | | |

Ma k43 RMS  o m v2 0 gene ated by    Boyle #1778 on Aug 24, 2021 01 15
mpo ted Repo t

08790

Report Number 2019 019034   Custod a  Property Summary Report (Vancouver Po  ce Department)                                    Pg 8 of 11

| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
|---|---|---|
| Property, Safekeeping | Nov 18, 2019 16:23 | Yes |

REASON FOR POLICE CUSTODY

SAFEKEEPING ITEM

STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON

RR5 / Abernathy, Kit

*2019 019034 252854 FIREARM   BOLT ACTION RIFLE*

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| RIFLE | bolt action rifle | |
| FIREARM MAKE | SERIAL # | REGISTRATION # |
| SAVAGE | K324833 | K324833 |

IDENTIFIER

TRAQ: TRAQ EVIDENCE, TRAQ: Legacy Item#: 1731-017

CALIBER / GAUGE

.308 CALIBRE

| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
|---|---|---|
| Property, Safekeeping | Nov 18, 2019 16:23 | Yes |

REASON FOR POLICE CUSTODY

SAFEKEEPING ITEM

STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON

RR5 / Abernathy, Kit

*2019 019034 252855 FIREARM   BOLT ACTION RIFLE*

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| RIFLE | bolt action rifle | |
| FIREARM MAKE | SERIAL # | REGISTRATION # |
| Herstal | 14606 | 14606 |

IDENTIFIER

TRAQ: TRAQ EVIDENCE, TRAQ: Legacy Item#: 1731-018

CALIBER / GAUGE

.3006

| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
|---|---|---|
| Property, Safekeeping | Nov 18, 2019 16:23 | Yes |

REASON FOR POLICE CUSTODY

SAFEKEEPING ITEM

STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON

RR5 / Abernathy, Kit

*2019 019034 252856 FIREARM   SEMI AUTO RIFLE*

| FIREARM TYPE | DESCRIPTION | |
|---|---|---|
| RIFLE | semi auto rifle | |
| FIREARM MAKE | SERIAL # | REGISTRATION # |
| spikes tactical | 035314 | 035314 |

IDENTIFIER

TRAQ: TRAQ EVIDENCE, TRAQ: Legacy Item#: 1731-019

CALIBER / GAUGE

5.56 MM

| STATUS | STATUS DATE | SUBMIT TO EVIDENCE |
|---|---|---|
| Property, Safekeeping | Nov 18, 2019 16:23 | Yes |

REASON FOR POLICE CUSTODY

SAFEKEEPING ITEM

STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON

RR5 / Abernathy, Kit

*2019 019034 252857 FIREARM   LEVER ACTION RIFLE*

**Vancouver Police Department**
Ma k43 RMS  o m v2 0 gene ated by    Boyle #1778 on Aug 24, 2021 01 15
mpo ted Repo t

Pg 8 of 11

08791

Report Number 2019 019034   Custod a  Property Summary Report (Vancouver Po ce Department)                    Pg 9 of 11

| FIREARM TYPE | | DESCRIPTION | |
|---|---|---|---|
| RIFLE | | lever action rifle | |
| SERIAL # | REGISTRATION # | | |
| 3154796 | 3154796 | | |
| IDENTIFIER | | | |
| TRAQ: Legacy Item#: 1731-020, TRAQ: TRAQ EVIDENCE | | | |
| CALIBER / GAUGE | | | |
| .30-.30 | | | |
| STATUS | | STATUS DATE | SUBMIT TO EVIDENCE |
| Property, Safekeeping | | Nov 18, 2019 16:23 | Yes |
| REASON FOR POLICE CUSTODY | | | |
| SAFEKEEPING ITEM | | | |
| STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON | | | |
| RR5 / Abernathy, Kit | | | |

2019 019034 252860 OTHER ITEM   VOLUNTARY CONSENT TO SEARCH FORM

| ITEM CATEGORY | | | |
|---|---|---|---|
| DOCUMENT (PERSONAL/BUSINESS) | | | |
| IDENTIFIER | | | |
| TRAQ: TRAQ EVIDENCE, TRAQ: Legacy Item#: 1564-001 | | | |
| DESCRIPTION | | | |
| Voluntary Consent to Search Form | | | |
| STATUS | | STATUS DATE | SUBMIT TO EVIDENCE |
| Property, Evidence/Seized | | Nov 18, 2019 16:35 | Yes |
| REASON FOR POLICE CUSTODY | | | |
| CAMO | | | |
| STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON | | | |
| DOC7 / Abernathy, Kit | | | |

2019 019034 252861 OTHER ITEM   FRONT RIFLE REST BOX

| ITEM CATEGORY | | | |
|---|---|---|---|
| BOX | | | |
| IDENTIFIER | | | |
| TRAQ: TRAQ EVIDENCE, TRAQ: Legacy Item#: 1564-002 | | | |
| DESCRIPTION | | | |
| Front Rifle Rest Box | | | |
| STATUS | | STATUS DATE | SUBMIT TO EVIDENCE |
| Property, Safekeeping | | Nov 18, 2019 16:29 | Yes |
| REASON FOR POLICE CUSTODY | | | |
| SAFEKEEPING ITEM | | | |
| STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON | | | |
| 25B3 / Abernathy, Kit | | | |

2019 019034 252862 OTHER ITEM   PALMETTO STATE ARMS CARDBOARD BOX

| ITEM CATEGORY | | | |
|---|---|---|---|
| BOX | | | |
| IDENTIFIER | | | |
| TRAQ: Legacy Item#: 1564-003, TRAQ: TRAQ EVIDENCE | | | |
| DESCRIPTION | | | |
| Palmetto State Arms Cardboard Box | | | |
| STATUS | | STATUS DATE | SUBMIT TO EVIDENCE |
| Property, Safekeeping | | Nov 18, 2019 16:29 | Yes |
| REASON FOR POLICE CUSTODY | | | |
| SAFEKEEPING ITEM | | | |

**Vancouver Police Department**
Ma 143 RMS  o m v2 0 gene ated by    Boyle #1778 on Aug 24, 2021 01 15
mpo ted Repo t                                                                                                       Pg 9 of 11

08792

STORAGE FACILITY / STORAGE LOCATION / INTAKE PERSON

25B3 / Abernathy, Kit

## ATTACHMENTS ADDENDUM

| FILE NAME | UPLOAD DATE/TIME | UPLOADED BY |
|---|---|---|
| DI0000461798.jpg | Oct 30, 2020 19:58 | L. Data Migration |
| DI0000461798.jpg | Nov 4, 2020 22:42 | L. Data Migration |
| DI0000461799.jpg | Oct 30, 2020 19:58 | L. Data Migration |
| DI0000461799.jpg | Nov 4, 2020 22:42 | L. Data Migration |
| DI0000461800.jpg | Oct 30, 2020 19:58 | L. Data Migration |
| DI0000461800.jpg | Nov 4, 2020 22:42 | L. Data Migration |
| DI0000461801.jpg | Oct 30, 2020 19:58 | L. Data Migration |
| DI0000461801.jpg | Nov 4, 2020 22:42 | L. Data Migration |
| DI0000461802.jpg | Oct 30, 2020 19:58 | L. Data Migration |
| DI0000461802.jpg | Nov 4, 2020 22:42 | L. Data Migration |
| DI0000461803.jpg | Oct 30, 2020 19:58 | L. Data Migration |
| DI0000461803.jpg | Nov 4, 2020 22:42 | L. Data Migration |
| DI0000461804.jpg | Oct 30, 2020 19:58 | L. Data Migration |
| DI0000461804.jpg | Nov 4, 2020 22:42 | L. Data Migration |
| DI0000461805.jpg | Oct 30, 2020 19:58 | L. Data Migration |
| DI0000461805.jpg | Nov 4, 2020 22:42 | L. Data Migration |
| DI0000461806.jpg | Oct 30, 2020 19:58 | L. Data Migration |
| DI0000461806.jpg | Nov 4, 2020 22:42 | L. Data Migration |
| DI0000461807.jpg | Oct 30, 2020 19:58 | L. Data Migration |

**Vancouver Police Department**
Ma k43 RMS  o m v2 0 gene ated by    Boyle #1778 on Aug 24, 2021 01 15
mpo ted Repo t                                                                                           Pg 10 of 11

08793

Report Number 2019 019034   Custod a  Property Summary Report (Vancouver Po ce Department)                    Pg 11 of 11

| DI0000461807.jpg | Nov 4, 2020 22:42 | L. Data Migration |
| DI0000461808.jpg | Oct 30, 2020 19:58 | L. Data Migration |
| DI0000461808.jpg | Nov 4, 2020 22:42 | L. Data Migration |

