Judge David G. Estudillo

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOAO RICARDO DEBORBA,<br><br>Defendant. | NO. CR22-5139-DGE<br><br>UNITED STATES' SENTENCING MEMORANDUM |

The United States respectfully recommends the Court impose a sentence of 60 months' imprisonment, to be followed by a three-year term of supervised release, and a mandatory special assessment of $700. The defendant appears before this court for sentencing in the above-captioned case following the Court's February 5, 2024, guilty verdict on all seven counts of the Superseding Indictment.

## I.   BACKGROUND

**A.   Offense Conduct**

**1.   DeBorba Engaged in Fraud to Remain in the United States for Over 20 Years**

Joao Ricardo DeBorba, a citizen of Brazil, came to the United States in 1999 using a nonimmigrant B2 visitor's visa that allowed him to remain in the country temporarily for up to six months. PSR ¶ 9. Despite the restriction of his visa, which required that he

United States' Sentencing Memorandum - 1
United States v. Joao Ricardo DeBorba, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

depart the United States by May 2000, DeBorba never left the county. He overstayed his visa and remained in the United States until his eventual arrest in May 2022. Dkt 77 at ¶¶ 4-6 (stipulated facts).

DeBorba was able to do this without detection in part by obtaining a Social Security card in 2001 after presenting a false I-94 entry document. Dkt. 2 at ¶ 9 (criminal complaint). DeBorba's Social Security card indicated that it did not permit his employment. But he falsified I-9 employment eligibility forms by claiming U.S. citizenship and presenting Social Security cards that had been forged or altered to remove the notation, "NOT VALID FOR EMPLOYMENT." In addition, the card that he used in connection with one successful employment application did not bear the seal of the Social Security Administration, but rather bore the seal of the Department of Health and Human Services, indicating it was a forgery. *Id.* at ¶ 11.

Because he was an alien unlawfully in the United States, DeBorba was at all relevant times prohibited from purchasing or possessing a firearm. Dkt. 77 at ¶ 6.

### 2. DeBorba Repeatedly Committed Domestic Violence Subjecting Him to Numerous Restraining Orders

On November 9, 2019, Vancouver Police responded to a domestic violence incident involving DeBorba and his then-wife A.D. DeBorba's 12-year-old son called 911 and said his father attacked his mother and punched and slapped her multiple times in the arms, legs, and face. A.D. told police that she was separated from DeBorba, who was home with the children when she came home from work. DeBorba was angry and asked to look in her phone, and when she refused, he took the phone from her, hit it on the counter, and threatened to hit A.D. as well if she didn't give him the password. When she did not, DeBorba slapped her in the face, and after she defended herself, DeBorba continued to punch, kick, and slap her. A.D. moved to the kitchen to prevent her children from seeing DeBorba hitting her, but DeBorba followed her into the kitchen, then into the children's room where he slapped her in front of the children. A.D. asked DeBorba to

United States' Sentencing Memorandum - 2
*United States v. Joao Ricardo DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

follow her outside to sit in the car so they could talk away from the children, but while in the car with her DeBorba started the engine and began to drive away. A.D. was able to jump out of the car after DeBorba backed up and before he put the car in drive, and she went inside the residence and told one of the children to call police. *See* Exhibit 1, attached hereto.

On November 12, 2019, a Washington District Court judge issued a Domestic Violence No-Contact Order restraining DeBorba from assaulting, threatening, harassing, or causing injury to A.D. Dkt. 77 at ¶ 14. The order also prevented DeBorba from owning or possessing any firearms or from possessing a concealed pistol license and required him to immediately surrender all firearms. *Id.* A replacement order with the same terms was issued after a hearing two days later. *Id.* at ¶ 15. DeBorba was present for both hearings.

On November 16, 2019, A.D. went to a Vancouver Police station to report that DeBorba had been calling her and sending her messages in violation of the restraining order. Exhibit 2, attached. A.D.s phone had call logs showing 20 phone calls from DeBorba in a half-hour period and had multiple text and voice messages from him as well. A.D. stated she was afraid to go home because DeBorba said he was coming to her home to see the kids. A.D. knew that DeBorba had firearms, but stated she thought that DeBorba had turned them in as required by the restraining order. *Id*.

