CHIEF JUDGE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR22-5139-DGE |
| Plaintiff, | |
| v. | JOÃO DEBORBA'S SENTENCING MEMORANDUM |
| JOÃO RICARDO DEBORBA, | |
| Defendant. | |

Mr. DeBorba is sincerely sorry for his conduct here. In his own words, Mr. DeBorba affirms: "I feel terribly sorry for the mistakes that I did because I know they affect, of course, my wife, my children, and the other loved ones. I understand that my actions frightened people, and I'm so sorry for this." Ex. B. Mr. DeBorba understands the seriousness of his conduct. And he has and will continue to suffer very serious consequences because of it. Given the over two years he has spent in difficult pretrial detention, the further time he will likely spend in immigration detention, and his expected deportation and separation from his children as a result of the Judgment in this case, no further custodial sentence is necessary. Instead, Mr. DeBorba, through counsel, respectfully asks the Court to sentence him to five years of probation.

JOÃO DEBORBA'S SENTENCING MEMORANDUM
(*United States v. DeBorba*; CR22-5139-DGE) - 1

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

I.  **MR. DEBORBA'S HISTORY, THE FACTS OF THIS OFFENSE, AND THE COLLATERAL CONSEQUENCES THAT WILL RESULT FROM THE JUDGMENT IN THIS CASE ALL INDICATE A MITIGATED SENTENCE.**

Consideration of "the nature and circumstances of the offense and the history and characteristics of" Mr. DeBorba makes clear that a lengthier term of incarceration is not necessary. Mr. DeBorba is sincerely remorseful for his actions. Although he had no intent to harm or frighten anyone, he recognizes that he did just that.

Mr. DeBorba has long dealt with anxiety from adverse experiences in his childhood. For decades, he worked hard to support his family and to hold his anxiety at bay. At the time of this offense, his mental health was particularly strained following a separation from his spouse and later the COVID-19 pandemic. Since his arrest, Mr. DeBorba's anxiety has further increased as he has dealt with this case through difficult jail conditions. Mr. DeBorba litigated meritorious motions in his case in hopes of preserving any ability to see and support his children in the future. He has nonetheless accepted full responsibility for his conduct.

Following any sentence in this case, Mr. DeBorba will be brought to immigration detention. And absent (or until) a different resolution of his pretrial motions by the Court of Appeals, it is a virtual certainty he will be deported and separated from his children for the foreseeable future. These circumstances indicate no need for further incarceration beyond the approximately two years that Mr. DeBorba has already spent in custody.

A.  **Mr. DeBorba lives with significant anxiety from trauma in his youth.**

Mr. DeBorba remembers parts of his childhood with immense fondness. But other parts have haunted him for decades. Mr. DeBorba grew up in a small city in Brazil. He was the oldest of his parents' two children, and both of his parents worked hard to provide for him and his sister. Mr. DeBorba's mother worked in a pharmacy and

JOÃO DEBORBA'S SENTENCING MEMORANDUM
(*United States v. DeBorba*; CR22-5139-DGE) - 2

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

later a small office supply store. His father worked in a machine shop for most of his life, a career Mr. DeBorba would later follow.

Mr. DeBorba's parents were Pentecostal Christians, and he grew up in the church. Indeed, his father was the pastor of their church. While the church itself was generally a positive for Mr. DeBorba, Pentecostalism was a minority religion in Brazil, and Mr. DeBorba and his family faced discrimination due to their religion. *See* Pew Research Center, *Report: Brazil's Changing Religious Landscape* (July 18, 2013), https://www.pewresearch.org/religion/2013/07/18/brazils-changing-religious-landscape/ (among other statistics, in 1970, approximately 92 percent and in 2000, approximately 74 percent of Brazil's population were Catholic). Mr. DeBorba specifically was mocked and bullied because of his religion. He was small in stature, and became a favorite target of other children, experiencing frequent beatings, intimidation, and teasing from his peers.