This report was generated in Mark43 and the e-signature was affixed using the undersigned officer s unique login and password. I certify (or declare) under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct to the best of my knowledge and belief.

| ELECTRONICALLY SIGNED | DATE | PLACE |
| Legacy Data Migration | 08/10/2020 | Vancouver Police Department, WA |

**Vancouver Police Department**
Ma k43 RMS  o m v2 0 gene ated by    Boyle #1778 on Aug 24, 2021 01 15
mpo ted Repo t                                                                              Pg 11 of 11

08794

## Report Number 2019-019034 - Supplement - FU~714598 Report

| REPORT DATE / TIME | EVENT START DATE / TIME - EVENT END DATE / TIME | REPORT WRITER |
|---|---|---|
| Dec 11, 2019 00:00 | Nov 16, 2019 16:24 - 17:17 | Deborah Libbey #1306 |

This report was generated in Mark43 and the e-signature was affixed using the undersigned officer s unique login and password. I certify (or declare) under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct to the best of my knowledge and belief.

| ELECTRONICALLY SIGNED | DATE | PLACE |
|---|---|---|
| Deborah Libbey | 11/02/2020 | Vancouver Police Department, WA |

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| Deborah Libbey #1306   Nov 2, 2020 07:17 (e-signature) | Deborah Libbey #1306   Nov 2, 2020 07:20 (e-signature) |
| PRINT NAME | PRINT NAME |
| Deborah Libbey #1306 | Deborah Libbey #1306 |

**Vancouver Police Department**
Ma k43 RMS  o m v2 0 gene ated by   Boyle #1778 on Aug 24, 2021.01 15
mpo ted Repo t                                                                                                                              Pg 1 of 1

08795

Exhibit 8

STATE OF WASHINGTON } ss.
COUNTY OF CLARK

I, Scott G. Weber, County Clerk and Clerk of the Superior Court of
Clark County, Washington, DO HEREBY CERTIFY that this
document, consisting of _____ page(s), is a true and correct
copy of the original now on file and of record in my office and, as
County Clerk, I am the legal custodian thereof.
Signed and sealed at Vancouver, Washington this date:

Sept. 7th 2023

Scott G. Weber, County Clerk

By _____ Deputy

**FILED**

**JUN 08 2020**

Scott G. Weber, Clerk, Clark Co

11:40

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

STATE OF WASHINGTON,
　　　　Plaintiff,

　　v.

**DEBORBA, JOAO RICARDODV**

　　Defendant.

SID:

If no SID, use DOB: ▉▉▉▉▉

No. 20-1-01294-06

**DOMESTIC VIOLENCE NO CONTACT ORDER**
(CLJ = NOCON)
(Superior Cts = ORPRT)

☑ PRE TRIAL

☐ POST CONVICTION

*CLERK'S ACTION REQUIRED*

The court finds that the defendant has been charged with, arrested for, or convicted of a domestic violence offense, and further finds that to prevent possible recurrence of violence, this Domestic Violence No-Contact Order shall be entered pursuant to Chapter 10.99 RCW. This order protects:

▉▉▉▉ AD ▉▉▉▉ ( ▉▉▉▉▉ )

☑ This is a pretrial order prohibiting possession of firearms or other dangerous weapons and the court makes the findings pursuant to RCW 9.41.800.

☐ This is a post-conviction order prohibiting possession of firearms pursuant to RCW 9.41.040.

**IT IS ORDERED THAT:**

Defendant is RESTRAINED from:

　　Causing or attempting to cause physical harm, bodily injury, assault, including sexual assault, and from molesting, harassing, threatening, or stalking the protected person.

　　Coming near and from having any contact whatsoever, in person or through other, by phone, mail or any means, directly or indirectly, except for mailing or service of process of court documents by a 3rd party or contact by defendant's lawyers with the protected person.

　　Entering or knowingly coming within or knowingly remain within ^1000 Feet (distance) of the protected person's ☑ residence ☑ school ☑ place of employment ☑ person ☐ other:

CLARK COUNTY PROSECUTING ATTORNEY
1013 FRANKLIN STREET ● PO BOX 5000
VANCOUVER, WASHINGTON 98666-5000
(564) 397-2261 (OFFICE)
(564) 397-2230 (FAX)



09301

1   ☑ (Pretrial order) The defendant shall immediately surrender all firearms and other dangerous weapons
    within the defendant's possession or control and any concealed pistol license to [name/law enforcement
2   agency] and the defendant is prohibited from obtaining a firearm, orther dangerous weapon or concealed
    pistol license.

3   **WARNINGS TO THE DEFENDANT:** Violation of the provisions of this order with actual notice of its terms is
    a criminal offense under Chapter 26.50 RCW and will subject a violation to arrest; any assault, drive-by
4   shooting, or reckless endangerment that is a violation of this order is a felony.

5   Willful violation of this order is punishable under RCW 26.50.110. Violation of this order is a gross
    misdemeanor unless one of the following conditions apply: Any assault that is a violation of this order and
6   that does not amount to assault in the first degree or second degree under RCW 9A.36.011 or 9A.36.021 is
    a class C felony. Any conduct in violation of this order that is reckless and creates a substantial risk of death
7   or serious physical injury to another person is a class C felony. Also, a violation of this order is a class C
    felony if the defendant has at least two previous convictions for violating a protection order issued under
8   Titles 10, 26, or 74.

9   If the violation of the protection order involved travel across a state a state line or the boundary of a tribal
    jurisdiction, or involves conduct within the special maritime and territorial jurisdiction of the United States,
10  which includes tribal lands, the defendant may be subject to criminal prosecution in federal court under 18
    U.S.C sections 2261, 2261A, or 2262

11  In addition to the state and federal prohibitions against possessing a firearm upon conviction of a felony or a
    qualifying misdemeanor, upon the court issuing a no-contact order after a hearing at which the defendant
12  had an opportunity to participate, the defendant may not possess a firearm or ammunition for as long as the
    no-contact order is in effect. 18 U.S.C section 922(g). A violation of this federal firearms law carries a
13  maximum possible penalty of 10 years in prison and a $250,000 fine. If the respondent is convicted of an
    offense of domestic violence, the respondent will be forbidden for life from possessing a firearm or
14  ammunition. 18 U.S.C. section 922(g)(9); RCW 9.41.040.

15  **YOU CAN BE ARRESTED EVEN IF THE PERSON OR PERSONS WHO OBTAINED THE ORDER INVITE
    OR ALLOW YOU TO VIOLATE THE ORDER'S PROHIBITIONS.** You have the sole responsibility to avoid
16  or refrain from violation the order's provisions. Only the court can change the order upon written application.

17  Pursuant to 18 U.S.C. section 2265, a court in any of the 50 states, the District of Columbia, Puerto Rico,
    any united states territory, and any tribal land within the United States shall accord full faith and credit to the
18  order.

19  It is further ordered that the Clerk of the Court shall forward a copy of this order on or before the next
20  judicial day to: ☑ Clark County Sheriff's Office ☑ Vancouver_____ Police Department where the
    above-named protected person lives which shall enter it in a computer based criminal intelligence
21  system available in this state used by law enforcement to list outstanding warrants.

22  THIS NO-CONTACT ORDER EXPIRES ON: 6/3/2025
23
        Done in Open Court in the presence of the defendant this date: 6/3/2020
24
25                                              Gregory M.    Digitally signed by Gregory M.
                                                Gonzales      Gonzales
                                                              Date: 2020.06.03 09:45:56 -07'00'
26  Julie      Digitally signed by               JUDGE Print Name
    Carmena    Julie Carmena
               Date: 2020.06.03
27             09:42:29 -07'00'
    **Deputy Prosecuting Attorney**    **Attorney for Defendant**        **Defendant**

DOMESTIC VIOLENCE NO-CONTACT ORDER                    CLARK COUNTY PROSECUTING ATTORNEY
(NOCON)(ORPRT) – Page 2 of 2                                1013 FRANKLIN STREET • PO BOX 5000
WPF CR 84.0420 (5/2015) – RCW 9.94A.110, .120; 10.99.040,      VANCOUVER, WASHINGTON 98666-5000
.050                                                               (564) 397-2261 (OFFICE)
                                                                   (564) 397-2230 (FAX)

09302

Exhibit 9

STATE OF WASHINGTON } ss.
COUNTY OF CLARK }
I, Scott G. Weber, County Clerk and Clerk of the Superior Court of
Clark County, Washington, DO HEREBY CERTIFY that this
document, consisting of _____ page(s), is a true and correct
copy of the original now on file and of record in my office and, as
County Clerk, I am the legal custodian thereof.
Signed and sealed at Vancouver, Washington this date:
_____
Scott G. Weber, County Clerk
By _____ Deputy

**FILED**

**OCT 1 4 2020**

Scott G. Weber, Clerk, Clark Co

5pm

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF CLARK

| STATE OF WASHINGTON, | |
|---|---|
| Plaintiff, | No. 2020-1-01294-06 |
| v. | |
| | **DOMESTIC VIOLENCE NO CONTACT ORDER** |
| | (CLJ = NOCON) |
| **JOAO RICARDO DEBORBA** | (Superior Cts = ORPRT) |
| Defendant. | ☐ PRE TRIAL |
| | ☑ POST CONVICTION |
| SID: ▇▇▇▇▇▇ | |
| If no SID, use DOB: ▇▇▇▇ | *CLERK'S ACTION REQUIRED* |

The court finds that the defendant has been charged with, arrested for, or convicted of a domestic violence offense, and further finds that to prevent possible recurrence of violence, this Domestic Violence No-Contact Order shall be entered pursuant to Chapter 10.99 RCW. This order protects:

| AD | (DOB ▇▇▇▇▇ ) |
|---|---|

☐ This is a pretrial order prohibiting possession of firearms or other dangerous weapons and the court makes the findings pursuant to RCW 9.41.800.