Officers responded to DeBorba's residence for his violation of the restraining order. DeBorba was present and was told he was under arrest and to come out, but he did not, resulting in the response of additional units and a tactical vehicle. DeBorba eventually surrendered and admitted he had firearms in the house. Police collected 20 firearms from inside the residence. *Id*; dkt. 77 at ¶ 16; PSR ¶¶ 14, 51.

On December 7, 2019, A.D. again reported a restraining order violation by DeBorba. A.D. came home from picking up food for her children and found DeBorba in her apartment. She told him to leave multiple times, but he began yelling and punching himself, then grabbed A.D. around her waist in what A.D. believed was an attempt to

United States' Sentencing Memorandum - 3
*United States v. Joao Ricardo DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

stop her from taking her phone out to call police. A.D. kicked away from DeBorba and ran outside screaming for help. DeBorba fled the scene. One of the children and a neighbor corroborated A.D.'s statements to the police. Exhibit 3, attached.

On June 2, 2020, Vancouver Police responded to another report of a restraining order violation. A.D. reported that DeBorba had been texting her and asking to come see the children, and she allowed him to do so while she was at work but that he needed to leave before she got home. When she returned from work, DeBorba was there and approached her outside the apartment and pleaded with her that they needed to get back together. A.D. told DeBorba she would not and asked him to leave, and he became angry and started to yell, then grabbed both of A.D.'s arms. A.D. told DeBorba to let her go, but he pushed her, causing her to fall backward onto a bicycle and injuring her arm. A.D. immediately got up, grabbed the two youngest children, and ran into the apartment, locking the door behind her. DeBorba knocked on the door multiple times, rang the doorbell, and yelled loudly. The responding officer noted a half-inch abrasion on A.D.'s left forearm and observed doorbell camera footage showing DeBorba knocking on the door. DeBorba was later arrested at his apartment. PSR ¶ 51.[1] Exhibit 4, attached.

In October 2020, DeBorba was convicted of Assault in the Fourth Degree – Domestic Violence and two counts of Domestic Violence Court Order Violations in Clark County Superior Court. PSR ¶ 51. As part of sentencing, the court issued a new domestic violence restraining order, which again required DeBorba to surrender any firearms in his possession. Dkt. 77 at ¶ 19.

On August 21, 2022, DeBorba was again arrested for a restraining order violation when, during an exchange of custody of his children, he had an argument with A.D. during which he put his foot behind the wheel of her car to keep her from leaving. A.D. began taking a video of DeBorba in the hope that he would leave her alone, but DeBorba continued yelling at her and eventually spit at her. PSR ¶ 53.

---

[1] The PSR incorrectly lists the date of this incident as June 20, 2020.

United States' Sentencing Memorandum - 4
United States v. Joao Ricardo DeBorba, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Based on this incident, on January 31, 2022, DeBorba was again convicted of fourth degree assault and of violating the October 2020 domestic violence restraining. *Id.* DeBorba was again notified in person that he could not possess any firearms. Dkt. 77 at ¶ 21.

### 3. DeBorba Repeatedly and Unlawfully Obtains and Possesses Firearms and Ammunition

Despite being prohibited from doing so, both because he had unlawfully remained in the United States and later because his commission of domestic violence resulted in him being prohibited by court-issued restraining orders from possessing guns, DeBorba repeatedly made fraudulent statements to obtain and carry firearms.

DeBorba falsified information on a February 2019 application for a concealed pistol license, claiming to be a United States citizen. DeBorba knew that his answers to the citizenship and immigration questions on the form were false. Dkt. 77 at ¶ 8; PSR ¶ 10.

In March 2019, DeBorba bought a Savage Arms rifle in Portland, Oregon, by falsely claiming on the required Bureau of Alcohol, Tobacco, Firearms and Explosives Firearm Transaction Record (Form 4473) that he was a citizen of the United States, that he was not unlawfully in the United States, and that he had not been admitted under a nonimmigrant visa. Dkt. 2 at ¶ 14. Federal Firearms Licensed dealers are required to by federal law to document the sales of firearms using Form 4473, and false statements on the forms are material to the sale of firearms because federal law prohibits the transfer of firearms to person prohibited from possessing them under federal law. PSR ¶ 11.