While this bullying became a source of immense stress for Mr. DeBorba, he had bigger threats to worry about. Mr. DeBorba experienced serious abuse multiple times during his childhood.[1] Mr. DeBorba was too afraid to tell his parents. While he loves his parents, he also experienced some neglect at home, as well as emotional and physical abuse[2] by his mother, who struggled with her mental health. Mr. DeBorba tried instead to bottle up his emotions. Unfortunately, the type of trauma that Mr. DeBorba experienced cannot simply disappear or be willed away. He began to experience significant depression and anxiety. Indeed, he developed a serious ulcer at age 13. Mr. DeBorba has experienced suicidal ideations in his life, including prior attempts. These

---

[1] Described in further detail in Sealed Ex. A and the Pre-Sentence Report (PSR).

[2] As indicated in the PSR, Mr. DeBorba's experiences conform to those that the Adverse Childhood Experiences (ACE) metric characterizes as abuse or maltreatment, even though Mr. DeBorba himself did not view his mother's actions as abusive.

JOÃO DEBORBA'S SENTENCING MEMORANDUM
(*United States v. DeBorba*; CR22-5139-DGE) - 3

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

childhood traumas contributed to Mr. DeBorba's present severe Post-Traumatic Stress Disorder (PTSD), extreme Depression, and Anxiety Disorder. *See* Sealed Ex. A at 11–13.

Despite these challenges, Mr. DeBorba persevered. His fondest memories of childhood are spending time with his father. He and his father went camping, hunting, and sport-shooting together. These times engaged in outdoor activities with his greatest supporter eased Mr. DeBorba's anxiety, even if temporarily. Mr. DeBorba worked hard in school and followed in his father's footsteps once he reached adulthood, finding work as a machinist.

**B.    In adulthood, Mr. DeBorba worked hard to provide and care for his children.**

While Mr. DeBorba was still a young adult, he again followed in his father's footsteps, this time to the United States. Mr. DeBorba's father was invited to help a pastor in Massachusetts set up a new Pentecostal Church, and he asked Mr. DeBorba to join. Mr. DeBorba intended only to stay a few months to help his father.

However, Mr. DeBorba found a community—one where he felt he fit in—in Massachusetts. He was no longer the target of bullying, isolated by a minority religion. He was part of a community building a Church together. Soon, Mr. DeBorba met his ex-wife. He found steady work as a machinist, and the two started a family together. Mr. DeBorba remained in Massachusetts, though his father returned to Brazil.

Mr. DeBorba continued to struggle with his mental health. While living in Massachusetts, he was able to enroll in counseling and for the first time opened up about his traumatic childhood experiences. He found this therapy immensely helpful. And for many years, Mr. DeBorba lived the life he had always hoped for—a quiet life focused on family.

JOÃO DEBORBA'S SENTENCING MEMORANDUM
(*United States v. DeBorba*; CR22-5139-DGE) - 4

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

Mr. DeBorba again followed his father's example—in parenting. His children were and are his highest priority. He worked hard to ensure they had all the resources they needed, and he also made sure to spend as much time as he could with them. He tried to give them a wonderful childhood—one where they could enjoy the outdoors, be supported in school, and have all the opportunities they wanted.

In 2018, Mr. DeBorba's life changed significantly. First, his then-wife decided she wanted the family to move to Washington. She knew people in Washington, though Mr. DeBorba did not. Nonetheless, he agreed to the move. This meant finding a new place to live, a new job, and transitioning their children to new schools. Mr. DeBorba worked hard to make the transition successful. But, with all these changes, Mr. DeBorba was not able to continue his mental health counseling.

The same year, Mr. DeBorba lost his father. Mr. DeBorba had remained in contact with his father despite living far apart. His father remained his greatest supporter and a source of strength and calm. But toward the end of his life, Mr. DeBorba's father was diagnosed with Alzheimer's. It was difficult for Mr. DeBorba to support him from afar, but he did not stop trying. Then, months after his diagnosis, Mr. DeBorba's father fell and suffered a fatal head injury. The loss devastated Mr. DeBorba and remains a source of grief and guilt to this day.