☑ This is a post-conviction order prohibiting possession of firearms pursuant to RCW 9.41.040.

**IT IS ORDERED THAT:**

Defendant is RESTRAINED from:

Causing or attempting to cause physical harm, bodily injury, assault, including sexual assault, and from molesting, harassing, threatening, or stalking the protected person.

Coming near and from having any contact whatsoever, in person or through other, by phone, mail or any means, directly or indirectly, except for mailing or service of process of court documents by a 3rd party or contact by defendant's lawyers with the protected person.

Entering or knowingly coming within or knowingly remain within 1000 FT (distance) of the protected person's ☑ residence ☑ school ☑ place of employment ☑ person ☐ other: _____

DOMESTIC VIOLENCE NO-CONTACT ORDER
(NOCON)(ORPRT) — Page 1 of 2
WPF CR 84.0420 (5/2015) — RCW 9.94A.110, .120; 10.99.040,
.050

CLARK COUNTY PROSECUTING ATTORNEY
1013 FRANKLIN STREET • PO BOX 5000
VANCOUVER, WASHINGTON 98666-5000
(564) 397-2261 (OFFICE)
(564) 397-2230 (FAX)

09303

[Pretrial order) The defendant shall immediately surrender all firearms and other dangerous weapons within the defendant's possession or control and any concealed pistol license to [name/law enforcement agency] and the defendant is prohibited from obtaining a firearm, other dangerous weapon or concealed pistol license.

**WARNINGS TO THE DEFENDANT:** Violation of the provisions of this order with actual notice of its terms is a criminal offense under Chapter 26.50 RCW and will subject a violation to arrest; any assault, drive-by shooting, or reckless endangerment that is a violation of this order is a felony.

Willful violation of this order is punishable under RCW 26.50.110. Violation of this order is a gross misdemeanor unless one of the following conditions apply; Any assault that is a violation of this order and that does not amount to assault in the first degree or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony. Any conduct in violation of this order that is reckless and creates a substantial risk of death or serious physical injury to another person is a class C felony. Also, a violation of this order is a class C felony if the defendant has at least two previous convictions for violating a protection order issued under Titles 10, 26, or 74.

If the violation of the protection order involved travel across a state a state line or the boundary of a tribal jurisdiction, or involves conduct within the special maritime and territorial jurisdiction of the United States, which includes tribal lands, the defendant may be subject to criminal prosecution in federal court under 18 U.S.C sections 2261, 2261A, or 2262

In addition to the state and federal prohibitions against possessing a firearm upon conviction of a felony or a qualifying misdemeanor, upon the court issuing a no-contact order after a hearing at which the defendant had an opportunity to participate, the defendant may not possess a firearm or ammunition for as long as the no-contact order is in effect. 18 U.S.C section 922(g). A violation of this federal firearms-law carries a maximum possible penalty of 10 years in prison and a $250,000 fine. If the respondent is convicted of an offense of domestic violence, the respondent will be forbidden for life from possessing a firearm or ammunition. 18 U.S.C. section 922(g)(9); RCW 9.41.040.

**YOU CAN BE ARRESTED EVEN IF THE PERSON OR PERSONS WHO OBTAINED THE ORDER INVITE OR ALLOW YOU TO VIOLATE THE ORDER'S PROHIBITIONS.** You have the sole responsibility to avoid or refrain from violation the order's provisions. Only the court can change the order upon written application.

Pursuant to 18 U.S.C. section 2265, a court in any of the 50 states, the District of Columbia, Puerto Rico, any united states territory, and any tribal land within the United States shall accord full faith and credit to the order.

It is further ordered that the Clerk of the Court shall forward a copy of this order on or before the next judicial day to: ☐ Clark County Sheriff's Office ☑ Vancouver _____ Police Department where the above-named protected person lives which shall enter it in a computer based criminal intelligence system available in this state used by law enforcement to list outstanding warrants.

THIS NO-CONTACT ORDER EXPIRES ON: 10/14/2022

Done in Open Court in the presence of the defendant this date: 10/14/2020

JUDGE Print Name: Vellacic

Lauren R. Boyd
WSBA #50018
Digitally signed by Lauren R. Boyd, WSBA #50018
Date: 2020.13.14
07.31:22-07'00'

Deputy Prosecuting Attorney          Attorney for Defendant          Defendant
                                     WSBA# 51171

CLARK COUNTY PROSECUTING ATTORNEY
1013 FRANKLIN STREET • PO BOX 5000
VANCOUVER, WASHINGTON 98666-5000
(564) 397-2261 (OFFICE)
(584) 397-2230 (FAX)

Exhibit 10

STATE OF WASHINGTON } ss.
COUNTY OF CLARK
I, Scott G. Weber, County Clerk and Clerk of the Superior Court of
Clark County, Washington, DO HEREBY CERTIFY that this
document, consisting of _____ page(s), is a true and correct
copy of the original now on file and of record in my office and, as
County Clerk, I am the legal custodian thereof.
Signed and sealed at Vancouver Washington this date:

Sep 7 2023

Scott G Weber, County Clerk

By _____ Deputy

**FILED**

**AUG 23 2021**

Scott G. Weber, Clerk, Clark Co.

11:10

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF CLARK

STATE OF WASHINGTON,
    Plaintiff,
    v.

**DEBORBA, JOAO RICARDO**

    Defendant.

SID: ▉

If no SID, use DOB: ▉

No. 21-1-01539-06

**DOMESTIC VIOLENCE NO CONTACT ORDER**
(CLJ = NOCON)
(Superior Cts = ORPRT)

[✓] PRE TRIAL

[ ] POST CONVICTION

*CLERK'S ACTION REQUIRED*

The court finds that the defendant has been charged with, arrested for, or convicted of a domestic violence offense, and further finds that to prevent possible recurrence of violence, this Domestic Violence No-Contact Order shall be entered pursuant to Chapter 10.99 RCW. This order protects:

▉ AD ▉ (DOB ▉)

[ ] This is a pretrial order prohibiting possession of firearms or other dangerous weapons and the court makes the findings pursuant to RCW 9.41.800.

[ ] This is a post-conviction order prohibiting possession of firearms pursuant to RCW 9.41.040.

**IT IS ORDERED THAT:**

Defendant is RESTRAINED from:

Causing or attempting to cause physical harm, bodily injury, assault, including sexual assault, and from molesting, harassing, threatening, or stalking the protected person.

Coming near and from having any contact whatsoever, in person or through other, by phone, mail or any means, directly or indirectly, except for mailing or service of process of court documents by a 3rd party or contact by defendant's lawyers with the protected person.

Entering or knowingly coming within or knowingly remain within 1000 ft (distance) of the protected person's [✓] residence [✓] school [✓] place of employment [✓] person [ ] other: _____

DOMESTIC VIOLENCE NO-CONTACT ORDER
(NOCON)(ORPRT) – Page 1 of 2
WPF CR 84.0420 (5/2015) – RCW 9.94A.110, .120; 10.99.040,
.050

CLARK COUNTY PROSECUTING ATTORNEY
1013 FRANKLIN STREET ▪ PO BOX 5000
VANCOUVER, WASHINGTON 98666-5000
(564) 397-2261 (OFFICE)
(564) 397-2230 (FAX)

7

EKN

09305

1  [(Pretrial order) The defendant shall immediately surrender all firearms and other dangerous weapons
   within the defendant's possession or control and any concealed pistol license to [name/law enforcement
2  agency] and the defendant is prohibited from obtaining a firearm, orther dangerous weapon or concealed
   pistol license.