On April 4, 2019, DeBorba purchased a .45 caliber Sig Sauer model 1911 pistol from a Cabela's store in Lacey, Washington, again providing the same false information on the Form 4473. Dkt. 77 at ¶ 10; PSR ¶ 11. Nine days later, on April 13, 2019, he again fraudulently bought a firearm (this time, a KelTec model Sub-2000 rifle) from a store in Lebanon, Oregon. Dkt. 2 at ¶ 16.

United States' Sentencing Memorandum - 5
*United States v. Joao Ricardo DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

The next day, April 14, 2019, DeBorba was driving a white SUV and was involved in a single- vehicle collision on State Route 500 in Clark County. PSR ¶ 12. The Washington State Patrol investigated and ultimately arrested DeBorba for driving under the influence. PSR ¶ 50, dkt. 2 at ¶ 17. Based on this arrest, DeBorba was convicted of negligent driving and placed on supervision, and later sentenced to five days' jail for failing to comply with treatment and attend a victims panel. PSR ¶ 50.

During the encounter with the Washington State Patrol, DeBorba admitted he was driving and told the officer he had a concealed pistol carry license. Dkt. 77 at ¶ 12. The officer located the fraudulently obtained concealed pistol license on DeBorba and found a Glock 26 type pistol in a black tactical backpack on the rear floorboard of the SUV. Dkt. 77 at ¶¶ 12-13; PSR ¶¶ 12, 50. DeBorba initially denied having the pistol, but later admitted the gun was in the backpack. Dkt. 2 at ¶ 17; dkt. 77 at ¶ 12.

The arrest did nothing to slow DeBorba's fraudulent and illegal acquisition of firearms—indeed, his presentation to the officer of the fraudulently obtained concealed carry license appears to have emboldened him. Less than a week later, on April 20, 2019, he purchased a Century Arms model RAS47 rifle from Keith's Sporting Goods in Gresham, Oregon, again falsifying information on the Form 4473. Dkt. 2 at ¶ 18. On May 8, 2019, he purchased a Rock Island Armory model M200 .38 special revolver from Brass Tacks Munitions in Vancouver, Washington, and made the same false statements on the Form 4473. PSR ¶ 11; dkt 77 at ¶ 11.

Ultimately, DeBorba illegally obtained many more firearms, as evidenced by the 20 firearms confiscated by police following his November 16, 2019, arrest for violation the domestic violence restraining order. Officers found at DeBorba's residence a variety of firearms which he had failed to surrender as required by the court order, including several pistols, ammunition, an AR-15 type rifle, and additional parts used to assemble

//
//

United States' Sentencing Memorandum - 6
*United States v. Joao Ricardo DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  AR-15 type rifles. PSR ¶¶ 14, 51; dkt. 77 at ¶ 16 and Exhibit 7; dkt 2 at ¶ 21. Some of the
2  firearms taken into police custody are pictured below:



18       In April 2021, police responded to a report of an assault by DeBorba at his
19 residence (where he was living apart from A.D. and the children). The roommates
20 reported that DeBorba still had firearms, despite DeBorba having been ordered three
21 times not to possess any firearms and to relinquish any firearms in his possession. Dkt 2
22 at ¶ 28; Exhibit 5, attached. The roommates stated that DeBorba had a bolt-action rifle
23 that he often carried in a backpack because it could be disassembled. *Id.*; PSR ¶ 16. The
24 roommates reported that they were afraid of being assaulted by DeBorba and that he had
25 pushed the male roommate in the chest then locked the door to the apartment and told the
26 roommates, "You're not going anywhere." The female roommate reported being terrified
27 that DeBorba would attack her and that she began crying in fear. Exhibit 5.