Mr. DeBorba's mental health took a turn for the worse. He was prescribed medication but did not receive sustained therapy. His marriage also began to deteriorate, and he and his wife began divorce proceedings. During this time, Mr. DeBorba was arrested on domestic violence charges and ultimately pled guilty to misdemeanors. He and his wife separated and he lived in a separate apartment, with limited time with his children.

JOÃO DEBORBA'S SENTENCING MEMORANDUM
(*United States v. DeBorba*; CR22-5139-DGE) - 5

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

### C. Mr. DeBorba is very sorry for his conduct here—though he had no intent to harm anyone, he recognizes the alarm his actions caused.

Mr. DeBorba is very sorry that he possessed guns. As is undisputed, he never used the firearms to harm or threaten anyone. He had no intent to do so. And, as experienced psychologist April Gerlock, Ph.D., explained, "Mr. DeBorba did not express any threats or anger towards his former wife. He did not make statements or behave in a manner that would suggest danger towards her." Sealed Ex. A at 14. Nonetheless, Mr. DeBorba recognizes that his actions caused alarm and fear, and he is truly remorseful for causing others this distress.

He also apologizes for letting his children down. Due to his arrest and incarceration here, Mr. DeBorba has been separated from his children. As Dr. Gerlock noted, Mr. DeBorba's mental health has deteriorated since his incarceration. Sealed Ex. A at 13. This has certainly been painful for Mr. DeBorba, but his concern remains focused on his children. He is sorry that he has not been able to support them and care for them due to his actions here.

### D. Mr. DeBorba faces virtually certain deportation and separation from his children as a result of his convictions here.

Mr. DeBorba litigated motions to dismiss the charges against him, which make him ineligible for relief from deportation. *See* Dkts. 36, 53, 56, 62. This decision is unsurprising, given the disproportionate stakes that conviction on these charges present for Mr. DeBorba. The Supreme Court has repeatedly held that "'[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.'" *Padilla v. Kentucky*, 559 U.S. 356, 368 (2010) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 322 (2001)). Mr. DeBorba's Motions raised live constitutional issues, which the Ninth Circuit has recently recognized as a basis to reverse convictions. *See United States v. Duarte*, No. 22-50048, 2024 WL 2068016, at *2 (9th Cir. May 9, 2024) (reversing conviction under § 922(g)(1) while rejecting and

JOÃO DEBORBA'S SENTENCING MEMORANDUM
(*United States v. DeBorba*; CR22-5139-DGE) - 6

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

parsing many of the arguments relied on the government here). After this Court denied Mr. DeBorba's Motions to Dismiss, he stipulated to facts and evidence and waived his right to a jury trial, accepting full responsibility for his conduct.

To pursue his only chance of avoiding exile from his children for the foreseeable future, Mr. DeBorba waited in jail for over two years. *See* Dkts. 2, 6 (Mr. DeBorba was arrested on May 6, 2022). His arrest interrupted his albeit limited mental health treatment, and he had to persevere without his needed medications for months. *See* Ex. A at 5. Mr. DeBorba has not had access to meaningful programming during this time and has had scant opportunities for mental health care beyond medication due to the jail's severe understaffing. *See* Nina Shapiro, *SeaTac Federal Detainees Grow Desperate Amid Lack of Medical Care*, Seattle Times (Feb. 26, 2024), https://www.seattletimes.com/seattle-news/law-justice/seatac-federal-detainees-grow-desperate-amid-lack-of-medical-care/. Mr. DeBorba also experienced harassment and threats due to misinformation spread about the charges against him. Mr. DeBorba has engaged in bible study to see his way through this exceedingly difficult period of detention.