3  WARNINGS TO THE DEFENDANT: Violation of the provisions of this order with actual notice of its terms is
   a criminal offense under Chapter 26.50 RCW and will subject a violation to arrest; any assault, drive-by
4  shooting, or reckless endangerment that is a violation of this order is a felony.

5  Willful violation of this order is punishable under RCW 26.50.110. Violation of this order is a gross
   misdemeanor unless one of the following conditions apply: Any assault that is a violation of this order and
6  that does not amount to assault in the first degree or second degree under RCW.9A.36.011 or 9A.36.021 is
   a class C felony. Any conduct in violation of this order that is reckless and creates a substantial risk of death
7  or serious physical injury to another person is a class C felony. Also, a violation of this order is a class C
   felony if the defendant has at least two previous convictions for violating a protection order issued under
8  Titles 10, 26, or 74.

9  If the violation of the protection order involved travel across a state a state line or the boundary of a tribal
   jurisdiction, or involves conduct within the special maritime and territorial jurisdiction of the United States,
10 which includes tribal lands, the defendant may·be subject to criminal prosecution in federal court under 18
   U.S.C sections 2261, 2261A, or 2262

11 In addition to the state and federal prohibitions against possessing a firearm upon conviction of a felony or a
   qualifying misdemeanor, upon the court issuing a no-contact order after a hearing at which the defendant
12 had an opportunity to participate, the defendant may not possess a firearm or ammunition for as long as the
   no-contact order is in effect. 18 U.S.C section 922(g). A violation of this federal firearms law carries a
13 maximum possible penalty of 10 years in prison and a $250,000 fine. If the respondent is convicted of an
   offense of domestic violence, the respondent will be forbidden for life from possessing a firearm or
14 ammunition. 18 U.S.C. section 922(g)(9); RCW 9.41.040.

15 YOU CAN BE ARRESTED EVEN IF THE PERSON OR PERSONS WHO OBTAINED THE ORDER INVITE
   OR ALLOW YOU TO VIOLATE THE ORDER'S PROHIBITIONS. You have the sole responsibility to avoid
16 or refrain from violation the order's provisions. Only the court can change the order upon written application.

17 Pursuant to 18 U.S.C. section 2265, a court in any of the 50 states, the District of Columbia, Puerto Rico,
   any united states territory, and any tribal land within the United States shall accord full faith and credit to the
18 order.

19 It is further ordered that the Clerk of the Court shall forward a copy of this order on or before the next
   judicial day to:☑ Clark County Sheriff's Office☐_____ Police Department where the
20 above-named protected person lives which shall enter it in a computer based criminal intelligence
21 system available in this state used by law enforcement to list outstanding warrants.

22 THIS NO-CONTACT ORDER EXPIRES ON: August 23, 2026

23 Done in Open Court in the presence of the defendant this date: August 23, 2021

24

25

                                                          JUDGE Print Name
26 Gabriel A. Foster [Digitally signed by Gabriel A. Foster]
   WSBA # 52627 [Date 2021.08.23 09:13:08 -07'00']
27 _____    _____    _____
   Deputy Prosecuting Attorney   Attorney for Defendant   Defendant


DOMESTIC VIOLENCE NO-CONTACT ORDER              CLARK COUNTY PROSECUTING ATTORNEY
(NOCON)(ORPRT) – Page 2 of 2                         1013 FRANKLIN STREET • PO BOX 5000
WPF CR 84.0420 (5/2015) – RCW 9.94A.110, .120; 10.99.040,   VANCOUVER, WASHINGTON 98666-5000
.050                                                    (564) 397-2261 (OFFICE)
                                                        (564) 397-2230 (FAX)

Exhibit 11

STATE OF WASHINGTON } ss.
COUNTY OF CLARK
I, Scott G. Weber, County Clerk and Clerk of the Superior Court of
Clark County, Washington, DO HEREBY CERTIFY that this
document, consisting of _____ page(s), is a true and correct
copy of the original now on file and of record in my office and, as
County Clerk, I am the legal custodian thereof.
Signed and sealed at Vancouver, Washington this date:

Scott G. Weber, County Clerk
By _____ Deputy

**F I L E D**

JAN 31 2022

Scott G. Weber, Clerk, Clark Co.

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF CLARK

STATE OF WASHINGTON,
   Plaintiff,

v.

**JOAO RICARDO DEBORBA**

   Defendant.

SID: ███████████

If no SID, use DOB: ███████████

No. 21-1-01539-06

**DOMESTIC VIOLENCE NO CONTACT ORDER**
(CLJ = NOCON)
(Superior Cts = ORPRT)

☐ PRE TRIAL

☑ POST CONVICTION

*CLERK'S ACTION REQUIRED*

The court finds that the defendant has been charged with, arrested for, or convicted of a domestic violence offense, and further finds that to prevent possible recurrence of violence, this Domestic Violence No-Contact Order shall be entered pursuant to Chapter 10.99 RCW. This order protects:

███████ AD ███████ (dob ███████)

☐ This is a pretrial order prohibiting possession of firearms or other dangerous weapons and the court makes the findings pursuant to RCW 9.41.800.

☑ This is a post-conviction order prohibiting possession of firearms pursuant to RCW 9.41.040.

**IT IS ORDERED THAT:**

Defendant is RESTRAINED from:

Causing or attempting to cause physical harm, bodily injury, assault, including sexual assault, and from molesting, harassing, threatening, or stalking the protected person.

Coming near and from having any contact whatsoever, in person or through other, by phone, mail or any means, directly or indirectly, except for mailing or service of process of court documents by a 3rd party or contact by defendant's lawyers with the protected person.

Entering or knowingly coming within or knowingly remain within 1000 ft (distance) of the protected person's ☑ residence ☑ school ☑ place of employment ☑ person ☐ other: _____

DOMESTIC VIOLENCE NO-CONTACT ORDER
(NOCON)(ORPRT) – Page 1 of 2
WPF CR 84.0420 (5/2015) – RCW 9.94A.110, .120; 10.99.040, .050

CLARK COUNTY PROSECUTING ATTORNEY
1013 FRANKLIN STREET ∗ PO BOX 5000
VANCOUVER, WASHINGTON 98666-5000
(564) 397-2281 (OFFICE)
(564) 397-2230 (FAX)

(Pretrial order) The defendant shall immediately surrender all firearms and other dangerous weapons within the defendant's possession or control and any concealed pistol license to [name/law enforcement agency] and the defendant is prohibited from obtaining a firearm, orther dangerous weapon or concealed pistol license.

**WARNINGS TO THE DEFENDANT:** Violation of the provisions of this order with actual notice of its terms is a criminal offense under Chapter 26.50 RCW and will subject a violation to arrest; any assault, drive-by shooting, or reckless endangerment that is a violation of this order is a felony.

Willful violation of this order is punishable under RCW 26.50.110. Violation of this order is a gross misdemeanor unless one of the following conditions apply: Any assault that is a violation of this order and that does not amount to assault in the first degree or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony. Any conduct in violation of this order that is reckless and creates a substantial risk of death or serious physical injury to another person is a class C felony. Also, a violation of this order is a class C felony if the defendant has at least two previous convictions for violating a protection order issued under Titles 10, 26, or 74.

If the violation of the protection order involved travel across a state a state line or the boundary of a tribal jurisdiction, or involves conduct within the special maritime and territorial jurisdiction of the United States, which includes tribal lands, the defendant may be subject to criminal prosecution in federal court under 18 U.S.C sections 2261, 2261A, or 2262

In addition to the state and federal prohibitions against possessing a firearm upon conviction of a felony or a qualifying misdemeanor, upon the court issuing a no-contact order after a hearing at which the defendant had an opportunity to participate, the defendant may not possess a firearm or ammunition for as long as the no-contact order is in effect. 18 U.S.C section 922(g). A violation of this federal firearms law carries a maximum possible penalty of 10 years in prison and a $250,000 fine. If the respondent is convicted of an offense of domestic violence, the respondent will be forbidden for life from possessing a firearm or ammunition. 18 U.S.C. section 922(g)(9); RCW 9.41.040.

**YOU CAN BE ARRESTED EVEN IF THE PERSON OR PERSONS WHO OBTAINED THE ORDER INVITE OR ALLOW YOU TO VIOLATE THE ORDER'S PROHIBITIONS.** You have the sole responsibility to avoid or refrain from violation the order's provisions. Only the court can change the order upon written application.

Pursuant to 18 U.S.C. section 2265, a court in any of the 50 states, the District of Columbia, Puerto Rico, any united states territory, and any tribal land within the United States shall accord full faith and credit to the order.

It is further ordered that the Clerk of the Court shall forward a copy of this order on or before the next judicial day to:☑ Clark County Sheriff's Office☐ _____ Police Department where the above-named protected person lives which shall enter it in a computer based criminal intelligence system available in this state used by law enforcement to list outstanding warrants.