United States' Sentencing Memorandum - 7
*United States v. Joao Ricardo DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

In August 2021, federal law enforcement received additional information that DeBorba continued to possess firearms and viewed a social media post on DeBorba's Instagram social media account of DeBorba firing a black AR-15 type rifle with a synthetic stock and optical sight. PSR ¶ 16; dkt. 2 at ¶ 23; dkt 77 at ¶ 22. The video was found to have been recorded on May 20, 2020, in Washougal, Washington, and thus showed DeBorba's continued violation of his domestic violence restraining order. Dkt. 2 at ¶ 23. Review of DeBorba's YouTube account showed additional videos of DeBorba firing a rifle at a shooting range. Dkt 77 at ¶ 22.

On May 6, 2022, federal law enforcement searched DeBorba's residence, suspecting his continued possession of firearms. PSR ¶ 17; dkt 77 at ¶ 23. Inside the apartment, agents found evidence of DeBorba's possession and manufacture of firearms, including three AR-15 type rifles, a Ruger 9mm handgun, and two Polymer80 Glock-type handguns with no serial numbers or manufacturer's marks (commonly referred to as "ghost guns" because of the lack of markings that would enable law enforcement to trace the firearms to their origin or possessor), and numerous rounds of ammunition. PSR ¶¶ 17-18; dkt 77 at ¶¶ 23-25. Several of the firearms appeared to be personally manufactured firearms assembled from constituent parts. The apartment also contained a workbench with a vice, a large amount of ammunition, firearms parts, firearms tools, assembly instructions, body armor, and a completed firearm silencer, as well as suppressor parts, rifle magazines including what appeared to be a 50-round drum magazine, and other firearms accessories. PSR ¶¶ 19; dkt. 77 at ¶¶ 23-25 and Exhibit 12. The firearm silencer met the definition of silencer under federal law and bore no serial number allowing it to be registered. *Id.*; dkt 77 at ¶ 27.

DeBorba admitted to possessing the firearms in the residence and to assembling them himself from parts that he purchased through the internet. DeBorba also admitted that he had lied on the forms he used to buy firearms and that he knew that it was illegal for non-citizens such as himself to possess firearms. PSR ¶¶ 20.

United States' Sentencing Memorandum - 8
*United States v. Joao Ricardo DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

A portion of the items seized at DeBorba's residence are pictured below:








United States' Sentencing Memorandum - 9
*United States v. Joao Ricardo DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**B.     Procedural History**

DeBorba was arrested on May 6, 2022, and a criminal complaint was filed the same day. Dkt. 2. An indictment in six counts was issued on May 19, 2022, charging unlawful possession of firearms and ammunition, false statements during the purchase of a firearm, and false claim to United States citizenship. Dkt. 9. A superseding indictment was issued on September 6, 2023, charging an additional count of unlawful possession of a firearm silencer. On February 1, 2024, DeBorba waived his right to a jury trial, and a bench trial based on stipulated facts was held on February 5, 2024. This Court found DeBorba guilty on all counts. Dkt. 78.

## II.     BACKGROUND ON SENTENCING

Under 18 U.S.C. § 3553(a), the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a)(2). There are four sentencing purposes set forth in Section 3553(a)(2): (1) just punishment or retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"); (2) deterrence ("to afford adequate deterrence to criminal conduct"); (3) incapacitation ("to protect the public from further crimes of the defendant"); and (4) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). *See Rita v. United States*, 551 U.S. 338, 348 (2007) (using these four terms); *see also Gall v. United States*, 552 U.S. 38, 50 n.6 (2007).

In determining a sentence that complies with these four sentencing purposes, a sentencing court must consider the "nature and circumstances of the offense and the history and characteristics of the defendant," the "kinds of sentences available," the Sentencing Guidelines range and Sentencing Commission's relevant policy statements, the "need to provide restitution to any victims of the offense," and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (3)-(7). When considering these

United States' Sentencing Memorandum - 10
*United States v. Joao Ricardo DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

factors, the Sentencing Guidelines range "should be the starting point and the initial benchmark." *Gall*, 552 U.S. at 49. Any deviation must be reasonable, and a "major departure" from the Guidelines range "should be supported by a more significant justification than a minor one." *Id*. at 50.

### III.    SENTENCING GUIDELINES CALCULATIONS

**A.    Offense Level**

**1.    The Base Offense Level**

Because DeBorba was a prohibited firearms possessor and the offense conduct involved a firearm described in the National Firearms Act (26 U.S.C. § 5845), namely, a silencer, the base offense level is 20, pursuant to USSG § 2K2.1(a)(4)(B)(i)(II) and (ii)(I). PSR ¶ 27.