When the Court enters judgment in this case, Mr. DeBorba will become ineligible for relief from deportation that might otherwise be an option for him. *See* 8 U.S.C. § 1101(a)(43)(C); 8 U.S.C. § 1227(a)(2)(E)(ii); 8 U.S.C. § 1182(a)(2)(A)(i)(I); 8 U.S.C. § 1182(a)(6)(C)(ii). Probation has confirmed that Immigration and Customs Enforcement (ICE) has a detainer for Mr. DeBorba, so he will be brought to ICE detention whenever he is released from custody on this case. And Mr. DeBorba will likely spend months to years in ICE custody.

Indeed, even if an Immigration Judge were to promptly order Mr. DeBorba deported, he would likely wait for months in custody for a deportation flight to Brazil. And the best case scenario for Mr. DeBorba—if an Immigration Judge agrees to delay

JOÃO DEBORBA'S SENTENCING MEMORANDUM
(*United States v. DeBorba*; CR22-5139-DGE) - 7

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

proceedings to allow Mr. DeBorba's appeal here to proceed so he could *seek* relief from deportation—means he would spend months or even years longer in ICE detention awaiting proceedings. Mr. DeBorba would likely be deemed ineligible for bond from ICE detention while awaiting deportation proceedings due to the convictions here. *See* 8 U.S.C. § 1226(c)(1) (requiring detention with very limited exceptions for people who are removable due to convictions of crimes involving moral turpitude, firearms offenses, and others).

In the more likely former scenario, or absent a reversal of the convictions here on appeal, Mr. DeBorba will be deported to Brazil and inadmissible to the United States—meaning ineligible for even a tourist visa to visit. In other words, the judgment in this case is expected to lead to Mr. DeBorba's lifelong exile from this country—the only home he has known for the past couple decades, and the home of his beloved children. This severe consequence is of course frightening for Mr. DeBorba. But, as always, he is sorriest to his children for the harm the separation will cause them.

Mr. DeBorba is truly remorseful for his actions here. He is sorry to anyone frightened or harmed by his possession of guns. He has spent the past two years regretting and reflecting on his decisions. And he hopes above all to do whatever he can to support his children. He recognizes his options for doing so going forward will likely be severely limited, and he is doing his best to prepare for this reality.

## II. THE COURT SHOULD SENTENCE MR. DEBORBA TO FIVE YEARS OF PROBATION.

After considering the full circumstances of this case—including the over two years that Mr. DeBorba has already served in difficult pretrial detention and the extreme collateral consequences he faces—the Court should conclude that further custodial sanction is not necessary to advance the goals of sentencing. Instead, the Court should impose a sentence that maximizes its term of supervision over Mr.

JOÃO DEBORBA'S SENTENCING MEMORANDUM
(*United States v. DeBorba*; CR22-5139-DGE) - 8

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

DeBorba so that Probation may monitor and support him in the event he is able to remain in the United States.

### A. The over two years that Mr. DeBorba has already served in jail as well as his virtually certain deportation are more than enough punishment here.

No further custodial sentence is needed here to "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A). Unlike in many cases charged under § 922(g), Mr. DeBorba had no prior felony convictions, no history of using guns for criminal activity, and no intent nor desire to do so. Mr. DeBorba's gun possession here had no violent purpose and, as Dr. Gerlock recognizes, was evidently a poor form of coping. Nonetheless, Mr. DeBorba recognizes now why his possession of firearms caused others concern and he is truly sorry for that.

Two years in particularly difficult pretrial detention that will be followed by months or years more in similarly difficult ICE detention and likely deportation are more than enough punishment for Mr. DeBorba's conduct here. Detention without programming, real outdoor space, or adequate staffing for protection against harassment is certainly more painful and punitive than incarceration at a fully equipped prison. Mr. DeBorba's harsh conditions of detention are expected to continue or worsen when he is brought to ICE custody. *See, e.g.*, Grace Deng, *For-Profit Tacoma ICE Center Blocks Health and Labor Inspections*, Cascade PBS, CrossCut (Feb. 5, 2024), https://crosscut.com/news/2024/02/profit-tacoma-ice-center-blocks-health-and-labor-inspections (reporting over 300 complaints lodged regarding the Northwest Detention Center including foreign objects in food, insufficient food, dismissal of medical needs, unlaundered clothes and linen, and mis-use of solitary confinement; as well as the Center's refusal to allow Washington State health inspectors to enter).