THIS NO-CONTACT ORDER EXPIRES ON: 01/31/2027

Done in Open Court in the presence of the defendant this date: 01/31/2022

Cord McCabe
54037
Digitally signed by Cord McCabe 54037
Date: 2022.01.28
07:48:44 -0800'

**Deputy Prosecuting Attorney**          **Attorney for Defendant**          JUDGE Print Name _____          Defendant

DOMESTIC VIOLENCE NO-CONTACT ORDER
(NOCON)(ORPRT) – Page 2 of 2
WPF CR 84.0420 (5/2015) – RCW 9.94A.110, .120; 10.99.040,
.050

CLARK COUNTY PROSECUTING ATTORNEY
1013 FRANKLIN STREET • PO BOX 5000
VANCOUVER, WASHINGTON 98666-5000
(564) 397-2261 (OFFICE)
(564) 397-2230 (FAX)

Exhibit 12









08950





08960









08975



08976







08983





00898





Exhibit 13



08975

Exhibit 14

CURRICULUM VITAE

**Jason T. Armstrong**
Bureau of Alcohol, Tobacco, Firearms and Explosives
244 Needy Road
Martinsburg, West Virginia, 25405

**Professional Experience:**

**July 2020 – Present**
Firearms Enforcement Officer (FEO)
Firearms and Ammunition Technology Division (FATD)
Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)
Martinsburg, West Virginia

- Provide technical information regarding firearms identification, operation, and design for the purpose of assisting the Bureau, the law enforcement community, the firearms industry, and the public in general in the implementation Federal laws.
- Conduct examinations and testing of firearms and related materials submitted as evidence by Bureau agents, as well as other Federal, State, and local law enforcement agencies.
- Prepare technical reports, official correspondence, and training materials relating to the identification and origin of firearms and their classification under Federal law.
- Conduct examinations and classifications of submitted prototype firearms or related devices.
- Evaluate all types of firearms for import classification.
- Determine origin and classification of ammunition.
- Prepare official Bureau responses to written inquiries from the firearms industry and the public.
- Assist in maintaining the Firearms and Ammunition Technology Division reference library, which includes over 2,000 books, catalogs and official correspondence relating to the firearms field.
- Assist in maintaining the ATF Firearms Reference Collection, which includes approximately 12,000 firearms of all types.

I have attended the following firearms training courses:

- U.S. Army Small Arms Repairman School, Aberdeen, Maryland
- USMC Rifle Team Equipment (RTE) precision armorer course, Quantico, Virginia
- Benelli shotgun armorers' course, Fairfax, Virginia
- Bob Marvel 1911 course, Troy, North Carolina
- SIG-Sauer P320 course by Bruce Gray, Quantico, Virginia
- SIG-Sauer P320/M17-M18 armorer course, Quantico, Virginia
- SIG-Sauer M17-M18 maintainer training (US Army) Dearborn, Michigan
- H&K MP5 armorer course, Ashburn Virginia

- 2 -

- Glock pistol armorer course, Chambersburg, Pennsylvania
- SIG-SAUER Classic line armorer course, Sykesville, Maryland
- CZ-P10 armorer course, Team One, Martinsburg, West Virginia
- Benelli M1, 2 & 4 series armorer course, Team One, Martinsburg, West Virginia
- CZ Scorpion armorer course, Team One, Martinsburg, West Virginia
- Springfield XD/XDM armorer course, Team One, Martinsburg, West Virginia
- Foreign Weapons Course, Phoenix Defense, Las Vegas, Nevada
- AK-type expert armorer training, Fairmont, West Virginia

I have received training in firearm silencer manufacture, design and operation from ATF and the following:

- Principles of Acoustics and Sound Measurement training given by Bruel and Kjaer
- Silencer Principal Training provided by Dr. Philip H. Dater, founder of Gemtech and Antares Technologies
- Silencer 101, Troy, North Carolina

I have received manufacturing and historical instruction at the following ammunition factories:

- PWS ammunition loading facility, Quantico, Virginia
- Lake City ammunition plant, Independence, Missouri

I have toured the following museums that display firearms as part of their collection, public and/or archival collection were viewed:

- Aberdeen Ordnance Museum, Aberdeen, Maryland
- NRA National Firearms Museum, Fairfax, Virginia
- Marine Corps Museum, Quantico, Virginia
- Buffalo Bill Cody Museum, Cody, Wyoming
- The National Infantry Museum, Fort Benning, Georgia
- Springfield Armory Museum, Springfield, Massachusetts

I have received manufacturing and historical instruction at the following firearms factories to include, but not limited to:

- Precision Weapons Section, Quantico, Virginia
- U.S. Army Marksmanship Unit, Fort Benning, Georgia
- U.S. Navy Surface Warfare Center (NSWC), Crane, Indiana
- GA Precision, Kansas City, Missouri
- Badger Ordnance, Kansas City, Missouri
- Timmons Precision, Abbeville, South Carolina
- Smith and Wesson, Deep River, Connecticut
- Standard Manufacturing, New Brittan, Connecticut
- Childers Guns, Fairmont, West Virginia

- 3 -

I received training from ATF in the following areas to include, but not limited to:

- Gun Control Act of 1968
- National Firearms Act of 1934
- Importing Factoring Criteria
- Evidence Handling
- 18 U.S.C. 922(r)
- Ammunition
- Making a Firearm. (Glock-type)

- Making a Silencer
- Destructive Devices
- Arms Export Control Act of 1976 (AECA)
- Antique Firearms
- Interstate NEXUS
- Machinegun Conversions

I received training from ATF in the following historic firearms designs to include, but not limited to:

- MAC-type Machinegun
- Gatling Gun
- Maxim Machinegun
- Browning Model 1919 Machinegun
- MG34/42 Machinegun
- Type 99 Japanese Machinegun
- FN FAL Machinegun
- SKS

- STEN-type Machinegun
- Lewis Gun Machinegun
- Thompson Machinegun
- AK-type Machinegun
- M2 Carbine Machinegun
- UZI Machinegun
- M-16 Machinegun

I have attended firearm trade shows to view firearms to include the following:

- SHOT Show: 2002, 2007

I have received training and certification on the use and operation of precision measuring tools to include:

- Tape and Rule measurement
- Dial bore gage measurement
- Gage measurement

- Micrometer measurement
- Caliper measurement
- Angle measurement

**April 2016 – July 2020**
Equipment Specialist Ordnance
Department of the Navy
Weapons Training Battalion (WTBN)
United States Marine Corps
Precision Weapons Section (PWS)
Quantico, VA

- Provided instruction to PWS student personnel on the use and safe operation of machining equipment, precision measuring instrumentation and had tools.

- 4 -

- Instructed personnel on the processes, theories and techniques of building and maintaining precision and nonstandard weapon systems.
- Instructed personnel in complex manufacturing and production of non-routine, one-of-a-kind weapons parts from a variety of materials including various metal alloys.
- Assisted in research, development, and production in a variety of commercial and military competitive and combat small arms systems in use or considered for use by the Marine Corps in support of PWS, WTBN, Marine Corps Systems Command, Marine Corps Logistics Command, and other government agencies.

**February 2013 – April 2016**
ACCURACY-X, INC.
Gunsmith / Machinist
Roanoke, VA

- Developed and manufactured custom built competition pistols, and rifles.
- Manufactured custom pistol compensators, magazine well extensions, scope mounts and blast deflectors.
- Proof and accuracy test barrels and competition pistols and rifles.
- Machine items as necessary on manual and CNC machines.
- Weld items as necessary.
- Maintain manual and CNC machines.