**2.    Specific Offense Characteristic**

Because the offense conduct involved 25 firearms or more, the offense level is increased by six levels, pursuant to USSG § (b)(1)(B). PSR ¶ 28.

**3.    Adjustment for Acceptance of Responsibility**

The Probation Office calculated a two-level decrease in offense level for acceptance of responsibility pursuant to USSG § 3E.1.1(a), because DeBorba stipulated to facts surrounding his offenses and participated in a bench trial. The government does not object to the two-level decrease under subsection (a). *See* USSG § 3E1.1 cmt. n. 2.

As the Probation Office correctly noted in its Addendum to the Presentence Report, the additional adjustment under USSG § 3E.1.1(b) is available only upon government motion "stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." The government makes no such motion here.

//

United States' Sentencing Memorandum - 11
*United States v. Joao Ricardo DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Here, DeBorba did not timely notify the government of his intention to enter a guilty plea. Indeed, he did not enter guilty plea at all, but proceeded to a bench trial, albeit on stipulated facts. This has neither the legal nor the practical effect of a guilty plea. The bench trial neither provided the government the certainty of a negotiated resolution with all the typical attendant benefits to the government (such as avoiding contested issues at sentencing and on appeal, and avoiding an appeal of the guilty verdict, the outcome of pretrial motions, or issues related to the sentence), nor did it preserve government resources (the government made trial preparations, such as filing jury instructions, witness and exhibit lists, and a trial memo, and subpoenaing witnesses) but it required substantial effort to draft factual stipulations in preparation for presenting the government's case to the judge. These are the type of "substantive preparations taken to present the government's case against the defendant to a . . . judge, in the case of a bench trial" that Section 3E1.1(b) benefits defendants for allowing the government to avoid.

The Ninth Circuit has made it clear that a stipulated facts bench trial is not equivalent to a guilty plea when it comes to Section 3E1.1(b). In *United States v. Villasenor-Cesar*, 114 F.3d 970 (9th Cir. 1997), the Court directly addressed whether a defendant may receive the third point for acceptance of responsibility after proceeding to a stipulated facts bench trial and held that he cannot. *See also United States v. Espinoza-Cano*, 456 F.3d 1126, 1136 (9th Cir. 2006) ("Espinoza-Cano argues that . . . the government's decision not to file a motion in this case was arbitrary because he satisfied the prerequisite of permitting the government to avoid trial preparation when he opted to proceed by way of a stipulated bench trial. This contention, however, runs afoul of our holding in *Villasenor-Cesar* that proceeding by way of a stipulated bench trial is inconsistent with notifying authorities of an intent to plead guilty.")

**B.      Criminal History Category**

DeBorba has four criminal history points, resulting in a criminal history category of III. PSR ¶¶ 50-56.

United States' Sentencing Memorandum - 12
*United States v. Joao Ricardo DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

### C. Guidelines Range

The total offense level is 24. PSR ¶ 28. This results in a guidelines imprisonment range of 63 to 78 months. PSR ¶ 100; USSG § Ch.5, Pt.A (Sentencing Table).

## IV. FACTORS RELATED TO SENTENCING RECOMMENDATION

The United States respectfully requests that the Court sentence the defendant to 60 months of confinement, followed by a three-year term of supervised release. The United States believes this sentence is appropriate in light of "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C). A review of pertinent Section 3553(a) sentencing factors, below, supports the recommended sentence.

### A. Nature and Circumstances, and Seriousness of the Offense

DeBorba's criminal conduct was serious. He repeatedly committed domestic violence against his former wife and in front of his children. This resulted in a series of domestic violence restraining orders being issued protecting his wife from DeBorba. Notwithstanding the clear provisions of these orders, DeBorba continued to possess, and continued to acquire, large numbers of firearms, ammunition, and firearms accessories. When police searched his residence in May 2022, his bedroom was essentially an armory doubling as a firearms workshop. Particularly serious is DeBorba's possession of an illegal firearm silencer, body armor, and high-capacity magazines, along with the cache of firearms.