JOÃO DEBORBA'S SENTENCING MEMORANDUM
(*United States v. DeBorba*; CR22-5139-DGE) - 9

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

Furthermore, Mr. DeBorba faces a collateral consequence here that is far worse than any contemplated by the Sentencing Guidelines. With the entry of judgment in this case, he faces virtually certain deportation and will be ineligible for otherwise possible forms of relief from removal. The Supreme Court has "long recognized that deportation is a particularly severe 'penalty[.]'" *Padilla*, 559 U.S. at 365 (2010) (quoting *Fong Yue Ting v. United States*, 149 U.S. 698, 740 (1893)). This is especially so when deportation means a person would be separated from their families, including U.S. citizen children. *See United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011). "As the Supreme Court has often emphasized, deportation is a drastic measure that may inflict the equivalent of banishment or exile, and result in the loss of all that makes life worth living." *Sun Il Yoo v. Immigr. & Naturalization Serv.*, 534 F.2d 1325, 1329 (9th Cir. 1976) (cleaned up) (internal quotations omitted). The sentencing guidelines here do not account for this drastic punishment. But this Court may and should. This punishment alone, and certainly in combination with the two years Mr. DeBorba has already served in jail, is sufficient to reflect the seriousness of and to punish him for the offense here.

### B. Further custodial time will impede rather than promote the goal of deterrence.

Additional time in prison will not deter criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B). The Department of Justice has long recognized that "[t]he *certainty* of being caught is a vastly more powerful deterrent than the punishment." Dep't of J., Nat'l Inst. Of J., "Five Things About Deterrence," May 2016, https://www.ojp.gov/pdffiles1/nij/247350.pdf. Indeed, "[s]ending an individual convicted of a crime to prison isn't a very effective way to deter crime." *Id*. Research demonstrates that prison sentences may actually increase, rather than decrease, recidivism. *Id*. "[P]rison sentences (particularly long sentences) are unlikely to deter future crime. Prisons actually may have the opposite effect: Inmates learn more

JOÃO DEBORBA'S SENTENCING MEMORANDUM
(*United States v. DeBorba*; CR22-5139-DGE) - 10

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

effective crime strategies from each other, and time spent in prison may desensitize many to the threat of future imprisonment." *Id*.

Instead, appropriate mental health care, in addition to the arrest here, is far more likely to deter Mr. DeBorba from future criminal conduct. Given the Bureau of Prisons (BOP)'s current staffing crisis, Mr. DeBorba is unlikely to receive much more than medication if sentenced to further custodial time—even if designated to a more appropriate facility. *See, e.g.*, Jory Heckman, *Bureau of Prisons Understaffing Leads to 'Unprecedented Exodus' of Employees, Union Warns*, Federal News Network, Sept. 30, 2022, https://federalnewsnetwork.com/hiring-retention/2022/09/bureau-of-prisons-understaffing-leads-to-unprecedented-exodus-of-employees-union-warns/; Glenn Thrush, *Short on Staff, Prisons Enlist Teachers and Case Managers as Guards*, N.Y. Times, May 1, 2023, https://www.nytimes.com/2023/05/01/us/politics/prison-guards-teachers-staff.html.

Instead of further custodial time, Mr. DeBorba recommends a sentence that maximizes the Court's available supervision time. Should Mr. DeBorba be allowed to live in the United States, this sentence will allow the most time possible for Mr. DeBorba to receive appropriate mental health care in the community and have the structure and support of supervision to stay on this track.