**Military Experience:**

**December 1990 – March 2014**
United States Marine Corps
MOS 2112 Precision Weapons Specialist / 2111 Armorer

- Certified Armorer trained at Aberdeen Proving Grounds, Maryland, on the assembly/ disassembly, care, maintenance, operation, and repairing weapon systems of all modern U.S. military firearms including, but not limited to:
  - M9 Beretta Pistol
  - M16/M4 Rifle
  - M203 Grenade Launcher
  - M249 Squad Automatic Weapon
  - M60 Machinegun
  - M240 B/C/G Machinegun
  - MK19 Automatic Grenade Launcher
  - M2 .50 caliber Machinegun
  - M85 .50 caliber Machinegun
  - Winchester 1200
  - Remington 870
  - Mossberg 500 Shotguns
  - M242 25mm Bushmaster Chain Gun
  - M224 60mm Light Weight Mortar
  - M252 81mm Medium Weight Mortar
  - Mk 153 84mm SMAW Rocket Launcher
  - M47 Dragon Anti-Tank missile system

- Trained in the eight basic steps in firearm "Cycle of operations."
- Knowledgeable in the use of tools to gauge headspace and timing on various weapon systems to ensure safe and reliable functioning.
- Rifle Team Equipment trained in precision weapons within the Marine Corps inventory.
- Received in-depth training in the operation of gunsmithing tools and machines such as lathes, milling machines, surface grinders, welding, and refinishing operations.
- M14 National Match (NM), M14 Designated Marksman Rifle, M14 Enhanced Marksman Rifle, M1911 NM, M1911 MEUSOC, H&K MP5, USMC M40 series sniper rifles, NM M16, and M16 Squad Advanced Marksman Rifle.
- Conducted inspections of military armories containing various firearms to include revolvers, pistols, shotguns, and semi-automatic, automatic, and destructive devices.
- Served as match armorer for the USMC Pistol Team in national, state, and local competitions in 2000-2003, 2007, and 2008.
- HAAS CNC Vertical and Horizontal Mill course.
- Precision Weapons Section Quantico Test Facility Staff Non-Commissioned Officer in Charge. Conducted proof and accuracy testing of all weapons produced and maintained by the PWS Quantico armory.
- Non-Commissioned Officer in charge of multiple armories.

I have previously testified in the following courts as an expert witness regarding the identification, operation, or design of firearms:

U.S. v. MICHAEL RECH (21-CR-6080-CJS-MWP)- Rochester, NY- December 2021

U.S. v. COREY JOHN (20-CR-341) – Brooklyn, NY, March 2022

U.S. v. CALEB SHEFFIELD (1:22CR29-1) Greensboro, NC – August 2022

U.S. v. MARK BOLLING (2:21-cr-00087) Charleston, WV – February 2023

Exhibit 15

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Firearms Technology Criminal Branch**
**Report of Technical Examination**



**244 Needy Road #1600**
**Martinsburg, WV 25405**

**Phone: 304-616-4300**
**Fax: 304-616-4301**

| To: | | |
|---|---|---|
| Special Agent Prince Planthara | **UI#:** | 787035-22-0059 |
| Bureau of Alcohol, Tobacco, Firearms and Explosives | **RE:** | DEBORBA, Joao Ricardo |
| 1201 NE Lloyd Boulevard | | |
| Suite #710 | **FTCB#:** | 2022-763-JTA |
| Portland, Oregon 97232 | | 321056 |

| **Date Exhibit Received:**  06/21/2022 | **Type of Examination Requested:** |
|---|---|
| **Delivered By:**  FedEx 7771 6440 4310 | Examination, Test, Classification |

**Exhibit:**

1. Cylindrical device; no manufacturer markings, no serial number (suspected silencer).

**Pertinent Authority:**

Title 28 of the United States Code (U.S.C.) provides the Bureau of Alcohol, Tobacco Firearms and Explosives (ATF) the authority to investigate criminal and regulatory violations of Federal firearms law at the direction of the Attorney General. Under the corresponding Federal regulation at 28 CFR § 0.130, the Attorney General provides ATF with the authority to investigate, administer, and enforce the laws related to firearms, in relevant part, under 18 U.S.C. Chapter 44 (Gun Control Act) and 26 U.S.C. Chapter 53 (National Firearms Act). Pursuant to the aforementioned statutory and regulatory authority, the ATF Firearms and Ammunition Technology Division (FATD) provides expert technical support on firearms and ammunition to federal, state and local law enforcement agencies regarding the Gun Control Act (GCA) and the National Firearms Act (NFA).

The Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(3), defines the term "**firearm**" as:

"...*(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) <u>any firearm muffler or silencer</u> or (D) any destructive device. Such term does not include an antique firearm.*"

The GCA, 18 U.S.C. § 921(a)(25) defines the terms "**firearm silencer**" and "**firearm muffler**" to mean:

"...<u>*any device for silencing, muffling, or diminishing the report of a portable firearm*</u>, *including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.*"

Special Agent Prince Planthara                                              787035-22-0059
                                                                           2022-763-JTA
                                                                           Page 2

The National Firearms Act (NFA), 26 U.S.C. § 5845(a), defines "**firearm**" as:

*"…(1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in 18 U.S.C. § 921); and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the … [Attorney General] … finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon."*

Also, the NFA, 26 U.S.C. § 5842, "**identification of firearms**," states:

*"…(a) Identification of firearms other than destructive devices. - Each manufacturer and importer and anyone making a firearm shall identify each firearm, other than a destructive device, manufactured, imported, or made by a serial number which may not be readily removed, obliterated, or altered, the name of the manufacturer, importer, or maker, and such other identification as the Secretary may by regulations prescribe. (b) Firearms without serial number. - Any person who possesses a firearm, other than a destructive device, which does not bear the serial number and other information required by subsection (a) of this section shall identify the firearm with a serial number assigned by the Secretary and any other information the…[latter]… may by regulations prescribe."*

## Background:

ATF has a long history of looking at the design features of a particular item when determining whether an item is a "firearm silencer" under Federal law, including whether it has design features of a part designed to be used in a "firearm silencer."

The law encompasses any combination of parts designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or muffler. Moreover, the statute does not limit the definition of silencer to "a device that silences, muffles, or diminishes." United States v. Syverson, 90 F.3d 227,232(7th Cir. 1996)

Similarly, in *United States v. Carter* 465 F.3d 658(6th Cir.2006), the Sixth Circuit Court of Appeals found that the statute did not require that a silencer actually diminish the report of a firearm, noting that the "language of the statute focuses on the intended application of a silencer, not its actual demonstrated operation." Congress did not use such wording as "capable of silencing" or "that silences." The word choice of Congress indicates a concern for the purpose of the mechanism and the parts thereof, not the function.

When ATF examines a possible silencer part, it compares that item to known silencer designs to provide a context for those features to determine whether the subject item should be classified as a silencer under Federal law. The presence of the design characteristics and reported purpose of the item are important factors in determining whether it should be classified as "any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler," or "any part intended only for use in such assembly or fabrication."

Special Agent Prince Planthara

787035-22-0059
2022-763-JTA
Page 3

A part need not be 100% complete in order to be considered a "silencer part" as regulated under the GCA and NFA. It need only be manufactured to the point where a critical line has been crossed or critical feature(s) formed to make it recognizable as a silencer part. Once completed to the point of recognition, a part must be regulated as the completed silencer part. To find otherwise would lead to a result that permits manufacturers, importers, or dealers, to avoid "completing" a device or silencer part in order to circumvent government regulation specifically intended by Congress. Therefore, a component, part, assembly, or end item, need only be completed to the point at which it can be recognized as a regulated item based on the objective characteristics of that item which identifies the device as a regulated article.

For your information, any part used (or if intent for use is demonstrated) in the assembly of a device for silencing, muffling or diminishing the report of a portable firearm, would be classified as a "firearm silencer" as defined in 18 U.S.C. § 921(a)(24) and a "firearm" as defined in 18 U.S.C. 921 § (a)(3)(C) and 26 U.S.C. § 5845(a)(7) respectively. Therefore, any silencer part not included in an assembled silencer is required to be marked with the manufacturer's information and a serial number as required by 26 U.S.C. § 5842.

As background, there are multiple audible elements attributable to a firearm in operation including: the report (muzzle blast), the sound of the bullet in flight, and the sound of the firearm action. Firearm silencers are designed to reduce only the report of a portable firearm.

The report of a firearm is mostly the consequence of superheated, high-pressure propellant gases being rapidly released into the atmosphere.

Simplistic silencers typically consist of end-caps attached to each end of a hollow tube, which forms an "**expansion chamber**" (also referenced as a "blast chamber") within. The end-caps will each have a hole in the center to allow a bullet, followed by propellant gases, to pass through. The resulting device, when attached to a firearm barrel's muzzle, allows the hot propellant gases exiting the barrel to expand and cool prior to being slowly released into the open atmosphere which generally causes a reduction in the sound pressure level of a gunshot.

The first portion of an excerpt obtained from United States Patent 7,308,967 for a firearm silencer (sound suppressor) clearly describes the devices included in this report:

*"A sound suppressor for a firearm for reducing sound and flash levels upon the discharge of a firearm comprises a cylindrical housing, a proximal end cap with means for attachment to a firearm and to a cylindrical housing, a distal end cap with means for attachment to the housing..."*

The patent goes on to describe the interior component parts of the specific firearm silencer. Threaded outer tubes designed to accept proximal end caps, threaded to facilitate attachment to a firearm barrel, and distal end caps which form an expansion chamber (with or without internal baffles or other silencer component parts), are design features common to many firearm silencers.