The prohibitions set out in § 922(g)(8) "seek to protect society in general, and the intimate partners of persons with a background of domestic violence in particular, by reducing the risk of violence that may result from the possession of guns by persons with a proven propensity for violence." *United States v. Rogers*, 371 F.3d 1225, 1229 (10th Cir. 2004). "'The dangerousness of guns and their adaptability [for] use in violent crime

United States' Sentencing Memorandum - 13
*United States v. Joao Ricardo DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

is why Congress has prohibited their possession' by individuals subject to a domestic protection order . . . ." *Id.* (quoting *United States v. Dillard*, 214 F.3d 88, 94 (2d Cir. 2000)). "A defendant whose background includes domestic violence which advances to either a criminal conviction or the imposition of a protection order has a demonstrated propensity for the use of physical violence against others." *Id*.

Because of his propensity to violence, DeBorba's ex-wife feared him and resorted to the courts to ensure he would not have access to guns. DeBorba ignored these protections and nevertheless acquired a small arsenal, not only knowing it was illegal for him to do so but having been specifically ordered not to. This is extremely troubling. "Firearms contribute significantly to domestic violence in the U.S. — to threaten, to coerce, to control, and to kill. Around 4.5 million women in the United States have been threatened with a gun, and nearly 1 million women have been shot or shot at by an intimate partner. Over half of all intimate partner homicides are committed with guns. Indeed, a woman is five times more likely to be murdered when her abuser has access to a gun." The Educational Fund to Stop Gun Violence, available at: https://efsgv.org/learn/type-of-gun-violence/domestic-violence-and-firearms (last accessed May 10, 2024).

Indeed, following his first reported domestic violence incident, DeBorba's conduct only became more troubling. He increased his threatening conduct toward his wife. He threatened his roommates, who feared him because they knew he was accustomed to carrying a rifle with him. Despite having firearms seized from him, he replenished his cache of weapons and ammo, and began to obtain ghost guns as well as a firearm silencer, a highly restricted weapon under federal law.

The offenses DeBorba committed are serious and require a sentence that reflect the nature of the firearms crimes he committed.

//

//

United States' Sentencing Memorandum - 14
*United States v. Joao Ricardo DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**B.      History and Characteristics of the Defendant**

DeBorba's criminal history reflects his domestic violence, with two prior convictions for assault on his ex-wife, as well as a disorderly conduct conviction resulting from the assault involving his roommates. He also has a reckless driving conviction. Prior to that, he engaged in the creation of fraudulent documents to enable him to overstay his visa and reside and work in the United States without detection for over 20 years.

**C.      Need to Promote Respect for the Law, Provide Just Punishment for the Offense, and Afford Adequate Deterrence**

DeBorba's conduct epitomizes a lack of respect for the law; not just the nation's firearms laws, but specific orders from state judges requiring him not to possess firearms. DeBorba knowingly disregarded these legal obligations time and again. Deterrence requires that this conduct be treated seriously. The government's recommended sentence would reflect the seriousness of the offense, appropriately promote respect for the law, protect the community, and deter defendant and others who would seek to emulate his conduct.

**D.      Need to Avoid Unwarranted Sentence Disparity Among Similarly Situated Defendants**

Anchoring the sentence in the guidelines calculations has the added benefit of avoiding unwarranted sentencing disparities among similarly situated defendants. *Gall v. United States*, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").

//

//

United States' Sentencing Memorandum - 15
*United States v. Joao Ricardo DeBorba*, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## V. CONCLUSION

For all of the reasons set forth above, the government respectfully recommends the Court impose a custodial sentence of 60 months, to be followed by a three-year term of supervised release, and a mandatory special assessment of $700.

DATED this 10th day of May, 2024.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

/s/ Max B. Shiner
MAX B. SHINER
Assistant United States Attorney
United States Attorney's Office
1201 Pacific Ave., Suite 700
Tacoma, Washington 98402
Phone: 253-428-3800
Fax: 206-553-3826
Email: max.shiner@usdoj.gov

United States' Sentencing Memorandum - 16
United States v. Joao Ricardo DeBorba, CR22-5139-DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800