**C.      A supervision-focused sentence will best promote community safety.**

Further time in custody is also not necessary to protect the community here. Mr. DeBorba never used a firearm to hurt anyone nor was there any indication of an intent to do so. Rather, community safety is best promoted by Mr. DeBorba receiving appropriate trauma therapy and mental health care so that he can think clearly and live his values.

Dr. Gerlock is very experienced in evaluating and treating both PTSD and domestic violence behaviors. She noted that Mr. DeBorba did not exhibit symptoms

JOÃO DEBORBA'S SENTENCING MEMORANDUM
(*United States v. DeBorba*; CR22-5139-DGE) - 11

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

indicative of severe danger to others. *See* Sealed Ex. A at 14. Rather, his biggest risk is suicide or self-harm. *Id*. And she recommends treatment that includes trauma therapy as most effective for Mr. DeBorba going forward. *See id*. at 14–15. As noted above, the practical likelihood of him receiving such treatment during a BOP-based sentence is slim. Instead, a supervision-focused sentence would best support treatment in the event Mr. DeBorba is allowed to remain in the United States.

Furthermore, to the extent the Court is concerned about Mr. DeBorba's relationship or contacts with his ex-wife, a sentence of five years of probation will best address those concerns. County No-Contact Orders are presently in place, and Mr. DeBorba is respecting those orders. However, a five-year probation sentence gives the Court additional assurances in the event that Mr. DeBorba is allowed to remain in the United States. In that scenario, with the conditions recommended by Probation, Mr. DeBorba would be supervised by a U.S. Probation Officer. Should the officer have concerns about Mr. DeBorba's communications or co-parenting with his ex-wife after the expiration of any No-Contact Orders, the Probation Officer could essentially issue their own no-contact instruction. Probation could further encourage clarity and support for any co-parenting plan to prevent the need to invoke that provision. A probationary sentence allows the Court up to five years of supervision, as opposed to only three allowed with supervised release. As such, Mr. DeBorba's proposed sentence will best assure the Court of community safety.

### D. Further custodial time will impede Mr. DeBorba's ability to get needed mental health treatment.

Additional custodial time will not further the goal of rehabilitating Mr. DeBorba. *See* 18 U.S.C. § 3553(a)(2)(D). The types of integrated treatment that would most improve Mr. DeBorba's mental health are of limited availability within the BOP. Indeed, the only intensive trauma therapy available for men is the Resolve program,

JOÃO DEBORBA'S SENTENCING MEMORANDUM
(*United States v. DeBorba*; CR22-5139-DGE) - 12

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

available at only seven men's facilities. (Anecdotally, counsel's recent attempts to have clients designated to facilities with such limited-availability programs have all been unsuccessful, even with the Court's recommendation). The BOP does not offer the types of inter-family relations treatment that Dr. Gerlock further recommends.

Furthermore, with Mr. DeBorba's likely deportation, effective rehabilitation also means teaching him to live in a country that has become entirely foreign to him. Prolonged time in an American prison will not teach Mr. DeBorba to navigate life in Brazil, to regain language skills, or to parent his children from afar. It will simply further entrench his anxiety and depression and impede the goal of rehabilitation.

### III.  CONCLUSION

Mr. DeBorba is truly sorry for his actions. He has already endured significant punishment for these offenses over the past two years he has spent in detention. He will further suffer a punishment worse than many could imagine—exile from his home and separation from his children for the foreseeable future. A further custodial sanction is not necessary. Instead, Mr. DeBorba, through counsel, asks the Court to sentence him to five years of probation. In the event Mr. DeBorba is allowed to remain in the United States, this will give the Court the greatest ability to supervise him and support his rehabilitation and reentry.

DATED this 10th day of May 2024.

Respectfully submitted,

*s/ Rebecca Fish*
Assistant Federal Public Defender
Attorney for Mr. João DeBorba

JOÃO DEBORBA'S SENTENCING MEMORANDUM
(*United States v. DeBorba*; CR22-5139-DGE) - 13

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710