The concept of an "expansion chamber" or "blast chamber" is frequently encountered in firearm silencers. Generally, an expansion chamber/blast chamber is located to be proximal to the mounting point of the firearm silencer (sound suppressor) to the barrel. In silencers incorporating a monolithic baffle core, the largest expansion chamber is typically placed at the base of the core. In designs incorporating individual baffles, often

Special Agent Prince Planthara

787035-22-0059
2022-763-JTA
Page 4

a longer silencer baffle spacer is installed near the proximal barrel mounting portion of the silencer to form a larger chamber in that portion of the device. In firearm silencers/sound suppressors lacking interior baffles, the entire interior of the silencer can become one large expansion chamber/blast chamber. United State Patent No.: 8,292,025 B1 (see attachment), describes a "blast chamber" within the "Summary of the Invention" portion of the Patent documentation to include:

*"The enlarged blast chamber traps and cools gases that are discharged by a fired bullet".*

Additional components may serve to aid or enhance silencing, muffling, or diminishing the report of a portable firearm, by further reducing the speed, pressure, or rate of release of the propellant gases.

Typically, these additional components may include:

- Baffles or washers which create separate expansion chambers
- Ported inner sleeve or tube (bleed holes)
- Sound dampening material such as foam, steel wool, and other substances

**Baffles** or a "**monolithic baffle core**" in firearms silencers are designed to slow, create turbulence in, or redirect the flow of hot propellant gases, depending upon the baffle's particular design features. Further, baffles can be used to segregate a large expansion chamber to create multiple, smaller expansion chambers of various sizes by stacking several baffles together or by the use of spacers between baffles.

The Exhibit described in this report is consistent with many items misrepresented as "automotive filters" or "solvent traps" in a thinly veiled attempt at presenting a legitimate and legal use for these devices other than as firearm silencers or a combination of parts intended for use in assembling a firearm silencer. In actuality, these devices clearly meet the GCA definition of a firearm silencer and are intended to provide a means to skirt the laws and regulations governing the manufacture, sale, and transfer of firearms silencers.

Genuine inline fuel filters (e.g., a NAPA 4003 inline fuel filter) are designed to filter sediment, debris, or other contaminates from fuel pumped through the device. These devices are designed to be installed "inline" between the pump and nozzle end of the fuel hose. As such, fuel is pumped in one end, through the filter element contained inside the device, and out the opposite end.

Many illegitimate devices marketed as inline fuel filters have minimal filtering capabilities (or are devoid of a filter element and have no filtering capability at all) thereby severely limiting or negating any valid use as an inline fuel filter. As stated above, many of these devices are assembled in such a manner as to give the *appearance* of being a fuel filter but will not function as such.

Further evidence that these devices are not intended to be fuel filters is the fact that many of these devices are manufactured with threads that are not compatible with any known fuel fitting sizes or types. Often, they are threaded with 1/2-28 or 5/8-24 threads, the two thread sizes that are arguably the most common sizes found on firearms with barrels threaded to accept various muzzle attachments. Legitimate filters are typically manufactured with National Pipe Threads (NPT), which are tapered threads designed to create a seal between the fittings when tightened. As such, a threaded adapter is required to attach a fuel filter to one of the many thread sizes found on firearm barrels. There are many such adapters marketed for use in attaching both inline and spin-on filters to threaded firearm barrels.

Special Agent Prince Planthara

787035-22-0059
2022-763-JTA
Page 5

## Findings:

**Exhibit 1** consists of a cylindrical device measuring approximately 9-3/4 inches in length and 2 inches in diameter. The Exhibit bears no visible manufacturer's marks of identification or a serial number. Additionally, a box labeled "JDMSPEED MOTOR' and "Z276" are included with the Exhibit 1 device.

I disassembled Exhibit 1 to examine the interior construction of the device and discovered a replaceable filter element and a coil spring are installed in the expansion chamber created by the two end-caps and the outer tube (see attached photos).

The tube or body of the Exhibit 1 appears to be manufactured from aluminum tubing and creates an **expansion chamber** when assembled with the included end-caps. Each end of the tube contains threads that are compatible with the two end-caps of the device. The tube of the Exhibit is threaded on each end to accept end-caps. The two end-caps incorporate a rubber O-ring to create a seal between the end-caps and the interior of the tube when assembled. The end-caps are externally threaded identically and can be installed on either end of the tube.

As received, the front end-cap of the device contains a hole in its center to allow passage of a bullet. The rear end-cap also has a hole in its center that is internally threaded to facilitate attachment to a firearm barrel.

The filter element is consistent with an inline fuel filter element. It is a cylindrical assembly inserted into the tube of the device and consists of two caps, a **ported tube**, and a pleated filter element.

The ported metal tube is the main part of the filter and is designed to contain and support the filter medium. The perforations in the metal tube are to allow fluid to flow through the tube. The pleated filter medium is formed into a hollow cylinder and is located inside of the ported tube and intended to trap unwanted particles in fluid passing through. The filter element has one closed cap and one open cap to assist in directing the flow of fluid through the filter element (see attached photos).

Regarding inline fuel filter having filter elements or flow valves without center holes, U.S. Patent 4,530,417 mentions creating a center hole through baffles or wipes installed in a firearm silencer using the first round fired through the device. FTCB personnel have tested several inline fuel filters containing a filter element with a solid end-cap and/or a flow valve installed (as typically found in inline fuel filter) and determined that forming the center hole by firing through the device was practical.

Additionally, forming the center hole with the first fired round may improve the efficiency of the silencer by ensuring the center hole is aligned with the bore of the firearm and by creating the smallest hole possible to retain more propellant gases than a larger hole would. When an inline fuel filter is attached to a firearm, the filter element's caps serve as baffles, the body as a perforated tube, and the filter medium as sound dampening material. If the inline fuel filter is of the type that includes a flow valve, the flow valve will also serve as a baffle.

FTCB has determined that an inline fuel filter possessed with a firearm modified to accept it, or with an adaptor(s) designed to affix the filter to the muzzle of a firearm (multiple adapters may be required), demonstrates intent to use the inline fuel filter to silence, muffle, or diminish the report of a portable firearm; therefore, it is a "**firearm silencer**" as defined. Further, an inline fuel filter with an end-cap having threads of

the same size and pitch of those commonly found on threaded firearm barrels is a "**firearm silencer**" as defined.

Exhibit 1 is a device for silencing, muffling, or diminishing the report of a portable firearm; therefore, it is a "**firearm silencer**" by definition.

Exhibit 1 is consistent with many items misrepresented as "automotive filters" or "solvent traps" in a thinly veiled attempt at presenting a legitimate and legal use for these devices other than as firearm silencers or a combination of parts intended for use in assembling a firearm silencer. In actuality, these devices clearly meet the GCA definition of a firearm silencer and are intended to provide a means to skirt the laws and regulations governing the manufacture, sale, and transfer of firearms silencers.

Because the filter element does not incorporate a center hole at the front end to allow a bullet to pass through, I removed the filter element and coil spring prior to conducting sound comparison testing to preserve the integrity of the Exhibit.

For sound-comparison test purposes, I used ATF reference firearm #505491, a Tactical Solutions, model Pac-Lite, .22 LR caliber semiautomatic pistol from the ATF National Firearms Collection (NFC), serial number TS-03552, with and without Exhibit 1 attached. I conducted the sound-comparison testing at the ATF test range, in Martinsburg, West Virginia, on December 27, 2022, using commercially available, CCI brand, .22LR caliber standard velocity ammunition. I conducted this test in the presence of a Bruel & Kjaer, Nexus Acoustic Conditioner Amplifier, calibrated precision sound-level meter, and recorded the results.

The NFC Tactical Solutions pistol muzzle is threaded in 1/2-28 TPI as is the rear end-cap of Exhibit 1.

I followed the standard operating procedures established by ATF for conducting the testing. During this procedure, a pre and post self-test calibration verification procedure was automatically conducted. The instrument passed both the pre and post self-test calibration verifications.

The results of the testing are as follows:

| | | |
|---|---|---|
| NFC #505491 with no silencer | (5-shot average) | 152.80 decibels |
| NFC #505491 with Exhibit 1 attached | (5-shot average) | 140.32 decibels |

The sound reduction recorded was 12.48 decibels. The test results establish that Exhibit 1 is capable of diminishing the sound report of a portable firearm.

**Conclusions:**

**Exhibit 1**, being a device for silencing, muffling, or diminishing the report of a portable firearm, is a "**firearm silencer**" as defined in 18 U.S.C. § 921(a)(25).

**Exhibit 1**, being a "firearm silencer," is a "**firearm**" as defined in 18 U.S.C. § 921(a)(3)(C).

Special Agent Prince Planthara

787035-22-0059
2022-763-JTA
Page 7

**Exhibit 1** is a "firearm silencer" as defined in 18 U.S.C. § 921(a)(25); therefore, it is also a "**firearm**" as defined in 26 U.S.C. § 5845(a)(7).

**Exhibit 1** bears no NFA manufacturer's marks of identification or a serial number as required by 26 U.S.C. § 5842.

Examined by:

# JASON ARMSTRONG

Digitally signed by
JASON ARMSTRONG
Date: 2022.12.27 06:47:52
-05'00'

Jason Armstrong
Firearms Enforcement Officer

Approved by:

# CODY TOY

Digitally signed by CODY
TOY
Date: 2022.12.28 10:58:01
-05'00'

Cody Toy
Chief, Firearms Technology Criminal Branch

Attachments:  Four pages bearing photographs.

**Enclosed is a Firearms Technology Criminal Branch report provided in response to your request for assistance.  Please be aware that these documents constitute "taxpayer return information" that is subject to the strict disclosure limitations provided in 26 U.S.C. § 6103.  Exceptions to the non-disclosure provisions that permit the disclosure internally within ATF are set forth in 26 U.S.C. §§ 6103(h)(2)(C) and (o)(1).  Any further disclosure of these reports is strictly limited and must be reviewed and approved by the Office of Chief Counsel prior to any information dissemination. Failure to adhere to the disclosure limitations provided in 26 U.S.C. § 6103 could result in civil and/or criminal liability.**

787035-22-0059
2022-763-JTA
1 of 4

# Exhibit 1





09042



78703S-22-0059
2022-763-JTA
2 of 4

# Exhibit 1
## Inline Fuel Filter element





09043



787035-22-0059
2022-763-ITA
3 of 4

Exhibit 1



09044

787035-22-0059
2022-763-JTA
4 of 4

09045

# Exhibit 1



ATF Exemplar rifle barrel with 1/2-28 threads



Exhibit 1 attached to ATF rifle barrel

Exhibit 16

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco, Firearms and Explosives

**National Firearms Registration and Transfer Record Search Certificate**



## United States of America

Date: 09/12/2023

To whom it may concern

Section 5841 of the National Firearms Act (Chapter 53, Title 26, United States Code) provides that the Attorney General of the United States or an authorized delegate shall maintain a central registry of all firearms not in the possession or under the control of the United States which come within the purview of 26 U.S.C., Chapter 53. That central registry is known as the National Firearms Registration and Transfer Record and is maintained at the Bureau of Alcohol, Tobacco, Firearms and Explosives in Washington, D.C.

This is to certify that I have custody and control of the said National Firearms Registration and Transfer Record pursuant to a delegation of authority by the Attorney General of the United States.

I further certify that, after diligent search of the said Record, I found no evidence that the firearm or firearms described below are registered to, or have been acquired by lawful manufacture, importation, or making by, or transfer to **JOAO DEBORBA**. I further certify that I have custody and control of approved applications to transfer and register firearms within the purview of Chapter 53, Title 26 U.S.C., and that after a diligent search of such applications I found no approved applications from **JOAO DEBORBA** to transfer and register said firearms to any person as required by Sections 5811 and 5812, Chapter 53, Title 26 U.S.C.

| 1. Type of Firearm (26 U.S.C. 5845) | 2. Manufacturer | 3. Model | 4. Caliber, Gauge or Size | 5. Barrel Length (inches) | 6. Overall Length (inches) | 7. Serial Number |
|---|---|---|---|---|---|---|
| SILENCER | | | | | | |

8. Additional Information   Pertaining to Firearm(s)

| 9. Signature and Title of Certifying Officer | 10. Signature and Title of Secondary Certifying Officer |
|---|---|
| **ELICIA ELKINS** Digitally signed by ELICIA ELKINS Date: 2023.09.12 14:55:51 -04'00' | **JAMES ROBERTSON** Digitally signed by JAMES ROBERTSON Date: 2023.09.12 15:15:08 -04'00' |
| Firearms and Explosives Specialist | Firearms and Explosives Specialist |

11. Signature and Title of Approving Official

*David A. Smith* Digitally signed by David A. Smith1 Date: 2023.09.12 15:27:00 -04'00'

Chief, Government Support Branch

09295

Exhibit 17

**4-SE-3580293 Serial 16**

-1 of 2-

FD-302 (Rev. 5-8-10)

### FEDERAL BUREAU OF INVESTIGATION

Date of entry ___05/10/2022___

     Joao Ricardo DeBorba, date of birth (DOB) ▮▮▮▮▮▮▮, social security account number ▮▮▮▮▮▮▮, phone number ▮▮▮▮▮▮▮, address 3214 NE 62nd Ave, Apt J-6, Vancouver, Washington, was interviewed at Vancouver Police Department (VPD) – West Precinct. The interview was conducted after DeBorba's arrest, and was conducted by Task Force Officer (TFO) Jordan Vossler and author. After being advised of the identity of the interviewing Agent and Task Force Officer (TFO) and the nature of the interview, Author read DeBorba his advice of rights and provided an FD-395 "Advice of Rights" form to DeBorba. DeBorba stated that he understood and did not have any questions, then signed the form. DeBorba provided the following information:

[Agent Note: Author asked DeBorba at approximately 5:50 AM if he would provide consent for law enforcement officers to enter his apartment earlier than the 6:00 AM time that was specified on the search warrant for his apartment. DeBorba was advised of his right to refuse consent. DeBorba gave consent and was provided with an FD-26 "Consent to Search" form which he reviewed and signed. Law enforcement officers at DeBorba's apartment, however, still waited until 6:00 AM to conduct the law enforcement clear of the residence and carry out the search warrant. The FD-26 is attached to this document as a physical 1A.]

    The keys to DeBorba's blue Cadillac were either on the floor of his bedroom by his bed or in front of the television in his bedroom. The combination to DeBorba's safe is ▮▮▮▮▮▮-#. DeBorba had one AR style rifle that was in a case in his bedroom leaning against the wall. This was the only firearm in his apartment. DeBorba knew he was not supposed to have firearms due to his immigration status and his prior domestic violence convictions. The AR style rifle was an eighty percent lower receiver that DeBorba had machined himself.

    DeBorba is a citizen of Brazil. He came to the United States in 1999 on a B-2 tourist visa and never left. DeBorba obtained a social security card in Utah so that he could drive. He did not use it to obtain any benefits. DeBorba talked to lawyers in 2016 in Massachusetts about obtaining legal immigration status but never followed through with the process. DeBorba

Investigation on ___05/06/2022___ at ___Vancouver, Washington, United States (In Person)___

File # ___4-SE-3580293___      Date drafted ___05/09/2022___

by ___TAYLOR GRANT BENJAMIN___

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

4-SE-3580293 Serial 16

FD-302a (Rev. 5-8-10)

4-SE-3580293

Continuation of FD-302 of  (U) Interview of Joao DeBorba                          , On  05/06/2022 , Page  2 of 2

knowingly overstayed his B-2 tourist visa and was aware he was in the United
States illegally.

DeBorba is a machinist at Columbia Machine Inc. in Vancouver, Washington.
DeBorba machined lower receivers for AR style rifles in his apartment. He
never sold any of these, but did it because he enjoyed guns. DeBorba grew up
shooting guns with his father in Brazil. DeBorba knowingly lied about his
United States citizenship when he purchased firearms.

[Agent Note: At this point in the interview, DeBorba was escorted to the
transport car to be taken to the United States Federal Courthouse in Tacoma,
Washington. During the transport, author showed DeBorba pictures of an
additional AR style rifle and a Ruger handgun that had been found in his
apartment and asked him additional questions related to these firearms.]

DeBorba stated that the firearms in the pictures were his. He stated that
he machined the lower of the AR style rifle and bought the other parts
online. DeBorba stated that he also bought the Ruger online. DeBorba did not
remember what website he used to buy the parts or the firearm.

DeBorba's probation officer with the Washington Department of Correction
is Jason Wassen. DeBorba asked that Wassen be notified of his arrest.

[Agent Note: No further questions were asked during the drive. While DeBorba
was undergoing in-processing with the United States Marshals Service (USMS),
TFO Vossler asked him about any social security cards he used for
employment.]

DeBorba purchased counterfeit social security cards when he was living in
Massachusetts years ago. DeBorba believed he paid around $100 for the cards.
DeBorba believes the individual who created the counterfeit social security
cards was arrested by the FBI.

| FD-395<br>Revised<br>11-05-2002 | FEDERAL BUREAU OF INVESTIGATION<br>**ADVICE OF RIGHTS** |
|---|---|

### LOCATION

| Place: Vancouver PD West | Date: 5/6/22 | Time: 0601 |
|---|---|---|

### YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

### CONSENT

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed: _____

### WITNESS

Witness: _____

Witness: _____

Time: 0602